UNITED STATES DISTRICT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL PELICHET, BONN WASHINGTON,
JOSHUA RAGLAND, DARIUS BICKERSTAFF,
through his guardian, MARY BICKERSTAFF, and
MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.,

        Case No. 18-cv-11385-PDM-MKM

        Plaintiffs,        Hon. Paul D. Borman

-vs-        Mag. Anthony P. Patti

NICK LYON, in his official capacity,
LISA MEDOFF, MARY CLAIRE SOLKY,
LAURIE ALBERT, HANUMAIAH BANDLA,
ARUNA BAVINENI, SHARON DODD-KIMMEY,
CRAIG LEMMEN, KIMBERLY KULP-OSTERLAND,
LISA MARQUIS, MARTHA SMITH,
DAVE BARRY, KELLI SCHAEFER,
JOE CORSO, DIANE HEISEL, in their individual
and official capacities, CHARLES STERN, individually,
HEGIRA PROGRAMS, INC., NEW
CENTER COMMUNITY SERVICES,
INC., CARELINK NETWORK, INC.,
BEHAVIORAL HEALTH PROFESSIONALS
PARTNERSHIP, INC., and MICHIGAN
DEPARTMENT OF HEALTH AND HUMAN
SERVICES, (Count II and injunctive relief only),

|  |
| --- |
| **DEFENDANT, CHARLES STERN, Ph.D's MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

        Defendants.

_____

LAURENCE H. MARGOLIS (P69635)
Margolis Law, PC
Co-Counsel for Plaintiffs
214 S. Main Street, Suite 202
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com

JAMES M. GALLAGHER (P73038)
James Gallagher PLLC
Co-Counsel for Plaintiffs
214 S. Main Street, Suite 202
Ann Arbor, MI 48104
(734) 274-5090
jgallagher@jamesgallagherlaw.com

ANDREA L. RIZOR (P78382)
CHRIS E. DAVIS (P52159)
Attorneys for Plaintiff MPAS
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
arizor@mpas.org
cdavis@mpas.org

DARRIN F. FOWLER  (P53464)
KETHERINE J. BENNETT (P75913)
Michigan Dept. of Attorney General
Attorneys for MDHHS Defendants
525 West Ottawa Street
P. O. Box 30758
Lansing, MI 48933
517-373-1160
Fowlerd1@michigan.gov


SCOTT L. FEUER (P38185)
JENNIFER E. BRUENING (P66846)
Law Offices of Scott Feuer, P.C.
Attorneys for Defendant Charles Stern
888 West Big Beaver Road, Suite 850
Troy, MI  48084
(248) 723-7828, Ext. 201
sfeuer@fklawyers.com
jbruening@fklawyers.com

SCOTT S. HOLMES (P66580)
Foley & Mansfield, PLLP
Attorney for Defendant CareLink
Network, Inc.
130 East Nine Mile Road
Ferndale, MI 48220
(248) 721-4200
sholmes@foleymansfield.com

PAUL J. DWAIHY (P66074)
Plunkett Cooney
Attorney for Defendant Lisa Medoff
150 West Jefferson Avenue, Suite 800
Detroit, MI 48226
(586) 783-7621
pdwaihy@plunkettcooney.com

LOREN D. BLUM (P38557)
Elia & Ponto, PLLC
Attorney for Defendant Hegira Programs,
Inc.
28411 Northwestern Hwy, Suite 640
Southfield, MI 48034
(248) 223-0120
Loren.Blum@Liberty.Mutual.com

_____

## DEFENDANT, CHARLES STERN, Ph.D's MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

NOW COMES Defendant, Charles Stern, by and through his attorneys, the

Law Offices of Scott. L. Feuer, P.C., and for his Motion to Dismiss, filed pursuant to

Fed. R. Civ. P. 12(b)(6) and 12(c), states as follows:

1. Defendant, Dr. Charles Stern, moves for dismissal of all claims against him pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c).

2. Even if all claims in the plaintiff's complaint are accepted as true, which they must be for purposes of this motion, plaintiff's case should be dismissed because the plaintiffs cannot establish their claims without also establishing that the state court orders ordering their hospitalization were in error.

3. The plaintiffs' attempts to call into question the state court orders are barred by res judicata, collateral estoppel, *Heck v Humprey,* and/or the *Younger* and *Rooker-Feldman* doctrines.

4. Moreover, the entirety of their claims against Dr. Stern arise out of an evaluation he conducted of one plaintiff in accordance with state law and in preparation for a November 2016 probate court hearing, where he testified.

5. Dr. Stern was acting as an arm of the court; therefore he is entitled to quasi-judicial and/or judicial immunity, and he is also entitled to absolute witness immunity.

6. Qualified immunity also bars the claims against Defendant Stern, because his activities did not violate any clearly established rights about which a reasonable person would have known.

7. Naked assertions without factual support fail to state a claim upon which relief can be granted and warrants dismissal of a claim. *Bell Atlantic v Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v Iqbal,* 556 U.S. 662, 678 (2009).

8. The allegations contained within the plaintiffs' complaint fail to state a claim

upon which relief can be granted, because the bulk of the claims against Defendant Stern are based wholly on speculation and conjecture.

9. Since the gravamen of the plaintiffs' claims sound in an unconstitutional custom, policy, or practice, and the plaintiffs have named the appropriate government entities, Defendant Stern's inclusion in this lawsuit is redundant and he should be dismissed.  Moreover, he would enjoy the same immunity granted to the State defendants.

10. The plaintiffs have failed to state a viable Eighth Amendment claim fr deliberate indifference to serious medical needs, particularly as they have failed to outline any serious medical need for which treatment was delayed or refused, among other reasons.

11. On _____, defense counsel sought concurrence from plaintiff's counsel pursuant to L. Rule 7.1(a).  Concurrence has not been granted.

WHEREFORE, defendant Charles Stern respectfully requests that this Honorable Court grant his Motion to Dismiss and dismiss the plaintiffs' claims against him in their entirety.

Respectfully submitted,

*/s/ Scott L. Feuer*
SCOTT  L. FEUER (P38185)
Attorney for Defendant Frederick Person
888 West Big Beaver Road, Suite 850
Troy, MI  48084
Tel: (248) 723-7828, Ext. 201
Fax:(248) 723-7857
sfeuer@fklawyers.com

UNITED STATES DISTRICT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL PELICHET, BONN WASHINGTON,
JOSHUA RAGLAND, DARIUS BICKERSTAFF,
through his guardian, MARY BICKERSTAFF, and
MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.,

                                  Case No. 18-cv-11385-PDM-MKM

        Plaintiffs,                Hon. Paul D. Borman

-vs-                           Mag. Anthony P. Patti

NICK LYON, in his official capacity,
LISA MEDOFF, MARY CLAIRE SOLKY,
LAURIE ALBERT, HANUMAIAH BANDLA,
ARUNA BAVINENI, SHARON DODD-KIMMEY,
CRAIG LEMMEN, KIMBERLY KULP-OSTERLAND,
LISA MARQUIS, MARTHA SMITH,
DAVE BARRY, KELLI SCHAEFER,
JOE CORSO, DIANE HEISEL, in their individual
and official capacities, CHARLES STERN, individually,
HEGIRA PROGRAMS, INC., NEW
CENTER COMMUNITY SERVICES,
INC., CARELINK NETWORK, INC.,
BEHAVIORAL HEALTH PROFESSIONALS
PARTNERSHIP, INC., and MICHIGAN
DEPARTMENT OF HEALTH AND HUMAN
SERVICES, (Count II and injunctive relief only),

        Defendants.

> **BRIEF IN SUPPORT OF
> DEFENDANT, CHARLES STERN,
> Ph.D's MOTION TO DISMISS
> PURSUANT TO FED. R. CIV. P.
> 12(b)(6)**

_____

| LAURENCE H. MARGOLIS (P69635) | JAMES M. GALLAGHER (P73038) |
|---|---|
| Margolis Law, PC | James Gallagher PLLC |
| Co-Counsel for Plaintiffs | Co-Counsel for Plaintiffs |
| 214 S. Main Street, Suite 202 | 214 S. Main Street, Suite 202 |
| Ann Arbor, MI 48104 | Ann Arbor, MI 48104 |
| (734) 994-9590 | (734) 274-5090 |
| larry@lawinannarbor.com | jgallagher@jamesgallagherlaw.com |

ANDREA L. RIZOR (P78382)
CHRIS E. DAVIS (P52159)
Attorneys for Plaintiff MPAS
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
arizor@mpas.org
cdavis@mpas.org

DARRIN F. FOWLER  (P53464)
KETHERINE J. BENNETT (P75913)
Michigan Dept. of Attorney General
Attorneys for MDHHS Defendants
525 West Ottawa Street
P. O. Box 30758
Lansing, MI 48933
517-373-1160
Fowlerd1@michigan.gov

SCOTT L. FEUER (P38185)
JENNIFER E. BRUENING (P66846)
Law Offices of Scott Feuer, P.C.
Attorneys for Defendant Charles Stern
888 West Big Beaver Road, Suite 850
Troy, MI  48084
(248) 723-7828, Ext. 201
sfeuer@fklawyers.com
jbruening@fklawyers.com

SCOTT S. HOLMES (P66580)
Foley & Mansfield, PLLP
Attorney for Defendant CareLink
Network, Inc.
130 East Nine Mile Road
Ferndale, MI 48220
(248) 721-4200
sholmes@foleymansfield.com

PAUL J. DWAIHY (P66074)
Plunkett Cooney
Attorney for Defendant Lisa Medoff
150 West Jefferson Avenue, Suite 800
Detroit, MI 48226
(586) 783-7621
pdwaihy@plunkettcooney.com

LOREN D. BLUM (P38557)
Elia & Ponto, PLLC
Attorney for Defendant Hegira Programs,
Inc.
28411 Northwestern Hwy, Suite 640
Southfield, MI 48034
(248) 223-0120
Loren.Blum@Liberty.Mutual.com

---

## BRIEF IN SUPPORT OF DEFENDANT, CHARLES STERN, Ph.D's MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES** ............................................................................... ii

**CONCISE STATEMENT OF ISSUES PRESENTED** ....................................... v

**CONTROLLING OR MOST APPROPRIATE AUTHORITY** ..................... vii

**STATEMENT OF FACTS** ................................................................................ 1

**ARGUMENT** ..................................................................................................... 4

   I.   Plaintiffs' Claims Are Barred By The *Heck*, *Younger*, And *Rooker-Feldman* Doctrines, Res Judicata, And Collateral Estoppel. .................................... 4

   II.  Defendant Stern is absolutely immune from liability for his evaluation of Mr. Pelichet and testimony in the probate court. ............................................. 8

   III.   Defendant is also entitled to qualified immunity. ............................... 17

   IV.  The plaintiffs' claims should be dismissed because they are based on speculation and conclusory allegations. .................................................... 19

   V.  The plaintiffs have failed to state a claim for Eighth Amendment deliberate indifference to serious medical needs against defendant stern. ........................... 20

   VI. The gravamen of the plaintiffs' complaint is that the state's customs, policies, or practices are unconstitutional ................................................................. 23

   **CONCLUSION AND RELIEF REQUESTED** ........................................... 25

## INDEX OF AUTHORITIES

**Cases**

*Allen v McCurry,* 449 U.S. 90 (1980),.................................................................. vii, 6

*Ashcroft v Iqbal,* 556 U.S. 662 (2009) ............................................................. vi, 20

*Bell Atlantic v Twombly,* 550 U.S. 544 (2007)..............................................vi, 19, 20

*Blackmore v. Kalamazoo County,* 390 F. 3d 890 (6th Cir. 2004)............................. 21

*Briscoe v Lahue,* 460 U.S. 325 (1983),.........................................................vii, 8, 9

*Bush v Rauch,* 38 F. 3d 842 (6th Cir. 1994)............................................................. 11

*Carroll v Carman,* 135 S. Ct. 348 (2014);.............................................................. 18

*City & Cty. Of S.F. v Sheehan,* 135 S. Ct. 1765 (2015)........................................ 18

*Cooney v Rossiter,* 583 F.3d 967 (7th Cir. 2009) ................................................... 11

*DeShaney v Winnebago,* 489 U.S. 189 (1989)(...................................................... 21

*Diehl v Danuloff,* 242 Mich. App. 120 (2000),..................................................... 14

*Estelle v. Gamble,* 429 US 97 (1976); .................................................................. 20

*Exxon Mobil v Saudi Basic,* 544 U.S. 280 (2005),.............................................vii, 7

*Filarsky v Delia,* ____ U.S. ____; 132 S.Ct. 1657 (2012)..................................... 13

*Foster v Michigan,* 573 F. App'x 377 (6th Cir. 2014) ........................................... 24

*Fry v. Napoleon Community Schools,* 580 U.S. ____; 137 S. Ct. 743 (2017) ......................... 23

*Grant v. Hollenbach,* 870 F.2d 1135 (6th. Cir 1989),........................................... 11

*Gregory v City of Louisville,* 444 F.3d 725, 743 (6th Cir. 2006)............................ 23

*Gutierrez v. Lynch,* 826 F. 2d 1534, 1538 (6th Cir. 1987) .................................... 20

*Heck v Humprey,* 512 U.S. 477 (1994).............................................................vii, 4

*Helwig v Vencor*, 251 F.3d 540 (6th Cir. 2001)....................................................... 23

*Huftile v LC Miccio-Fonseca,* 410 F.3d 1156 (9th Cir. 2005), .................................. 5

*Hughes v Long,* 242 F.3d 121 (3rd Cir. 2001),....................................................... 12

*Jackson v. Schultz,* 429 F.3d 586 (6th Cir. 2005). ................................................ 21

*Kentucky v. Graham,* 473 U.S. 159(1985)........................................................... 24

*Kurzawa v Mueller,* 732 F.2d 1456 (6th Cir. 1984), ............................................. 10

*Laney v Farley,* 501 F.3d 577 (6th Cir. 2007). .................................................... 17

*Maiden v Rozwood,* 461 Mich 109 (1999), ........................................................ 14

*McArdle v Tronetti,* 961 F.2d 1083 (1992)..................................................... 13, 22

*Minger v Green,* 239 F.3d 793(2001) ................................................................. 23

*Monell v. Dept. of Social Srvcs.,* 436 U.S. 658(1978).......................................... 24

*Morstad v Dept. of Corr.,* 147 F.3d 741 (1998),.................................................. 12

*Moses v Parwatikar,* 813 F.2d 891 (8th Cir. 1987). .............................................. 12

*Nelson v Murphy,* 44 F.3d 497 (1995),............................................................. 6, 7

*Petty v County of Franklin,* 478 F.3d 341(6th Cir. 2007) ...................................... 24

*Reichle v Howards,* 566 U.S. 658 (2012). ........................................................... 17

*RMI Titanium v Westinghouse,* 78 F.3d 1125 (6th Cir. 1996). ................................. vi

*Saucier v Katz,* 533 U.S. 194 (2001)................................................................... 18

*Simon v Eastern Kentucky Welfare,* 426 U.S. 26 (1976) ......................................... 19

*United States v BAE Systems,* 957 F. Supp. 2d 856 (2013). .................................... 20

**Statutes**

MCL 330.1434 .............................................................................................. 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. v

## CONCISE STATEMENT OF ISSUES PRESENTED

1. The plaintiffs' claims are based on their involuntary commitment to psychiatric hospitals as a result of judicial proceedings in Michigan Courts.  Their claims cannot succeed without calling into question the validity of the orders entered by the Michigan Probate Courts.  As such, the claims are barred in their entirety by numerous doctrines, including res judicata, collateral estoppel, and the *Heck, Younger,* and *Rooker-Feldman* doctrines, which collectively prohibit a plaintiff from maintaining an action where it involves collaterally attacking a state court order.

2. The plaintiffs' claims against Dr. Stern are based on an evaluation he conducted of one plaintiff, and testimony he provided at a Probate Court hearing about that plaintiff.  Dr. Stern's activities were conducted in accordance with state law governing the re-assessment of NGRI patients. He is entitled to absolute immunity as a witness, and/or quasi-judicial or judicial immunity for his activities as an arm of the court.

3. The plaintiffs' claims are also barred against Dr. Stern because he is entitled to qualified immunity.  A reasonable person in Dr. Stern's position would not have understood that conducting evaluations required under state law, then testifying as to his findings, violated a clearly established federal right about which he should have known.

4. The bulk of the plaintiffs' allegations, especially against Dr. Stern, are based on

"information and belief," not material facts.  The plaintiffs cannot base their lawsuit upon speculation and conjecture, but must plead facts from which a viable cause of action can be inferred.  They have not done so in this case.

5. The gravamen of the plaintiffs' complaint is that the State has adopted or promulgated a practice, procedure, or policy, enforced by its employees and contractors, including defendant Stern, that has led to the deprivation of their constitutional rights.  Regardless of the plaintiffs' attempts to plead a claim against Dr. Stern in his individual capacity, the complaint sets forth claims against the government itself.

6. The plaintiffs' Eighth Amendment claim against Dr. Stern fails for numerous reasons, including that he was not their jailor, they have failed to establish a serious medical need for which treatment was refused or delayed, and ,  to the extent that Dr. Stern could even be considered a "treater," the facts outlined by plaintiffs establish he did provide treatment.  Dissatisfaction with the treatment rendered does not, standing alone, establish a "deliberate indifference to serious medical needs."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

A motion brought under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium v Westinghouse,* 78 F.3d 1125, 1134 (6th Cir. 1996). A complaint must contain more than "labels and conclusions and a formulaic recitation of a cause of action's elements" to establish grounds for relief. *Bell Atlantic v Twombly,* 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly* at 557). Instead, the complaint must contain sufficient factual matter to state a claim that is facially plausible. *Id.* A claim is facially plausible if the factual content permits a court to infer that the defendant is liable for the alleged misconduct. *Id.*

A sufficiently pleaded complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are grounds for dismissal. *Id.* When the well-pleaded facts do not permit an inference of something more than the mere possibility of misconduct, the plaintiff has failed to show an entitlement to relief. *Id.* The Court is not required to accept as true a legal conclusion couched as a factual allegation. *Id* at 668. Mere conclusions are not entitled to the assumption of truth; that is, "[w]hile legal conclusions can provide the framework of a complaint, **they must be supported by factual allegations." *Id***

vii

(emphasis added).

The plaintiffs' complaint in this case, at least as against Defendant Stern, cannot succeed for myriad reasons. The most significant reasons include absolute witness and quasi-judicial immunity as discussed in depth in *Briscoe v Lahue,* 460 U.S. 325 (1983), and the various doctrines that preclude litigation of an already litigated issue as espoused in *Heck v Humprey,* 512 U.S. 477 (1994)., *Exxon Mobil v Saudi Basic,* 544 U.S. 280, 284 (2005), and *Allen v McCurry,* 449 U.S. 90, (1980), among others. Even if he was not entitled to absolute immunity, he is certainly entitled to qualified immunity.

Beyond that, however, the claims against Dr. Stern are speculative and based wholly on conjecture.  Moreover, the plaintiffs' claims are an attack on the system itself, which makes Dr. Stern a redundant party.   Finally, the plaintiffs have failed to set forth facts establishing an Eighth Amendment claim.

## STATEMENT OF FACTS

The overarching theme of the plaintiffs' complaint is that there exists a policy of keeping mentally ill Michigan residents who were adjudicated Not Guilty of their crimes by Reason of Insanity unconstitutionally confined to psychiatric hospitals. Newly added as a plaintiff is MPAS, an organization whose mission is to advocate for those with disabilities.  Per the complaint, its constituents include not just the named plaintiffs, but "all other forensic patients."

The plaintiffs have added myriad additional public policy arguments to their complaint, including a new introductory section in which they lament the overall treatment of mentally ill people, claim that NGRI patients are treated punitively, and claim that the laws and policies promulgated by the state are unfair. *Id* (Dkt No. 44, Page ID 875-877, §3-10, 4, 8, 9, 10, 276, 277).  The plaintiffs claim, for instance, that court-appointed attorneys are overworked and underpaid, suggesting that this renders them ineffective at their jobs. *Id.* §205, 206.  They collectively allege that their ALS contracts are unfair and that they should not be hospitalized for violating them.  They are angry that the courts have continuously approved their continued NGRI status. Absolutely none of those allegations, however, have anything to do with Dr. Stern, whom they admit in their own pleadings did nothing more than evaluate one plaintiff, Darryl Pelichet, on one occasion at the behest of the state.

As the plaintiffs state in their complaint, Doctor Stern is a psychologist who has performed psychological evaluations of NGRI patients at the State's request in preparation for probate court hearings in which the State has petitioned for ongoing

hospitalization. Page ID 880, §23; Page ID 894-897, §83-97. They allege that he conducted only a cursory examination of Mr. Pelichet before he concluded that Mr. Pelichet met the criteria for continued treatment, and that he testified as those opinions on November 9, 2016. Id. They allege that Dr. Stern provided testimony that was inaccurate, false, and/or misleading. Id. They rely extensively on an ORR report (revised four times)[1] that was prepared after Mr. Pelichet filed a complaint to ORR about the November 2016 hearing. According to the amended complaint, Doctor Stern's testimony at the hearing did not accurately regurgitate the contents of Mr. Pelichet's medical records, and it is his speculative contention that Dr. Stern's testimony led the Probate Court to confine him for an additional eight months or so before he was eventually released from his NGRI status.

Beginning on Page ID 919 and continuing through Page ID 934, the plaintiffs allege that the defendants acted together to continue the plaintiffs' civil commitment, in violation of their civil rights. Indeed, paragraph 200 expressly indicates the plaintiffs' belief that there exists a custom, policy, or practice of maintaining a patient's NGRI status, as does paragraph 241. Paragraph 247 reiterates the overall theme that the plaintiffs feel Michigan's treatment of NGRI patients traps them in an indefinite cycle of hospitalization. Many of the paragraphs, in order to substantiate the alleged custom, state a reliance on "information and belief," rather than facts. As

---

[1] Although they allege that "multiple investigations" found various and repeated violations by Dr. Stern, their own exhibits make plain this is not the case. The reports are simply four separate revisions of the same report arising out of the same alleged incident – the hearing on November 16, 2016. Thus, the plaintiffs' contention that "multiple investigations" found Doctor Stern had given "false or misleading testimony" in probate court hearings, plural, is itself an ironically false and misleading statement.

will be discussed in depth below, the plaintiffs' supposition is not enough to sustain a claim, nor is it enough to enable the plaintiffs to engage in an unabated fishing expedition to try and support a claim.

Importantly, nowhere in the complaint do the plaintiffs allege that Dr. Stern ever met with or had anything to do with any plaintiff other than Mr. Pelichet, although they do make sweeping generalizations about his conduct based on their own assumptions. Moreover, of the one plaintiff with which he interacted, plaintiffs do not contend that Dr. Stern had any encounters with Darryl Pelichet other than evaluating him and testifying at a hearing in November 2016.  Not one allegation suggests that Dr. Stern is involved, in any way, with the ALS contracts, in making decisions about the plaintiffs' confinement, or rendering treatment to them.  Indeed, in response to this defendant's original motion to dismiss, plaintiffs responded **specifically** on behalf of Mr. Pelichet and stated in their introduction that the defendant's motion concerned **only** Dr. Stern and Darryl Pelichet. (Dkt. No. 35, Pg. ID 802).  Continuing on the next page, plaintiffs stated that Darryl Pelichet had "chosen" to sue Dr. Stern personally, and repeatedly referenced a singular claim involving just those two parties.

As was true with the first complaint, the plaintiffs' amended complaint generalizes many of the claims to include all defendants.  The plaintiffs outlined procedural and substantive due process claims in which the word "defendants" is frequently used to describe a policy, practice, or custom, not a specific act of conduct by a specific individual.  The plaintiffs outline several alleged "practices" or customs

of failing to provide due process to NGRI patients, among other things, again broadly referencing the defendants as a whole.  Consistent with the arguments advanced in this brief, Defendant Stern respectfully requests that this Honorable Court dismiss the claims against him in their entirety.

## **ARGUMENT**

## I.   **PLAINTIFFS' CLAIMS ARE BARRED BY THE *HECK*, *YOUNGER*, AND *ROOKER-FELDMAN* DOCTRINES, RES JUDICATA, AND COLLATERAL ESTOPPEL.**

The plaintiffs' collective allegations in this case are based on their ongoing hospitalizations for mental health treatment that followed their commission of various crimes.  The plaintiffs were all adjudicated Not Guilty by Reason of Insanity for their crimes.   The courts where their adjudications took place entered orders for their hospitalization pursuant to state law.  As the plaintiffs' complaint makes clear, the Michigan Probate Courts entered additional orders continuing their hospitalizations. Mr. Pelichet, who is the only plaintiff to have alleged specific factual allegations against Dr. Stern, described his court proceedings from 2016 onward.  Indeed, his grievance against Defendant Stern is based on an evaluation he conducted in preparation for a November 2016 hearing, and testimony he provided at that hearing, and which resulted in an order continuing his hospitalization. Because the plaintiffs' lawsuit is premised on valid state court orders, their claims must fail.

The Supreme Court directly addressed this issue in *Heck v Humprey,* 512 U.S. 477 (1994).  Plaintiff in that case was convicted for killing two people.  He filed a civil

suit under §1983 against various people involved in the underlying investigation and prosecution.  His arguments paralleled those advanced by the plaintiffs in this case. The *Heck* plaintiff alleged that the defendants' investigation was unreasonable, unlawful, that they destroyed exculpatory evidence, and that their wrongful conduct led to his conviction.  The Supreme Court held that a §1983 claim challenging a prior conviction was **not** a cognizable claim.  *Id.* at 483.

> The Court assessed a litigant's ability to collaterally attack a conviction, stating:
>
> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution. *Id* at 485.

The Court explicitly held that  a cause of action does not exist unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by a writ of habeas corpus.  *Id.* at 487, 489.  "A claim for damages bearing that relationship to a conviction or sentence that had *not* been so invalidated in not cognizable under §1983." *Id.*  Thus, if a litigant seeks damages in a §1983 suit, **the court must consider whether a judgment in their favor would imply the invalidity of the underlying conviction or sentence**. *Id.*  If so, the complaint must be dismissed.

Surprisingly few courts have addressed this doctrine in the context of an NGRI plaintiff.  The Ninth Circuit in *Huftile v LC Miccio-Fonseca,* 410 F.3d 1136 (9th Cir. 2005), applied the rule to bar a §1983 claim in which the plaintiff challenged his civil commitment.  The Court reasoned that a challenge to the procedures used to commit him necessarily implicated the validity of the commitment itself.

The Seventh Circuit in *Nelson v Murphy,* 44 F.3d 497 (1995), agreed that *Heck* barred the plaintiffs' claims, but it went further and discussed other, similar doctrines that also bar claims based upon a valid court order.  It found that the complementary *Younger* abstention doctrine barred the claims.  As the Court stated, "**We do not share plaintiffs' apparent view that dissatisfaction with the state courts' handling of an issue justifies carting one's claim off to federal court.**" *Id.* at 502.  The Court recognized that "Federal post-trial intervention, in a fashion designed to annul the result of a state trial...deprives the States of a function which quite legitimately is left to them..." *Id.*  The Court squarely held that a person participating in state litigation "must make his stand there rather than attempt the equivalent of federal-defense removal by filing an independent §1983 suit." *Id.*

The *Nelson* Court acknowledged several other doctrines that barred the claims, including res judicata and collateral estoppel, which bars the claims where the plaintiff had an opportunity to litigate the underlying matter and did not.[2]  That is, the plaintiffs' "failure to oppose approval" of the orders underlying their §1983 claims "does not avoid the fact that they *were* approved." *Id.* at 503.

Further barring the claims is the *Rooker-Feldman* doctrine, which the Supreme Court recently affirmed precludes claims by a "state-court loser complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

---

[2] Res judicata and collateral estoppel apply to claims brought pursuant to §1983. *Allen v McCurry,* 449 U.S. 90, (1980).  Mutuality of estoppel is not required, and a litigant can use collateral estoppel "offensively" against the party who lost in the first case. *Id.* at 95.

*Exxon Mobil v Saudi Basic,* 544 U.S. 280, 284 (2005); See also *Nelson,* supra (stating that the doctrine establishes that aggrieved litigants may not use §1983 to contest the outcome of state litigation).

Underpinning the plaintiffs' entire claim against Dr. Stern in this case is the idea that the additional time Mr. Pelichet spent hospitalized between November 2016 and his release in January 2018 was not valid, and that the Probate Court order continuing his confinement, which entered in November 2016, was invalid and/or based on inaccurate information.[3]  Setting aside the plaintiffs' conjecture about **why** the Probate Court continued his hospitalization, the only way to succeed on the claims before this Honorable Court is to establish that their orders for continued hospitalization were wrong.   Put differently, plaintiffs allege that their injury and deprivation is the fact of their continued hospitalization.  The plaintiffs cannot argue that the court order was valid, but Dr. Stern's testimony and conduct was not, when the court order affirms his findings that continued hospitalization was warranted.  It is impossible to argue that the continued hospitalization was unconstitutional without also arguing that the state court orders were invalid.  The plaintiffs are not entitled to use this Court to retroactively contest the validity of the Probate Courts against them.

The plaintiffs' theories in this case cannot succeed because whether they met the statutory criteria for confinement was decided by the probate court.  The plaintiffs

---

[3] It should be noted that, per the plaintiff's own admissions and exhibits, particularly paragraph 97, plaintiff filed a petition for discharge with the Probate Court ***5 months after*** his November 2016 hearing.  Importantly, his petition was denied, which on its face establishes that at the time the November 2016 order entered, it was valid.  That he was ultimately released less than a year later does not invalidate the prior court orders continuing his hospitalization.

did not appeal those judgments, seek habeus corpus, or otherwise act to contest those findings in the state courts.  The Court orders are beyond contestation. **The plaintiffs are not entitled to relitigate the state court issues in this case to get a different result, and they cannot collaterally attack the state court orders to pursue a claim for damages against the defendant.**  Pursuant to the myriad doctrines described above, the plaintiffs' claims should be dismissed in their entirety.

II.     **DEFENDANT STERN IS ABSOLUTELY IMMUNE FROM LIABILITY FOR HIS EVALUATION OF MR. PELICHET AND TESTIMONY IN THE PROBATE COURT.**

The plaintiffs' claims against Doctor Stern are predicated on the notion that he provided "false or misleading" testimony during a November 2016 probate court hearing pertaining to Darryl Pelichet, and/or that the certification he provided to the probate court was inaccurate.  Doctor Stern vehemently denies such allegations, but even if the plaintiffs' claims are entirely true, they cannot support a claim against him.  Whether he is treated as a layperson or a government actor, he is entitled to absolute immunity either as a witness, or an arm of the court.  Because Defendant Stern is entitled to absolute immunity, the complaint against him should be dismissed.

The Supreme Court squarely addressed this in *Briscoe v Lahue,* 460 U.S. 325 (1983), when it held that witnesses are <u>absolutely immune</u> from liability based on testimony provided in Court, ***<u>even where it is claimed that the witness gave perjured testimony</u>***.  *Id.* at 326.  The Court affirmed that a person cannot recover damages against either a private party **or** a state actor for testimony given in a judicial

8

proceeding. *Id.* at 330, 336. It recognized that this rule **absolutely** protects a witness from suits for damages arising out of testimony in judicial proceedings. *Id.* at 330. This rule applies equally to state actors and officials, like police officers. *Id.* at 336. Significantly, immunity applies "**even if the witness knew the statements were false and made them with malice.**" *Id.* at 332*,* 341.

This rule is based on the important policy consideration that "the paths that lead to the ascertainment of truth should be left as free and unobstructed as possible." *Id.* at 333.   A witness who fears being sued because they provide unfavorable testimony might be reluctant to testify, and their testimony could be distorted by their fear of a lawsuit. *Id* at 333.   Moreover, as is particularly relevant here, **the Court recognized that different people may interpret testimony in different ways**:

> Even within the constraints of the witness' oath **there may be various ways to give an account or to state an opinion**. These alternatives may be more or less detailed and **may differ in emphasis and certainty**. A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. *Id.* at 333. (emphasis added).

The factfinding process is, therefore, best served when the witness' testimony is submitted unadorned to the factfinder, who can consider it, <u>after cross-examination,</u> with all the other evidence to determine where the truth lies. *Id* at 334.

The role of the Courts is so important that "those involved in judicial proceedings should be 'given every encouragement to make a full disclosure of all pertinent information within their knowledge.'" *Id.* at 335.   "[C]ontroversies

sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another . . . . **Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation**." *Id.* The Court thus concluded that even when an officer or government official appears as a witness, "he may reasonably be viewed as acting like any other witness sworn to tell the truth," or, alternatively, "<u>**he may be regarded as an official performing a critical role in the judicial process, in which event he may seek the benefit afforded to other governmental participants in the same proceeding.**</u>" *Id* at 336.

The Court also outlined the additional public policy reasons for affording absolute immunity to government officials, stating that "[s]ubjecting government officials...to damages liability under §1983 for their testimony might undermine not only their contribution to the judicial process, but also the effective performance of their other public duties." *Id.* at 343. If they were not afforded immunity, lawsuits of this ilk "could be expected with some frequency," as police officers "testify in scores of cases every year, and defendants often will transform resentment at being convicted into allegations of perjury by the State's official witnesses." *Id.* It applies equally to lay witnesses and to witnesses whose function in a judicial proceeding is "somewhat different...but whose participation in bringing the litigation to a just – or possibly unjust – conclusion is equally indispensable." *Id.*

This conclusion has been reached by numerous judicial circuits and state courts. In *Kurzawa v Mueller,* 732 F.2d 1456 (6th Cir. 1984), the Court held that the

Michigan Department of Social Services Employees and the mental health professionals hired to perform evaluations were all entitled to absolute immunity for their investigation and testimony in a State Court proceeding to terminate parental rights. *Id.* at 1458. The Court observed that their goals of protecting the health and well-being of children would be frustrated if they had to worry about the intimidation and harassment from dissatisfied parents. *Id.*

In *Grant v. Hollenbach,* 870 F.2d 1135 (6th. Cir 1989), the Court held that prosecutors and lay witnesses were absolutely immune from the plaintiff's claims that they conspired to bring false charges against him to the grand jury, because the challenged conduct occurred while those witnesses were functioning in a "quasi-judicial" role. That was a case, like this one, where the plaintiff alleged that the defendants "knowingly presented false information" to secure an indictment, that the defendants were either negligent or reckless in their job performance, and that their motivations for prosecuting him were improper. *Id.* at 1135-1136. The Court rejected these claims and found that the witnesses were absolutely immune from civil liability for damages based on their testimony, even if they knowingly perjured themselves. *Id* at 1139; See also *Bush v Rauch,* 38 F. 3d 842, 847 (6th Cir. 1994)(discussing absolute and quasi-judicial immunity at length).

The Seventh Circuit in *Cooney v Rossiter,* 583 F.3d 967, 970 (7th Cir. 2009) explicitly extended these immunities to court-appointed experts and psychiatrists, because "**they are arms of the court, much like special masters, and deserve protection from harassment by disappointed litigants, just as judges do**."

11

"<u>Experts asked by the court to advise on what disposition [is appropriate] need</u> <u>absolute immunity in order to be able to fulfill their obligations without the worry of</u> <u>intimidation and harassment from dissatisfied parents</u>." *Id.* (quotations and citations omitted).

The Third Circuit reached the identical conclusion in *Hughes v Long,* 242 F.3d 121 (3rd Cir. 2001), concluding that the private mental health professionals hired to provide their professional assessment in a child custody case were absolutely immune from suit  because they acted as arms of the court in the same way as would a court-appointed doctor, or a "non-judicial person who fulfills a quasi-judicial role at the court's request." Id. at 126.

The Eighth Circuit in *Morstad v Dept. of Corr.,* 147 F.3d 741 (8th Cir. 1998), found that a psychologist hired to evaluate the plaintiff prisoner and report to the court his findings was entitled to absolute immunity.  That same circuit relied on *Kurzawa,* among others, to extend immunity to a psychiatrist who performed a competency evaluation of the plaintiff in *Moses v Parwatikar,* 813 F.2d 891 (8th Cir. 1987).   Like the myriad cases discussed above, that Court believed the doctor performed functions essential to the judicial process, and that his function was analogous to a witness in a judicial proceeding.  His duties included examining the plaintiff and reporting his findings to the court.  The Court recognized that without immunity, psychiatrists would be reluctant to accept court appointments, and the threat of civil liability could taint their objective opinions.

The Third Circuit addressed a near identical claim in *McArdle v Tronetti,* 961

F.2d 1083 (1992). The plaintiff committed a crime and was involuntarily committed to a psychiatric institution. After he was released, he sued two physicians claiming they gave false testimony, made false diagnoses, and filed a false petition with the Court to keep him committed. The Court held that the psychiatrist who completed a report and furnished it to the Court was **an integral part of the judicial process functioning as an arm of the court**, and therefore was protected by the same absolute judicial immunity that protected the judge. *Id.* at 1085. The Court also found that his report and recommendation to the court constituted testimony protected by absolute witness immunity. *Id.* Moreover, the Court found, consistent with numerous other circuits, that this immunity extended to conspiracy allegations, because otherwise "judges, prosecutors, witnesses and others "on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid." *Id.* at 1086.

These conclusions find even further support in *Filarsky v Delia,* ___ U.S. ___; 132 S.Ct. 1657 (2012), which addressed whether an independent contractor hired by the government could be entitled to *qualified* immunity. The Court's recitation of policy considerations underlying immunity echo those espoused by the Courts cited above. The *Filarsky* Court recognized that the government's need to attract talented individuals to perform government work included "**private individual[s] briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision.**" *Id.* at 413 (emphasis added). Indeed, the *Filarksy* Court expressly found that the policy

13

considerations for affording qualified immunity to public employees ***also*** applied to private individuals who enter into contracts with the government to perform government tasks. This immunity allows contractors who carry out government work to serve the government without fear of personal exposure. *Id.* It serves the purpose of ensuring that talented candidates are not deterred from the work by the threat of a lawsuit. *Id* at 1665 (quotations omitted). "**The government's need to attract talented individuals is not limited to full-time public employees.**" *Id* at 1666 (emphasis added).

A cursory search of the case law reveals that State Courts nearly universally agree with these principles. Michigan Courts, in fact, have relied on these federal interpretations and drawn the same conclusions. In *Diehl v Danuloff*, 242 Mich. App. 120 (2000), for example, the Court held that the defendant psychologist was entitled to quasi-judicial immunity for an evaluation and recommendation he gave to the court in a child custody matter. The Michigan Court of Appeals observed that Courts in other jurisdictions had resoundingly, **"[w]ith virtual uniformity**," granted absolute immunity to individual performing functions similar to those performed by defendant. The *Diehl* Court also described the psychologist as an "arm of the court" who had "performed a function integral to the judicial process." *Id* at 133-134. As such, the defendant in that case was entitled to absolute immunity.[4]

---

[4] See also *Maiden v Rozwood,* 461 Mich 109, 134 (1999), finding that statements a witness makes during the course of a judicial proceeding are **absolutely privileged,** even when those statements are false or made with malice. The Court also held that the privilege is to be construed ***liberally*** so that participants in judicial proceedings are free to express themselves without fear of retaliation and can be free from concern that they will be targeted by the loser for further litigation.

In this case, Doctor Stern, and other similarly situated psychologists and psychiatrists, could not perform their job function of assessing a patient and giving their professional opinion about that patient's readiness to return to society if they had to constantly worry they would be sued or threatened by disgruntled patients dissatisfied with their conclusions. The plaintiffs admit and agree that Dr. Stern was contracted to conduct the evaluation and provide testimony to the Courts in connection with that evaluation.  They admit and agree that he did so in accordance with the State's Mental Health Code.  They admit that their claims against him arise out of their disagreement with testimony he gave at a hearing pertaining to Darryl Pelichet in the Wayne County Probate Court in November 2016. Doctor Stern is absolutely immune from any suit for damages stemming from his evaluation of the NGRI patients in accordance with state law, and he is immune from damages arising out of his testimony during judicial proceedings.  That remains true even if the plaintiffs' baseless allegations that he provided false and misleading testimony had any merit whatsoever.[5]

---

[5] These allegations are premised entirely on the **<u>hearsay</u>** opinion of a lay witness who does not have any medical or psychological training or licensing, who was not involved with or present at the judicial proceedings at issue, whose conclusions are based **entirely on hindsight scrutiny** and semantics about Dr. Stern's testimony, and the lay witness' personal opinions and conclusion about how and why the Probate Court ruled against Mr. Pelichet. The reports from ORR on which they rely attach a transcript of the hearing where Dr. Stern's testimony can be read in context, without the artful and semantical framing the plaintiffs are attempting, in hindsight, to attach to it. See, e.g., Page IDs 1028-1033.  Significantly, Mr. Pelichet was represented by counsel, who cross-examined Dr. Stern.

It is also worth noting that Mr. Reed's reports are contradictory and flatly wrong in some respects. Just as one example, the plaintiffs claim in the complaint that Dr. Stern testified Mr Pelichet had refused to take medications on some occasions. §89.  The ORR report and the plaintiffs contend

Doctor Stern, like many doctors who perform this type of work, testifies in scores of cases every year.  If he was not afforded immunity for his testimony in these types of cases, not only would it discourage him, and any other qualified doctor, from performing this type of work at the request of the State, but it would lead to a litany of lawsuits from disgruntled patients who do not like the Probate Court's rulings in their cases.  Doctor Stern in this case is being held to the fire for his testimony because the plaintiffs, and Mr. Reed from ORR, apparently, want to parse the precise meaning of his words at a Court hearing where the *plaintiff was not just represented by counsel, but whose attorney cross-examined Dr. Stern about the things he and Mr. Reed now complain were inaccurate or misleading*.  In other words, the plaintiffs are suing him **because** they disagree with his professional opinions and he did not testify in their preferred manner.  This is an attempt to bully him into testifying in a way they prefer in the future.

**This is exactly the situation that absolute immunity was designed to protect against.**  Since the plaintiffs' claims against this defendant arise as a result of reports he prepared and testimony he gave at a Probate Court hearing mandated under state law, the plaintiffs' claims against defendant Stern cannot succeed on any theory.  For all the reasons stated by the courts cited above, therefore, Defendant Stern is entitled to absolute immunity for his involvement in this matter, and the

---

that this means he gave false and misleading testimony and misled the Court.  Yet, the ORR reports explicitly indicate not only that Mr. Pelichet refused some of his "optional" medications, but that he missed taking his **psychotropic** medications on at least 4 occasions in the two months before his hearing.  See Page ID 1034.  In other words, the plaintiffs' own exhibits do not support their factual allegations against Dr. Stern.

plaintiffs' claims against him should be dismissed in their entirety.

## III. DEFENDANT IS ALSO ENTITLED TO QUALIFIED IMMUNITY

Defendant Stern is also entitled to qualified immunity for his role in this matter. To establish a violation of any civil rights, the plaintiffs must establish that this defendant violated a clearly established *federal* right. *Davis v Scherer,* 468 U.S. 183, 194 (1984). A constitutional violation cannot arise because someone violated a state statute or administrative provision. *Id.* Plaintiffs' allegations against Defendant Stern in this case arise entirely out of conduct he undertook in accordance with state law, specifically Michigan's Mental Health Code, MCL 330.1434 *et seq.* The crux of their allegations is that his evaluations were too brief and that his conclusions did not conform to state law requirements. Even if true, however, all the plaintiffs have alleged is a violation of state statutory and/or common law, which cannot be remedied by 42 U.S.C. §1983. *Laney v Farley,* 501 F.3d 577, 580 (6th Cir. 2007).

In addition, the plaintiffs have not alleged any facts that establish Defendant Stern's conduct violated a *clearly established* federal law that he ought to have known violated the plaintiffs' rights. That is, the plaintiffs must show that the right must be one that every reasonable person would understand that their conduct violates the right. *Reichle v Howards,* 566 U.S. 658, 664 (2012). The plaintiffs cannot make this showing by simply claiming some generalized violation of their liberty rights; they must make a particular showing of an actual violation. The relevant inquiry is whether it would be clear to a reasonable person in the defendant's position that their conduct

17

was unlawful under the circumstances. *Saucier v Katz,* 533 U.S. 194, 202 (2001).

The plaintiffs here cannot show that the average person in Dr. Stern's position would believe that conducting a mental health evaluation at the request of the state, then testifying about his findings in open court, could somehow violate a person's constitutional rights.   Frankly, the notion makes no sense, considering that the evaluation and testimony **were done for the sole purpose of providing the complainant with due process of law.**   At the time these events took place – and even now – it was not "beyond debate" that such conduct was wrong. In fact, the notion of absolute immunity for these exact actions cuts entirely against the idea that this type of conduct could *ever* violate a person's civil rights.   Far from being a clear violation of one's civil rights, therefore, the case law strongly suggests that such conduct is not just permissible but **necessary** to assist courts in their decision-making process.   Under these circumstances, how could Defendant Stern possibly have known that this routine practice, which **had been relied on and encouraged by state courts** for decades, violated a clearly established federal right?

Moreover, qualified immunity allows "ample room for mistaken judgments," *Carroll v Carman,* 135 S. Ct. 348, 350 (2014); and it still attaches even when "with the benefit of hindsight, the officers made some mistakes." *City & Cty. Of S.F. v Sheehan,* 135 S. Ct. 1765, 1775 (2015). This means that the plaintiffs cannot hinge their claims against this defendant on their disagreement with his professional opinions, nor can they hinge their complaints on a full-blown investigation conducted by the ORR that, with hindsight, may have revealed some factual mistakes.   Dr. Stern potentially

making factually mistakes does not strip him of his entitlement to qualified immunity. This is especially true here because the probate court ultimately agreed that Mr. Pelichet required continued treatment. Accordingly, the claims should be dismissed against defendant Stern.

### IV.   THE PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE BASED ON SPECULATION AND CONCLUSORY ALLEGATIONS.

As discussed in depth in the "Controlling Authority" section of this brief, a complaint must contain more than "labels and conclusions and a formulaic recitation of a cause of action's elements" to establish grounds for relief. *Bell Atlantic v Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts upon which a viable cause of action can be inferred. Speculation and conjecture is not sufficient to meet that burden. Moreover, while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

In this case, the plaintiffs' claims fail to provide the factual support necessary to state valid due process and equal protection claims against Dr. Stern. Plaintiffs repeatedly claim that, "upon information and belief," Dr. Stern and others conduct "sham" evaluations, and that they always certify a patient's need for ongoing treatment, among other things. By definition, these are conclusory allegations based on speculation. *See, e.g., Simon v Eastern Kentucky Welfare*, 426 U.S. 26, 43 (1976)(noting that allegations based on information and belief are "speculative at best"). In fact, this Honorable Court recognized as much in *United States v BAE Systems*, 957 F. Supp. 2d

19

856 (2013).  The plaintiffs' allegations are based on nothing more than the plaintiffs' *disagreement* with treatment conclusions and their own supposition. The plaintiffs' nebulous conspiracy claims must be based on something more than wild accusations and assumptions.  The plaintiff's conclusory pleadings do not suffice under *Twombly* and *Iqbal*. See also *Gutierrez v. Lynch,* 826 F. 2d 1534, 1538 (6th Cir. 1987)(conspiracy claims must be pled with specificity; vague and conclusory allegations unsupported by material facts do not suffice).  Because the plaintiffs' pleadings lack factual support and are based on conclusions, their claims against Dr. Stern should be dismissed.

**V.    THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR EIGHTH AMENDMENT DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AGAINST DEFENDANT STERN.**

Plaintiffs have also asserted a claim for deliberate indifference to serious medical needs arising under the Eighth Amendment. Setting aside that this claim should fail for the myriad reasons discussed above, this claim is nonsensical against defendant Stern because a) he was not a medical treatment provider; b) he was not the plaintiffs' jailor and had no control over their medical or psychiatric care; c) ***the plaintiffs actually received continuing and ongoing*** *treatment* ***as a result of these evaluations***; and 4) the plaintiffs have failed to state a serious medical need for which they were denied care.  Accordingly, the plaintiffs' claim should be dismissed.

A claim for deliberate indifference to serious medical needs requires a showing of the "unnecessary and wanton infliction of pain" by those charged with the care and custody of the detainee. *Estelle v. Gamble,* 429 US 97, 105 (1976); *Blackmore v. Kalamazoo*

*County,* 390 F. 3d 890 (6ᵗʰ Cir. 2004).  Not every allegation of inadequate medical treatment states a claim; a complaint that a physician has been negligent in diagnosing or treating a condition does not state a valid claim under the Eighth Amendment. *Id.* at 105-106; See also *DeShaney v Winnebago,* 489 U.S. 189, 199 N. 5 (1989)(it is not a constitutional violation for a state actor to render incompetent medical assistance). Only when the plaintiff pleads facts establishing "such indifference that can offend 'evolving standards of decency'" can a claim survive. *Id.* at 106.  This claim can only be made against those actually detaining the plaintiff, or charged with their care and custody. See, e.g., *Jackson v. Schultz,* 429 F.3d 586 (6ᵗʰ Cir. 2005).

To establish a viable claim, furthermore, plaintiffs would have to show that it was "clearly established" that they had a right to longer psychiatric examinations in preparation of the probate court hearings. *See,* e.g., *Schultz* at 592.  Far from being clearly established, defendant has conducted a diligent search of case law throughout the country and can find not one case suggesting that a patient has a constitutional right to medical evaluations of a certain length, particularly when those examinations are conducted for judicial proceedings and not medical treatment.

Plaintiffs cannot establish a deliberate indifference claim against Dr. Stern in this case because they were not dependent on Dr. Stern for their medical or psychiatric needs, Dr. Stern did not restrain them or prevent them from obtaining care, and the very purpose of the evaluation was to determine if he required **ongoing** and continued hospital care.  Far from establishing a deliberate indifference to serious medical needs, the plaintiffs' claims establish quite the opposite – that the evaluating

doctors believed the plaintiffs would benefit from more treatment than they already had received. Defendant Stern was not the plaintiffs' jailor – he had no control over their medical or psychiatric care whatsoever; that was entirely in control of the hospitals overseeing their care.  In fact, their medical and psychiatric needs **were** being tended to in their respective hospitals.  If they were not receiving psychiatric care, they would have absolutely no basis for their current contention that they remained housed *too long,*

Defendant Stern's evaluations, furthermore, were not conducted for the purpose of rendering medical treatment.  As discussed above, Dr. Stern acted as an "arm of the court" by conducting assessments for the Court's benefit at the hearings related to their treatment.  The plaintiffs' allegations that the evaluation was too short states, at best, a medical malpractice claim that must be brought before the Michigan Courts, not in federal court.  Furthermore, the Probate Court's order finding that the plaintiffs required ongoing hospitalization is prima facie proof that the evaluations they received were constitutionally proper and not cruel and unusual.

Perhaps most important, however, is that the plaintiffs' complaint is factually deficient – **nowhere do the plaintiffs set forth facts establishing that they needed medical care, or that they were denied mental health treatment, which alone is a basis for dismissal.**[6]  Instead, the claim is premised on the notion that the evaluations were too short to be meaningful, and that the doctors' professional

---

[6] See, e.g., *McArdle v Tronetti,* supra, 961 F.2d 1083, 1088 n. 7 (1992), noting that the plaintiff, who made near identical claims to those alleged in this case, failed to allege that "while in custody he had serious medical needs that were deliberately ignored by [the evaluation physician]."

opinions did not align with the plaintiffs' opinions of their own conditions. The plaintiffs' claim makes no sense – if they are contending that they did **not** require additional hospital care, then they are effectively admitting they did **not** have a need for additional mental health treatment, which guts this claim entirely. If they contend that they **did** have a need for additional mental health treatment, then they are effectively admitting that Dr. Stern and the Probate Court's conclusion that they required additional hospitalization was correct. Ultimately, this claim cannot succeed against Dr. Stern and it, too, should be dismissed.

## VI.   THE GRAVAMEN OF THE PLAINTIFFS' COMPLAINT IS THAT THE STATE'S CUSTOMS, POLICIES, OR PRACTICES ARE UNCONSTITUTIONAL

The defendant renews his argument that the gravamen of the plaintiffs' complaint is that the plaintiffs are the alleged victims of an unconstitutional custom, policy, or practice that led to the violations of their civil rights. In so doing, the defendant relies, in part, on the briefs he filed previously in Docket Nos. 29 and 40. As previously argued, the gravamen of their complaint,[7] particularly the procedural and substantive due process claims, is that State policies are designed to keep NGRI patients institutionalized without due process protections and that the system utilized in Michigan should be declared unconstitutional.

Allegations that are based on a custom, policy, or practice enable a person to

---

[7] To determine the relief sought by a plaintiff, one must examine the complaint as a whole to determine its substance, or gravamen. *Fry v. Napoleon Community Schools,* 580 U.S. ___; 137 S. Ct. 743, 755 (2017). See also *Minger v Green,* 239 F.3d 793, 799 (2001); *Helwig v Vencor,* 251 F.3d 540, 550-551 (6th Cir. 2001); *Gregory v City of Louisville,* 444 F.3d 725, 743 (6th Cir. 2006).

bring a direct claim against the governmental body for the custom, policy, or practice that led to the deprivation of constitutional rights. *Monell v. Dept. of Social Srvcs.,* 436 U.S. 658, 690-691 (1978).  Suits brought against individuals in their "official capacity" are treated as a claim against the government entity itself. *Monell* at 690, n. 55; *Kentucky v. Graham,* 473 U.S. 159, 164 (1985).  A suit brought against an individual in their official capacity is not a suit against the actor personally, because the real party in interest is the entity of which the actor is a part. *Id.*  When the entity is a named party, claims against the individual are redundant. See *Foster v Michigan,* 573 F. App'x 377 (6th Cir. 2014); *Petty v County of Franklin,* 478 F.3d 341, 348 (6th Cir. 2007).  Furthermore, the immunities available to the governmental entity are available to individuals sued in their official capacity. *Hafer v. Melo,* 502 U.S. 21, 25 (1991).

Looking beyond the labels and the artful pleadings, the plaintiffs' equal protection, and procedural and substantive due process claims are directed at the policies and practices of the state itself.  Plaintiffs' attempt to label the claims against Dr. Stern as being in his individual capacity only do not change that the **substance** of those claims has to do with the procedures enacted by the state.  The complaint laments the treatment of the mentally ill, alleges that state policies are unfair, and even criticizes their court-appointed attorneys.  They argue that ALS contracts are punitive.  They are angry that state courts approve their continued hospitalization.  Indeed, those claims expressly reference a custom, policy or practice.  Further supporting this conclusion is the addition of *an organization* as a party plaintiff.  The new organization, MPAS, purports to represent **all** individuals "who have been directly affected by

Defendants' unlawful policies and practices..." Absolutely none of those allegations, however, have anything to do with Dr. Stern in his individual capacity.

Since it is "official" action that forms the basis for the plaintiffs' claims, and since official capacity claims are really a claim against the State itself, Dr. Stern should be dismissed. Furthermore, to the extent that the State itself claims immunity under the Eleventh Amendment, any claims against this defendant pertaining to the customs, policies and practices of the state enjoy that same immunity. Accordingly, he should be dismissed

## CONCLUSION AND RELIEF REQUESTED

For the reasons outlined in this brief, as well as those outlined in the defendants' previous Motions to Dismiss, this Honorable Court should dismiss the plaintiffs' claims against defendant Stern in their entirety.

Respectfully submitted,

/s/ Scott L. Feuer
SCOTT L. FEUER (P38185)
JENNIFER E. BRUENING (P66846)
Attorney for Defendant Charles Stern
888 West Big Beaver Road, Suite 850
Troy, MI 48084
Tel: (248) 723-7828, Ext. 201
Fax:(248) 723-7857
Dated: September 25, 2018          sfeuer@fklawyers.com

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on  September 25, 2018 a copy of this document was served electronically upon all counsel of record via the CM/ECF efiling system of the United States District Court.

*/s/ Scott L. Feuer*
SCOTT L. FEUER (P38185)
Counsel  for Defendant Charles Stern
888 West Big Beaver Road, Suite 850
Troy, MI  48084
Tel: (248) 723-7828, Ext. 201
Fax:(248) 723-7857
sfeuer@fklawyers.com
