# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DARRYL PELICHET, *et al.*

     Plaintiffs,

v.

NICK LYON, *et al.*

     Defendants.

Case No. 2:18-cv-11385-PDB-APP
Hon. Paul D. Borman
Mag. Anthony P. Patti

---

**Laurence H. Margolis (P69635)**
**Margolis Law, PC**
Attorney for Plaintiffs
214 S. Main St., Suite 202
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com


**Scott L. Feuer (P38185)**
Law Offices of Scott L. Feuer, P.C.
Attorney for Defendant Charles Stern
888 West Big Beaver Road, Suite 850
Troy, MI 48084
(248) 723-7828, Ext. 201
sfeuer@fklawyers.com


**Scott S. Holmes (P66580)**
**Foley & Mansfield, PLLP**
Attorney for Defendant CareLink
Network, Inc. and BHPi
130 East Nine Mile Road
Ferndale, MI 48220
(248) 721-4200
sholmes@foleymansfield.com


**Katherine J. Bennett (P75913)**
**Darrin F. Fowler (P53464)**
Assistant Attorneys General Michigan
Dep't of Attorney General Attorneys
for MDHHS Defendants
P.O. Box 30755
Lansing, MI 48909
(517) 373-1160
Bennettk1@michigan.gov
Fowlerd1@michigan.gov

**Paul J. Dwaihy (P66074)**
Plunkett Cooney
Attorney for Defendant Lisa Medoff
150 W. Jefferson Ave., Ste. 800
Detroit, MI 48226-4451
(586) 783-7621
pdwaihy@plunkettcooney.com

**Loren Blum (P38557)**
Law Offices of Christine Greig
Attorney for Defendant Hegira
Programs
28411 Northwestern Hwy., Suite 640
Southfield, MI 48034
(248) 223-0120
Fax: (603) 334-9174
Loren.Blum@libertyMutual.com

**Laurence H. Margolis (P69635)**
**Margolis Law, PC**
Attorney for Plaintiffs
214 S. Main St., Suite 202
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com

**Andrea L. Rizor (P78382)**
**Chris E. Davis (P52159)**
Michigan Protection & Advocacy
Service, Inc.
Attorneys for Plaintiff MPAS
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
arizor@mpas.org
cdavis@mpas.org

---

## DEFENDANT CARELINK NETWORK, INC.'S MOTION TO DISMISS

Defendant CareLink Network, Inc. (CareLink), by its attorneys, Foley & Mansfield, PLLP, hereby moves to dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

On October 18, 2018, counsel for CareLink contacted counsel for Plaintiffs with information detailing the nature of this motion and its legal basis, but concurrence was not obtained. Therefore, for the reasons stated in the accompanying Brief in Support, CareLink respectfully requests that this Court grant its Motion to Dismiss.

Respectfully submitted,

s/Scott S. Holmes
**FOLEY & MANSFIELD, PLLP**
130 East Nine Mile Road
Ferndale, MI  48220
(248) 721-4200
sholmes@foleymansfield.com
P66580

Dated October 19, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2018 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: NONE

Respectfully submitted,


s/Scott S. Holmes

**FOLEY & MANSFIELD, PLLP**
130 East Nine Mile Road
Ferndale, MI 48220
(248) 721-4200
sholmes@foleymansfield.com
P66580

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DARRYL PELICHET, *et al.*

      Plaintiffs,

v.

NICK LYON, *et al.*

      Defendants.

Case No. 2:18-cv-11385-PDB-APP
Hon. Paul D. Borman
Mag. Anthony P. Patti

---

**Laurence H. Margolis (P69635)**
**Margolis Law, PC**
Attorney for Plaintiffs
214 S. Main St., Suite 202
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com


**Scott L. Feuer (P38185)**
Law Offices of Scott L. Feuer, P.C.
Attorney for Defendant Charles Stern
888 West Big Beaver Road, Suite 850
Troy, MI 48084
(248) 723-7828, Ext. 201
sfeuer@fklawyers.com

**Scott S. Holmes (P66580)**
**Foley & Mansfield, PLLP**
Attorney for Defendant CareLink
Network, Inc. and BHPi
130 East Nine Mile Road
Ferndale, MI  48220
(248) 721-4200
sholmes@foleymansfield.com


**Katherine J. Bennett (P75913)**
**Darrin F. Fowler (P53464)**
Assistant Attorneys General Michigan
Dep't of Attorney General Attorneys
for MDHHS Defendants
P.O. Box 30755
Lansing, MI 48909
(517) 373-1160
Bennettk1@michigan.gov
Fowlerd1@michigan.gov

**Paul J. Dwaihy (P66074)**
Plunkett Cooney
Attorney for Defendant Lisa Medoff
150 W. Jefferson Ave., Ste. 800
Detroit, MI 48226-4451
(586) 783-7621
pdwaihy@plunkettcooney.com

**Loren Blum (P38557)**
Law Offices of Christine Greig
Attorney for Defendant Hegira
Programs
28411 Northwestern Hwy., Suite 640
Southfield, MI 48034
(248) 223-0120
Fax: (603) 334-9174
Loren.Blum@libertyMutual.com

**Laurence H. Margolis (P69635)**
**Margolis Law, PC**
Attorney for Plaintiffs
214 S. Main St., Suite 202
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com

**Andrea L. Rizor (P78382)**
**Chris E. Davis (P52159)**
Michigan Protection & Advocacy
Service, Inc.
Attorneys for Plaintiff MPAS
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
arizor@mpas.org
cdavis@mpas.org

---

## DEFENDANT CARELINK NETWORK, INC.'S MOTION TO DISMISS BRIEF IN SUPPORT

# **TABLE OF CONTENTS**

Index of Authorities ........................................................................... v

Concise Statement of Issues Presented ................................................ viii

Controlling or Most Appropriate Authority............................................ix

Statement of Facts ............................................................................1

   Introduction.................................................................................1

   Overview of Administration of Medicaid-Based Health Services in Michigan ..2

Legal Standard ................................................................................6

Analysis.........................................................................................7

   I.  Plaintiffs' Claims are Barred ..........................................................7

  II.  Count I (42 U.S.C. § 1983) Fails to State a Claim .......................................10

       A.  Count I (42 U.S.C. § 1983) Must Be Dismissed Because CareLink is Not a State Actor Subject to a § 1983 Claim.........................................12

       B.  Plaintiffs Have Not Identified an Action by or Policy of CareLink that Infringes Upon Plaintiffs' Federally Protected Rights .........................17

       C.  Plaintiffs' Equal Protection Claim Must be Dismissed.........................21

       D.  Plaintiffs' Eighth Amendment Claim Must be Dismissed ....................22

III.  If It Were Found that the Actions Taken by CareLink Comporting With State Policy Were Taken Under Color of State Law, CareLink is Entitled to Eleventh Amendment Immunity or Qualified Immunity ..............................23

       A. If CareLink is Found to be a State Actor, Plaintiffs' Claims are Barred by Eleventh Amendment Jurisdictional Immunity .............................23

B. If CareLink is Found to be a State Actor, CareLink is Entitled to Qualified Immunity as a Private Party .................................................25

i.   Private Party Qualified Immunity ..................................................25

ii.  Plaintiffs Have Failed to Identify a Clearly Established Constitutional Right to Which CareLink's Conduct Unreasonably Violated ...........................................................................................30

IV.   Counts II (Title II – ADA) and III (Rehabilitation Act) Must be Dismissed for Failure to State a Claim............................................................................32

Request for Relief ......................................................................................35

# INDEX OF AUTHORITIES

## Cases

*American Reliable Ins. Co. v. Stillwell,* 336 F.3d 311 (4th Cir. 2003)......................9

*Ammend v. BioPort, Inc*, 322 F Supp 2d 848 (WD Mich, 2004) ...........................26

*Anderson v. City of Blue Ash*, 798 F3d 338 (6th Cir. 2015) .................................34

*Anderson v. Creighton,* 483 U.S. 635 (1987) ................................................. 32, 34

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009) ...........................................................7

*Brown v. Bargery*, 207 F.3d 863 (6th Cir. 2000)..............................................24

*Bartell v. Lohiser*, 12 F Supp 2d 640 (E.D. Mich, 1998) .......................... 26, 29, 31

*Bartell v. Lohiser*, 215 F3d 550 (6th Cir. 2000) ...............................................31

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...............................................7

*Bier v. Fleming,* 717 F.2d 308 (6th Cir.1983) ............................................. 15, 16

*Binkowski v Family & Children's Services Agency*, 39 F Supp 2d 882 (W.D. Mich, 1998) .........................................................................................................27

*Blackburn v. Fisk University,* 443 F.2d 121 (6th Cir.1971) ................................19

*Bloch v. Ribar,* 156 F.3d 673 (6th Cir.1998) ...................................................32

*Blum v. Yaretsky,* 457 U.S. 991 (1982)...........................................................15

*Boykin v. Van Buren Twp.,* 479 F.3d 444 (6th Cir.2007) ...................................14

*Burton v. Wilmington Parking Authority,* 365 U.S. 715 (1961)...........................15

*Chapman v. Higbee Co.,* 319 F.3d 825 (6th Cir.2003)........................................14

*Cook*, 551 F3d 542 (6th Cir. 2009) ................................................................8

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365 (6th Cir.2011) ......23

*Cummings v. City of Akron,* 418 F.3d 676 (6th Cir. 2005)...................................10

*Davis H. Elliot,* 513 F.2d at 1182 (6th Cir. 1975) ............................................19

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)................7

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005)....................8

*Filarsky v. Delia,* 566 U.S. 377 (2012)...........................................................28

*Flagg Bros. v. Brooks,* 436 U.S. 149 (1978) ...................................................14

*Flint ex rel. Flint v. Kentucky Dept. of Corrections,* 270 F.3d 340 (6th Cir. 2001).12

*Freeman v. Michigan Dep't of State,* 808 F.2d 1174 (6th Cir. 1987) ....................26

*Givens v. Homecomings Financial,* 278 Fed. Appx. 607 (6th Cir.2008) .................8

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) .....................................................27

*Hart v. Comerica Bank*, 957 F. Supp. 958 (E.D. Mich. 1997)...............................8

*Harvey v. Harvey*, 949 F.2d 1127  (11th Cir. 1992).........................................20

*Heck v. Humphrey*, 512 U.S. 477 (1994)........................................................10

*Huftile v Miccio-Fonseca*, 410 F3d 1136 (9th Cir. 2005) ..................................10

*Hunter v. Bryant,* 502 U.S. 224 (1991)...........................................................32

*Imbler v. Pachtman,* 424 U.S. 409 (1976) .......................................................28

*Jackson v. Metropolitan Edison Co.,* 419 U.S. 345 (1974) ................................ 14, 15

*Jones v City of Monroe, MI,* 341 F3d 474 (6th Cir. 2003) ...............................35

*Jordahl v. Democratic Party of Va.,* 122 F.3d 192 (4th Cir. 1997)........................9

*Lansing v. City of Memphis,* 202 F.3d 821 (6th Cir. 2000) .....................................14

*Lawrence v. Welch,* 531 F.3d 364 (6th Cir. 2008).....................................................8

*Lewis v. Humboldt Acquisition Corp.,* 681 F.3d 312 (6th Cir. 2012).....................35

*Lintz v. Skipski,* 807 F.Supp. 1299 (W.D.Mich.1992) .............................................27

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982) .................................................13

*Malley v. Briggs,* 475 U.S. 335 (1986) ...................................................................32

*Marsh v. Alabama,* 326 U.S. 501 (1946) ................................................................14

*McCormick v. Braverman,* 451 F.3d 382 (6th Cir. 2006)..........................................8

*McLittle v. O'Brien*, 974 F. Supp 635 (E.D. Mich. 1997) ......................................26

*Michigan S RR Co. v. Branch & St. Joseph Counties Rail Users Ass'n Inc.,*
      287 F.3d 568 (6th Cir. 2002)...........................................................................6

*Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987) .................7, 20

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984).........................25

*People v. McLeod*, 288 N.W.2d 909 (Mich. 1980)..................................................23

*People v. McQuillan*, 221 N.W.2d. 569 (Mich. 1974) ............................................23

*Plyler v. Moore,* 129 F.3d 728 (4th Cir.1997) ..........................................................9

*Redding v. St. Eward*, 241 F.3d 530 (6th Cir. 2001) ..............................................12

*Richardson v. McKnight,* 521 U.S. 399 (1997) .................................. 28, 29, 30, 31

*Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923).........................................7, 8, 9

*San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.,* 483 U.S.
      522 (1987)......................................................................................................16

*Sherman v Four Co Counseling Ctr*, 987 F2d 397 (7th Cir. 1993)........................31

*Steinberg v. Fed. Home Loan Mortgage Corp.*, 901 F. Supp. 2d 945 (E.D. Mich.
      2012) ..............................................................................................................25

*Street v. Corr. Corp. of Am.*, 102 F.3d 810 (6th Cir. 1996)...................................20

*Swiecicki v. Delgado,* 463 F.3d 489 (6th Cir.2006)................................................10

Taylor v. Tenn. Dep't of Mental Health, 8 Fed. Appx. 553 (6th Cir. 2001) .............8

*Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)
      ........................................................................................................................24

*Thiokol Corp. v. Dep't of Treasury,* 987 F.2d 376 (6th Cir.1993).........................25

*United States v. Classic,* 313 U.S. 299 (1941).......................................................13

*Wallace v. Kato,* 549 U.S. 384 (2007) ...................................................................10

*West v. Atkins,* 487 U.S. 42 (1988) .......................................................................13

*Westlake v. Lucas,* 537 F.2d 857 (6th Cir. 1976)...................................................19

*Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989)..................................26

*Wolotsky v Huhn*, 960 F2d 1331 (6th Cir., 1992) ............................................ 14, 16

## Statutes

28 U.S.C. § 2254 ...........................................................................................10

29 U.S.C. § 794(a) ................................................................................. 35, 36

42 U.S.C. § 12131 ........................................................................................34

42 U.S.C. § 1983 ......................................... 11, 12, 13, 20, 22, 28, 29

42 U.S.C. § 12131 ................................................................... 34, 36, 37

ADA  36, 37

MCL 330.1204(1) and 1205(b) ..............................................................26

MCL 330.2050(5) ......................................................................................20

## Rules

Fed. R. Civ. P. 12(b)(1) ..............................................................................6

Fed. R. Civ. P. 12(b)(6) ...........................................................................6, 7

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

**1. WHETHER PLAINTIFFS' CLAIMS ARE BARRED BY ROOKER FELDMAN AND HECK v. HUMPHREY**

CareLink Network, Inc. answers:          Yes
Plaintiffs answer:                                      No

**2. WHETHER PLAINTIFFS FAIL TO STATE A CLAIM UNDER 42 U.S.C. 1983 BECAUSE CARELINK IS NOT A STATE ACTOR**

CareLink Network, Inc. answers:          Yes
Plaintiffs answer:                                      No

**3. IF THIS COURT HOLDS THAT CARELINK IS A STATE ACTOR, WHETHER PLAINTIFFS' CLAIMS ARE BARRED BY ELEVENTH AMENDMENT JURISDICTIONAL IMMUNITY**

CareLink Network, Inc. answers:          Yes
Plaintiffs answer:                                      No

**4. IF THIS COURT HOLDS THAT CARELINK IS A STATE ACTOR, WHETHER CARELINK IS ENTITLED TO QUALIFIED IMMUNITY**

CareLink Network, Inc. answers:          Yes
Plaintiffs answer:                                      No

**5. WHETHER PLAINTIFFS FAIL TO STATE A CLAIM UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT**

CareLink Network, Inc. answers:          Yes
Plaintiffs answer:                                      No

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(6)

42 U.S.C. § 1983

42 U.S.C. § 12131, et seq.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

## STATEMENT OF FACTS[1]

Introduction

Defendant CareLink Network, Inc. (CareLink) was previously responsible for contracting with providers, including hospitals, outpatient clinics, adult foster care facilities, and other organizations who provided behavioral health services to Plaintiffs. Importantly, CareLink was not a service provider for Plaintiffs or any other patient. Rather, CareLink contracted with and paid the organizational providers that were empaneled[2] with the Detroit Wayne Mental Health Authority to render the care, some of which are named defendants in the Amended Complaint.

As noted in the motions to dismiss filed by Defendants Stern (Doc #49) and MDHHS (Doc #56), Plaintiffs' claims are most appropriately viewed as challenges to the State's policies and procedures that govern the treatment and management of Not Guilty by Reason of Insanity ("NGRI") patients, rather than a complaint for relief related to the conduct of any one defendant.

---

[1] Defendant Michigan Department of Health and Human Services ("MDHHS") in its Motions to Dismiss, accurately summarized the factual background and procedural history surrounding Plaintiffs' hospitalization as individuals charged with a crime but found not guilty by reason of insanity ("NGRI"). To promote judicial efficiency, CareLink will forgo reproducing a similar summary and hereby adopts and relies upon the Statements of Facts in this prior motion. Doc #56, Pg. ID 1273-1279.

[2] Adult Foster Care facilities are not required to be empaneled, but must be licensed by the State of Michigan.

Plaintiffs' Amended Complaint alleges these policies and procedures resulted in their continuing confinement without procedural or substantive due process. Specifically, the crux of Plaintiffs' claims against CareLink is that CareLink (and the other Defendants) "have a practice of automatically filing petitions for continued hospitalizations in bad faith, in order to keep persons who have been adjudicated NGRI institutionalized when there is no longer a statutory of constitutional basis to confine them." *See* Doc #44, Amended Complaint, Pg. ID 931, ¶238. However, CareLink did not provide the professional treatment services and recommendations, and accordingly, **never filed the petitions for continuing treatment as to Plaintiffs**. In fact, not only do Plaintiffs fail to identify even one such alleged petition filed by CareLink, Plaintiff Joshua Ragland was not enrolled in CareLink during the time periods relevant to this Amended Complaint.

Importantly, none of the supporting documentation Plaintiffs attach to their Amended Complaint evidence that CareLink engaged in any of the allegedly improper activities. But, even if it had, because CareLink's role in contracting for services for Plaintiffs was directed by the State policies and procedures being challenged, CareLink is entitled to dismissal.

<u>Overview of Administration of Medicaid-Based Health Services in Michigan</u>

In Michigan, Medicaid funds for behavioral health are generally grouped into two categories: 1) funds for the "mild to moderate" population, and 2) funds

for those with severe and persistent mental illness and intellectual and developmental disabilities. Medicaid dollars for the mild to moderate population (i.e., minor behavioral health issues such as low-level depression or anxiety) are distributed to Medicaid health plans, which in turn manage care for their enrollees.

The second category of Medicaid funds is for behavioral health services for adults with severe and persistent mental illness (SMI); children with serious emotional disturbances (SED); individuals with substance abuse disorders (SUD); and adults and children with intellectual and developmental disabilities (I/DD). These funds are part of a Medicaid carve-out and are distributed to ten Prepaid Inpatient Health Plans (PIHPs) in Michigan. PIHPs must provide coverage for Medicaid recipients in their service area with SMI, SED, SUD and I/DD, who are often referred to as "consumers." Seven of the ten PIHPs in Michigan service enrollees in more than one county. However, due to the size of the counties, Wayne, Oakland, and Macomb counties each have their own PIHP.

In addition to the PIHPs, each county in Michigan has a designated Community Mental Health Service Provider (CMHSP). The CMHSP is responsible for, among other things, managing general fund dollars received from the state of Michigan to pay for inpatient hospitalization at state or regional hospitals, and certain other services/costs for individuals who commit criminal acts, but are adjudicated NGRI.

For Wayne County, the Detroit Wayne Mental Health Authority ("DWMHA") operates as both the PIHP and CMSHP, and has one PIHP and one CMSHP contract with the State of Michigan.  This CMHSP contract contains certain detailed requirements pertaining to managing care and placement for individuals who are NGRI. Exhibit 1 – Relevant Excerpt from the State of Michigan-DWMHA Contract.[3] A committee of professionals (NGRI Committee) oversees and directs the treatment of all NGRI patients within the state. Importantly, DWMHA is an independent governmental agency. It was created pursuant to Michigan Mental Health Code, sections 204, 205 and 212 of Michigan Public Act 258 of 1974, and an Enabling Resolution enacted by the Wayne County Commission on June 6, 2013.

In every other county except Wayne, the PIHPs and CMHSPs manage their own populations.  However, from October of 2002 through October of 2018, the DWMHA contracted with outside agencies, called Managers of Comprehensive Provider Networks ("MCPNs") to contract with and pay the service providers rendering care  for approximately 95% of the individuals with SMI, SED, and/or

---

[3] The complete contract for FY 2018 is available online at: https://www.dwmha.com/files/8315/1620/9403/MDHHS-CMHSP_Managed_Mental_Health_Supports_and_Services_Contract_FY18.pdf

I/DD in Wayne County.[4] One of these networks was Defendant CareLink, which was responsible for contracting with providers, including hospitals, outpatient clinics, adult foster care facilities, and other organizations who provided the behavioral health services to individuals with SMI and SED. Importantly, CareLink did not provide clinical services to Plaintiffs or any other consumer. Rather, CareLink simply contracted with the DWMHA to manage the procurement of services provided to SMI/SED consumers in Wayne County.  Specifically, CareLink was responsible for (among other things) overseeing utilization management for consumer services; contracting with clinical care providers; and processing and paying claims. CareLink was also previously responsible for locating residential placement for NGRI consumers once the State determined such residential care was necessary.

Generally, each person enrolled in the CareLink Network was assigned to a Community Mental Health provider ("CMH"), which acts as the enrollee's behavioral health "home." The CMHs are independent entities that CareLink contracted with to provide the community-based behavioral services.  Plaintiff

---

[4] In June 13, 2018, the DWMHA Board of Directors approved a resolution to discontinue contracting with the MCPNs. See Exhibit 2 – June 13, 2018 DWMHA Resolution. CareLink's MCPN contract expired September 30, 2018.

Pelichet was assigned to CMH Defendant Hegira Programs, Inc., while Plaintiff Washington was previously assigned to New Center Community Services.[5]

In their Complaint, Plaintiffs falsely claim that CareLink derives its operating revenue from "government grants".  Doc #44, Amended Complaint, Pg. ID 885, ¶40.  This is not correct, as CareLink derived its funding via a subcontractor (MCPN) agreement with the DWMHA.   *See* Exhibit 2 – June 13, 2018 DWMHA Resolution re: MCPN Contracts, and DWMHA "System Transformation" bulletin identifying CareLink as an MCPN.

As will be discussed below, because CareLink does not determine the necessary treatment or provide clinical services to Plaintiffs, and because CareLink did not file petitions to the probate court for these Plaintiffs, CareLink cannot be held liable to Plaintiffs. Simply put, CareLink did not enact any of the policies Plaintiffs allege to have been harmed by, nor did CareLink render any clinical opinions about Plaintiffs' mental health status.

## LEGAL STANDARD

When subject matter jurisdiction is challenged pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive

---

[5] New Center closed in May of 2018 and Plaintiff Washington has since been assigned to a new CMH.

the motion. *Michigan S RR Co. v. Branch & St. Joseph Counties Rail Users Ass'n Inc.,* 287 F.3d 568, 573 (6th Cir.2002).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

## ANALYSIS

## I.   PLAINTIFFS' CLAIMS ARE BARRED

Under the *Rooker–Feldman*[6] doctrine, "lower [federal] courts lack subject matter jurisdiction to review the decisions of state courts." *Givens v. Homecomings Financial,* 278 Fed. Appx. 607, 608–09 (6th Cir.2008). *Rooker–Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 609 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)). The Eastern

---

[6] *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

District has applied Rooker-Feldman to plaintiffs seeking review of a state probate court's proceedings. *Hart v. Comerica Bank*, 957 F. Supp. 958, 972 (E.D. Mich. 1997). Further, the Sixth Circuit has applied Rooker-Feldman to bar review of state court decisions involving mental-health status. *Taylor v. Tenn. Dep't of Mental Health*, 8 Fed. Appx. 553, 554-555 (6th Cir. 2001).

The pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim "is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment." *Lawrence v. Welch,* 531 F.3d 364, 368 (6th Cir. 2008) (quoting *McCormick v. Braverman,* 451 F.3d 382, 394 (6th Cir. 2006)); *In re Cook*, 551 F3d 542, 548 (6th Cir. 2009). If the source of the injury is the state court decision, the *Rooker–Feldman* doctrine prevents the district court from asserting jurisdiction. *McCormick*, 451 F.3d at 393.

Plaintiffs allege that their continued confinement has violated their federal rights. Doc #44, Amended Complaint, Pg. ID 1, 41-71 ¶¶ 1, 171-298. "A litigant may not circumvent . . . jurisdictional mandates by instituting a federal action which, although not styled as an appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" *American Reliable Ins. Co. v. Stillwell,* 336 F.3d 311, 316 (4th Cir. 2003), quoting *Plyler v. Moore,* 129 F.3d 728, 733 (4th Cir.1997). The controlling question in a Rooker-

Feldman analysis is whether "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual, *Rooker–Feldman* is implicated." *Jordahl v. Democratic Party of Va.,* 122 F.3d 192, 202 (4th Cir. 1997) (internal quotations omitted).

The continued confinement that Plaintiffs complain of was a direct result of the Continuing Treatment Orders entered by the Wayne County Probate Court. In other words, Plaintiffs' federal claims clearly implicate the court's judgments. Specifically, if this Court finds that Plaintiffs' constitutional rights were infringed by their continued confinement, such a ruling would be inconsistent with the probate court's finding that continued confinement was warranted. As a result, Plaintiffs' federal claims are inextricably intertwined with the probate court's ruling and invite the federal court to review and reject it.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §1983.

As stated in *Cummings v. City of Akron,* 418 F.3d 676 (6th Cir. 2005), *Heck* bars §1983 plaintiffs from advancing claims that, if successful, would necessarily imply the invalidity of a prior conviction or sentence.

Although historically applied in cases involving criminal convictions, this circuit has applied *Heck* to bar §1983 plaintiffs from challenging convictions under local ordinances[7], while other circuits, notably, have applied Heck to claims involving civil confinement.[8]

Simply put, whether Plaintiffs here claim relief because of their continued confinement or the circumstances which led to it, this Court must first determine whether a finding of relief would imply the invalidity of the probate court's determination that confinement was warranted. Because such a finding would be inconsistent with the probate court's Orders, Plaintiffs' claims must be dismissed.

## II.   Count I (42 U.S.C § 1983) Fails to State a Claim

Count I of Plaintiffs' Complaint alleges due process violations under 42 U.S.C. § 1983. Doc #44, Amended Complaint, Pg ID 1, 41-71, ¶¶ 1, 171-278. Specifically, Plaintiffs allege they were deprived of their liberty because their

---

[7] *See, e.g., Swiecicki v. Delgado,* 463 F.3d 489, 495 (6th Cir.2006), *abrogated on other grounds by Wallace v. Kato,* 549 U.S. 384 (2007).

[8] *See, Huftile v Miccio-Fonseca,* 410 F3d 1136, 1137 (9th Cir. 2005).

confinement for mental health treatment was continued after they violated terms of their Alternative Leave Status (ALS) agreements.[9] *Id.* at Pg. ID 913, ¶175.

For relief under § 1983, there are two basic requirements that must be proven: (1) an action committed by a person acting under the color of state law, that (2) deprived an individual of federal statutory or constitutional rights. *Flint ex rel. Flint v. Kentucky Dept. of Corrections,* 270 F.3d 340, 351 (6th Cir. 2001). "If a plaintiff fails to make a showing on any essential element of a 42 U.S.C. § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

Plaintiffs allege that CareLink was "acting under color of state law at all relevant times." Doc #44, *supra*, Pg. ID 913 ¶172. Specifically, Plaintiffs allege that CareLink and the other Defendants "have a practice of automatically filing petitions for continued hospitalization in bad faith, in order to keep persons who have been adjudicated NGRI institutionalized when there is no longer a statutory or constitutional basis to confine them." Doc #44, *supra*, Pg. ID 931, ¶ 238. The Amended Complaint further states that "[t]he [ALS] contract does not allow for the possibility that the examining psychiatrist for the relevant CMH Defendant

_____

[9] Plaintiff Ragland's claims against CareLink should be dismissed for failure to state a claim because CareLink was never involved in the administration of his treatment as an NGRI consumer. CareLink was involved in Ragland's care from 2002 to October 2014, prior to Ragland's October 2014 NGRI plea and any subsequent order for continuing confinement. Doc #44, Amended Complaint, Pg. ID 901, ¶118; see also Exhibit 3 – Ragland Eligibility Summary. Therefore, Ragland's claims related to his treatment as an NGRI consumer post-date CareLink's involvement in his care.

[CareLink] could conclude that outpatient treatment is sufficient for the patient's needs…" *See Id*. at ¶222.

These statements are false and materially misrepresent CareLink's role in the NGRI administration process. CareLink did not provide the clinical services that Plaintiffs receive. Further, CareLink did not file the petitions for Continuing Treatment Orders required by Plaintiffs' ALS contracts, nor does it have "examining psychiatrists." Instead, CareLink is responsible for contracting with and paying the providers that administer the professional services and file the petitions – for example, Defendants Hegira or New Center.

Plaintiffs have failed to appropriately investigate and identify CareLink's role in the NGRI administration process. However, even accepting Plaintiff's mistaken allegations as true for purposes of this motion, Plaintiffs have failed to state a claim because 1) CareLink is not a state actor subject to a 42 U.S.C. § 1983 claim; 2) Plaintiffs fail to identify an action by or policy of CareLink that infringes upon their federally protected rights, and; 3) even if CareLink were deemed to be a state actor and such conduct were identified, CareLink would be entitled to Eleventh Amendment immunity or qualified immunity.

A. Count I (42 U.S.C § 1983) Must Be Dismissed Because CareLink is Not a State Actor Subject to a §1983 Claim

A party acts under color of state law when it exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with

the authority of state law." *United States v. Classic,* 313 U.S. 299, 326 (1941). If a defendant's conduct satisfies the state action requirement of the Fourteenth Amendment, then the defendant is considered to be acting under color of state law. *West v. Atkins,* 487 U.S. 42, 49 (1988); *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 928 (1982).

For a private actor-defendant's acts to be considered state action, "its actions [must] so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir.2000). The Sixth Circuit uses a three-part test to determine if a private actor-defendant's conduct amounts to state action, commonly referred to as: 1) the public-function test; 2) the state-compulsion test; and 3) the symbiotic relationship or nexus test. *Id.* at 828; *Boykin v. Van Buren Twp.,* 479 F.3d 444, 452 (6th Cir.2007). Each of these tests must be examined to determine if CareLink's acts constitute state action.

Under the public-function test, "a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Chapman,* supra, 319 F.3d at 833. This test has typically been interpreted very narrowly, and has been utilized to find state action on the part of a private actor only in rare circumstances. *Id.* at 833–34; *see also Flagg Bros. v. Brooks,* 436 U.S. 149, 157–58 (1978) (holding elections is public function); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352–53 (1974) (eminent domain is public

function); *Marsh v. Alabama,* 326 U.S. 501, 505–09 (1946) (company-owned town is public function).

For this matter, the public function test is easily dismissed as the Sixth Circuit has specifically found that "providing mental health services has not been a power which has traditionally been exclusively reserved to the state." *Wolotsky v Huhn*, 960 F2d 1331, 1335 (6th Cir. 1992). If providing mental health services is not a state function, then managing the provision of mental health services is also not a state function.

The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. *See Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982); *Bier v. Fleming,* 717 F.2d 308, 311 (6th Cir.1983), *cert. denied,* 465 U.S. 1026 (1984).

Here, CareLink was contracted by the DWMHA to assume the responsibility for contracting with the AFC homes and behavioral facilities for Plaintiffs and other consumers, overseeing the utilization management for the services, ensuring services were provided, and processing the claims. Plaintiffs have not and cannot allege that such responsibilities were exercised under coercive power or encouragement by the State of Michigan. Indeed, CareLink was contracted by

14

DWMHA as a means to *outsource* the Authority's administration of these services rather than retain control over it.

Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. *See Jackson, supra,* 419 U.S. at 351; *Burton v. Wilmington Parking Authority,* 365 U.S. at 724–25 (1961). Merely because a business is subject to state regulation does not by itself convert its action into state action. *Jackson, supra*, 419 U.S. at 350. Rather, it must be demonstrated that the state is intimately involved in the challenged private conduct for that conduct to be attributed to the state for purposes of section 42 U.S.C. §1983. *See Bier,* 717 F.2d at 311. Importantly, however, "[t]he fact [t]hat a private entity performs a function which serves the public does not make its acts [governmental] action." *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.,* 483 U.S. 522, 544 (1987) (internal quotations omitted).

Simply put, CareLink does not meet the definition of a "state actor" as defined by the foregoing tests. First, CareLink is a private non-profit corporation that is managed by an Executive Director and governed by an independent Board of Directors. The State of Michigan does not have any input or direction into the selection of CareLink's Board of Directors. Importantly, CareLink does not have

any contracts with the State of Michigan whereby CareLink acts as an agent or contractor of the State. *See, e.g., Wolotsky v Hunn, supra* (holding that private non-profit that contracted with county board to provide mental health services was not a state actor, because, among other reasons, the non-profit had its own independent Board of Trustees who appointed an executive director).

CareLink's role is to manage the provision of behavioral health services, which is not a power traditionally exercised by the state. Plaintiffs cannot demonstrate that CareLink was intimately involved with the state in the challenged private conduct, and further there are no allegations the state had any involvement with CareLink's administrative role in contracting with and paying providers. Finally, and perhaps most importantly, CareLink was not involved in the challenged conduct. Specifically, Plaintiffs allege that CareLink improperly filed petitions every year in bad faith. *See* Amended Complaint, Doc #44, ¶238. However, CareLink did not file or submit these petitions – the service providers/professionals did based on their individualized assessments which CareLink takes no part in. Incredibly, all of the petitions cited to in Plaintiffs' complaint were filed by CMHs – not by CareLink. *See also* Exhibit 4 – Continuing Treatment Petitions.

Plaintiffs additionally allege that CareLink "hired" the CMH Subcontractor Defendants (i.e., Hegira and New Center) "to perform the acts in the 'Community

16

Mental Health Service Provider Responsibilities" section of Plaintiff's [sic] NGRI contracts, including the mandatory filing of petitions and the mandatory recommendation of 'hospitalization for one year' to the probate court."  See Amended Complaint, ¶41.  However, CareLink's contract with Hegira and New Center do not contemplate or reference the mandatory filing of petitions.  See Exhibit 5 – CareLink-CMH Contracts.

In summary, having not participated in this conduct, Plaintiffs have failed to allege that CareLink's role meets the rare circumstances necessary to convert a private actor to a state actor.

B. Plaintiffs Have Not Identified an Action by or Policy of CareLink that Infringes Upon Plaintiffs' Federally Protected Rights

As fully explained in the MDHHS defendants' motion, the wrongful policy alleged by Plaintiffs in their Amended Complaint is contradicted by the documents they attach in support. Doc #56, *supra*, Pg. ID 1292-1295. A court is not required to accept as true legal conclusions or unwarranted factual inferences. *See Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976); *Davis H. Elliot,* 513 F.2d at 1182 (6th Cir. 1975); *Blackburn v. Fisk University,* 443 F.2d 121, 124 (6th Cir.1971).

Specifically, Plaintiffs allege the State has a policy requiring the entities and individuals involved in the oversight, administration, and/or professional services for NGRI patients to cause a petition to be filed in probate court "every year" to continue such treatment, "regardless of whether the patient's treating physicians

17

believed that the patient continued to satisfy the statutory or constitutional requirements for involuntary civil commitment." Doc #44, ¶7, Pg. ID 876-877, ¶29-33, Pg. ID 882-883-9.

However, these allegations necessarily require this Court to infer that the ALS contracts require the professionals to disregard or misrepresent their professional judgment and falsify documents submitted to the probate court. Plaintiffs are not entitled to such an inference on a motion to dismiss. *Morgan, supra,* 829 F.2d at 12 (6th Cir.1987).

To the extent Plaintiffs seek to impose liability on CareLink for allegedly wrongful actions committed by the entities CareLink contracted with to provide services to Plaintiffs (CMH entities), such liability cannot be established. *See, e.g., Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (a corporation cannot be vicariously liable under § 1983 for the acts of an employee or independent contractor) (citing *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)). Indeed, CareLink serves in the role typically filled by the CMHSP (here, the DWMHA), and Plaintiffs have not alleged that a particular policy or action **committed by CareLink** has violated their rights. Nor can they since, as explained above, Plaintiffs misunderstand CareLink's role in the NGRI process.

Notwithstanding, the contracts entered into by CareLink do not support a reasonable inference for this Court to accept Plaintiffs' allegations of due process

deprivation as true. For example, the ALS contract references and mirrors MCL 330.2050(5) which provides, in part, that a person shall not be discharged or placed on leave without first being evaluated and recommended for discharge or leave by the department's program for forensic psychiatry, and authorized leave or absence from the hospital may be extended for a period of 5 years. See Doc #44, Pg. ID 1134-1173 (ALS Contracts).

The contracts also expressly contemplate and reference the professional evaluation of the patient's need for continuing mental health treatment through the "Six Month Review Report," which is defined under "Period Review/Six-Month Review" as a "[d]etermination by a psychiatrist whether the patient continues to be a person in need of mental health treatment . . . ." *Id.*, e.g., at Pg. ID 1136 (ALS Contract), Pg. ID 1120 (MDHHS Standard Operating Procedures).

The contracts and operating procedures also contemplate and reference the role of the NGRI committee in preparing for the patient's treatment needs once the ALS contract expires, and the involvement of the psychiatrists in the discharge process. *Id.* at Pg. ID 1137, 1121. For further information and analysis, CareLink refers the Court to MDHHS' Brief in Support of its Motion to Dismiss in lieu of duplicating its content here. See MDHHS' Brief in Support of Motion, Doc #56, Pg. ID 1292-1295.

These documents show facially valid policies and procedures which protect, rather than infringe, Plaintiffs' procedural and substantive rights. Although Plaintiffs believe their own conduct that violated the terms of their ALS contracts should be overlooked, CareLink does not establish the terms of the ALS contracts (which are created by the State), nor did it file the Continuing Treatment Order petitions with respect to the individual Plaintiffs. Therefore, CareLink cannot be said to have infringed upon Plaintiffs' rights. Importantly, the alleged state policy cannot be the basis of governmental liability under § 1983 because the alleged unconstitutional behavior – i.e., falsifying clinical judgment – would have been in **violation** of the same policy, not caused by the policy.

In a nutshell, Plaintiffs have failed to cite to a single action by or policy of CareLink that violates their rights. Furthermore, Plaintiffs' allegations that the policies and contracts required various parties to falsify their medical judgment to maintain NGRI status is self-defeating. If these allegations are accepted as true, such conduct would be in violation of the same policy Plaintiffs allege as the basis for their claims, and that violation would necessarily defeat Plaintiffs' claim that *adherence* to the policy results in an infringement of their rights, when, in fact, it is the *deviation* of the policy that results in the alleged violation.

Because Plaintiffs fail to identify a custom or policy of CareLink that infringes on their rights, Count I should be dismissed for failure to state a claim.

C. <u>Plaintiffs' Equal Protection Claim Must be Dismissed</u>

"In order to state an equal protection claim, Plaintiff must show that Defendants treated Plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379 (6th Cir.2011).

It is unclear if Plaintiffs are asserting an Equal Protection claim against CareLink as this section contains no specific allegations against CareLink, and instead makes a general reference to "all" defendants. Doc #44, Amended Complaint, Pg. ID 932-934, ¶241-278. To the extent such a claim is being made against CareLink, Plaintiffs' claim fails. First, NGRI patients are not treated differently than involuntarily civilly committed patients. See MCL 330.2050(5) (release procedures consistent with NGRI); *People v. McQuillan*, 221 N.W.2d. 569, 586 (Mich. 1974) ("a defendant found [NGRI] must have the benefit of commitment and release provisions equal to those available to those civilly committed."). Second, persons found Guilty But Mentally Ill (GBMI) are not similarly situated to NGRI patients because they have been found guilty and were mentally ill, but not legally insane. *People v. McLeod*, 288 N.W.2d 909, 917 (Mich. 1980).

Because NGRI patients are not treated differently than similarly situated individuals, Plaintiffs' equal protection claims must be dismissed.

D.  <u>Plaintiffs' Eighth Amendment Claim Must be Dismissed</u>

It is also unclear whether Plaintiffs are asserting an Eighth Amendment claim against CareLink as this portion of the Amended Complaint again contains no specific allegations against CareLink. Doc #44, Amended Complaint, Pg. ID 934-942, ¶250-278. As argued in MDHHS' Motion to Dismiss, an Eighth Amendment claim requires a plaintiff to "allege with particularity all material facts to be relied upon," which cannot "be founded upon conclusory, vague or general allegations." *Terrance v. Northville Reg'l Psychiatric Hosp*., 286 F.3d 834, 842 (6th Cir. 2002). Plaintiffs must further show that the conduct complained of was committed with "deliberate indifference." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). This requires a showing that the alleged deprivation is "sufficiently serious," and that the defendant has a "sufficiently culpable state of mind," such that it is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he or she] must also draw the inference." *Id*.

As indicated throughout this Brief, Plaintiffs have failed to allege with specificity what conduct CareLink engaged in that violated their rights, and have, at best, offered conclusory, vague or general allegations as to CareLink's role in

the circumstances they base their claims on. Therefore, any Eighth Amendment claim against CareLink should be dismissed.

### III. If It Were Found that the Actions Taken By CareLink Comporting With State Policy Were Taken Under Color of State Law, CareLink is Entitled to Eleventh Amendment Immunity or Qualified Immunity

As set forth above, CareLink is not a state actor and therefore cannot have acted under color of state law.  However, should this Court hold that CareLink *is* a state actor, CareLink argues in the alternative that it is entitled to Eleventh Amendment immunity or qualified immunity.

### A. If CareLink is Found to be a State Actor, Plaintiffs' Claims Are Barred By Eleventh Amendment Jurisdictional Immunity

Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *Thiokol Corp. v. Dep't of Treasury,* 987 F.2d 376, 381 (6th Cir.1993) (internal citations omitted). Plaintiffs have the burden of proving that jurisdiction is proper. *Steinberg v. Fed. Home Loan Mortgage Corp.*, 901 F. Supp. 2d 945, 948 (E.D. Mich. 2012)

The State of Michigan and its agencies are immune from liability for damages or injunctive relief in federal court pursuant to the Eleventh Amendment. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) ("a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"); *see also*

*Freeman v. Michigan Dep't of State,* 808 F.2d 1174, 1179 (6th Cir. 1987); *McLittle v. O'Brien*, 974 F. Supp 635, 637 (E.D. Mich. 1997). Although Eleventh Amendment immunity can be waived, the Supreme Court has held that § 1983 does not abolish a state's Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66 (1989). Sixth Circuit law supports that certain factors, including the State's exercise of control over an entity, can lead to that entity being cloaked in immunity against claims under the Eleventh Amendment as an "arm of the state." *Ammend v BioPort, Inc*, 322 F Supp 2d 848, 856 (W.D. Mich. 2004).

Again, while CareLink denies it is a state actor, to the extent this Court deems CareLink to be one, this Court must also conclude that CareLink is an "arm of the state." *Bartell v. Lohiser*, 12 F Supp 2d 640, 646 (E.D. Mich 1998). Specifically, it is a subcontractor with the DWMHA, which acts on behalf of the State of Michigan. Under Michigan's Mental Health Code, DWMHA is a community mental health authority. The Mental Health Code defines a "mental health authority" as "a public governmental entity separate from the county or counties that establish it" that enjoys "the same privileges and immunities from liability and exemptions from laws, ordinances, and rules that are applicable to county community mental health agencies . . ." MCL 330.1204(1) and 1205(b). Federal courts have repeatedly found these service providers to be immune from

24

liability under the Eleventh Amendment. See *Binkowski v Family & Children's Services Agency*, 39 F Supp 2d 882, 887–88 (WD Mich, 1998) ("It is well established that County Departments of Social Services in Michigan are treated as state agencies immune from liability under the Eleventh Amendment."); *Lintz v. Skipski,* 807 F.Supp. 1299, 1303 (W.D.Mich.1992) (noting that "County DSS offices have repeatedly been found to be instrumentalities of the state"), *aff'd,* 25 F.3d 304 (6th Cir.1994).

To the extent CareLink is deemed to be a state actor by this Court, this Court should also hold that when DWMHA contracted with CareLink to fulfill DWMHA's responsibilities to the community, CareLink stepped into DWMHA's role and is entitled to those same immunities. Therefore, CareLink argues in the alternative that it is entitled to Eleventh Amendment immunity.

      B.    <u>If CareLink is Found to be a State Actor, CareLink is Entitled to Qualified Immunity as a Private Party</u>

      i.    <u>Private Party Qualified Immunity</u>

The shield of qualified immunity is traditionally found in the context of governmental actors where their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known exist. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). When a private party seeks qualified immunity from a § 1983 suit, we determine whether: (1) there was a firmly rooted history of immunity for similarly situated parties at common law;

and (2) whether granting immunity would be consistent with the history and purpose of § 1983. *See Filarsky v. Delia,* 566 U.S. 377 (2012) (to determine whether a party may assert qualified immunity, "we look to the 'general principles of tort immunities and defenses' applicable at common law, and the reasons we have afforded protection from suit under § 1983" (quoting *Imbler v. Pachtman,* 424 U.S. 409 (1976)).

The Supreme Court has addressed the question of whether qualified immunity shields a private party charged with conspiring with state officials to violate another's constitutional rights. *Richardson v. McKnight,* 521 U.S. 399 (1997). In *Richardson*, employees of a private for-profit prison contracted with the state sought to invoke qualified immunity against a prisoner's charge of abuse. *Id.*. In an Opinion the Court noted was narrowly limited to its specific facts, the Supreme Court held qualified immunity did not apply to employees of privately run prisons, as the policy reasons which support the application of the doctrine to government officials would not apply to those private employees. *Id*. at 412.

Specifically, the court held that in the administration of a privately-run prison, competition and market forces eliminated the need for immunity which traditionally has served to protect the public from unwarranted timidity on the part of public officials, as well as to encourage the vigorous exercise of official authority and principled and fearless decision-making. *Id.* at 406-408. In deciding

that privately employed prison officials did not warrant immunity, the court stressed there was no ongoing direct state supervision and the state had allocated the discretionary functions typically associated with prison administration, including prison discipline, parole, and good time credit, to governmental officials. *Id.* at 410-411.

However, limited to its facts, the Court left open the question of whether qualified immunity would shield private parties in other circumstances. Specifically, the Court noted that immunity might apply to a private person "briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision." *Richardson,* 521 U.S. at 413.

The Sixth Circuit affirmed qualified immunity in such a case just three years later. In *Bartell v Lohiser*, 12 F Supp 2d 640 (ED Mich, 1998), aff'd 215 F3d 550 (6th Cir. 2000), the Court was faced with a § 1983 claimant who alleged her civil rights were violated when her parental rights were terminated. *Bartell,* 12 F Supp 2d 640. She brought suit against 15 defendants involved in the proceedings that terminated her parental rights. Included in those defendants were the State of Michigan, the State of Michigan's Family Independence Agency (FIA)[10], and a

---

[10] FIA was renamed the Department of Human Services in 1995 which, in 2015, merged with the Department of Community Health to form the Department of Health and Human Services, a defendant in this pending matter. Michigan

private organization the FIA contracted with, Lutheran Social Services (LSS), a non-profit, to provide foster care services for plaintiff's child. *Id*. at 643.

The district court found that the FIA closely monitored and reviewed LSS's work to ensure it met the requirements of the FIA's foster care program, the court orders, and state law. *Id*. In applying the reasoning set forth in *McKnight*, *supra* 521 U.S. 399, the district court ruled LSS was entitled to qualified immunity. *Bartell*, *supra*, 12 F Supp 2d at 646. It explained the same policy reasons which support the use of such immunity by governmental officials equally applied to private individuals under contract with the state to perform the same functions. *Id*. Specifically, the FIA contracted with LSS to provide the services typically provided by the FIA, including overseeing foster homes, evaluating children and parents, providing therapy, and making recommendations to the court. *Id*. Further, the private individuals were "performing their role at the express direction and close supervision of government officials," such that "LSS . . .  essentially acts as the arm of the State." *Id*.

The Sixth Circuit agreed, noting among other factors the policy distinction created between the for-profit prison in *McKnight* and the non-profit foster care in

---

Executive Order No. 2004-38;
https://www.freep.com/story/news/politics/2015/04/11/creation-department-health-human-services-makes-largest-department-state/25606393/

*Bartell*. *Bartell*, supra, 215 F3d 550, 557 (6th Cir. 2000). The Court held the "closely monitored, non-profit interrelationship" between LSS and the State permitted protection under qualified immunity. *Id*.

In the instant matter, accepting Plaintiffs' allegations as true and again accepting that CareLink is a state actor (which it denies), the wrongful conduct alleged by Plaintiffs (i.e. alleged policy and procedures resulting in continued confinements) is a policy set forth by the State and passed down to and required to be adhered to by all those involved in the oversight, administration, and service of professional treatment of Plaintiffs.   Just as the *Bartell* court noted that FIA outsourced the very services it typically provided to LSS, the DWMHA contracted with CareLink to perform the services it typically would have – and in fact, are performed by every other CMHSP in Michigan and now performed by the DWMHA.   Unlike in *McKnight* but very much like *Bartell*, the policy Plaintiffs allege exists involves strict and direct oversight and direction of the treatment by the NGRI Committee and effectuated through the terms and conditions of the ALS contract and the hospital's Standard Operating Procedures. Doc #44, Amended Complaint, Pg. ID 1134-1173, 1119-1129. Accepting Plaintiffs' allegations as true that CareLink was required to act in accordance with the alleged policy, CareLink would appropriately be regarded as acting as an "arm of the State." *Bartell*, supra, 12 F Supp 2d at 646; *Sherman v Four Co Counseling Ctr*, 987 F2d 397, 405 (7th

Cir. 1993) (finding private hospital entitled to qualified immunity when it accepted and treated detained psychiatric patient pursuant to court order).

For these reasons, if this Court determines CareLink is a state actor, it should also conclude CareLink is entitled to qualified immunity.

ii.    <u>Plaintiffs Have Failed to Identify a Clearly Established Constitutional Right Which CareLink's Conduct Unreasonably Violated</u>

The Sixth Circuit applies a two-step analysis to determine whether qualified immunity is proper: first, a court must determine whether a "clearly established" constitutional or statutory right has been violated; and second, a court must ascertain whether the official acted objectively unreasonably in light of the clearly established right. *See Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998); *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (similarly describing the second step as determining whether the right is so "clearly established" that a "reasonable official would understand that what he is doing violates that right."). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs,* 475 U.S. 335, 341 (1986), and will accommodate reasonable errors "because officials should not err always on the side of caution because they fear being sued." *See Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (citations omitted).

Plaintiffs' Complaint alleges that CareLink deprived them of their liberty by adhering to an alleged State policy that returned Plaintiffs to confinement for

violating their conditions for alternative leave. Doc #44, Amended Complaint, Pg. ID 913, ¶175. Having argued in the preceding section that CareLink did not violate a clearly established right of Plaintiffs, CareLink respectfully refers the Court to that section in lieu of reproducing it here. However, assuming for purposes of this section that such a right was violated, the next question necessary to determine whether qualified immunity may apply is whether a reasonable official in CareLink's position would understand that following the alleged State policy violated a clearly established right to liberty.

This question can only be answered in the negative. As discussed previously, the alleged policy is facially valid as it provides for procedural and substantive protection of Plaintiffs' treatment needs and rights.  Additionally, the purpose of the ALS contract process is to ensure that consumers who are adjudicated NGRI – many of whom, such as Plaintiffs, committed violent crimes – receive the appropriate level of supervision and do not pose a threat to others in the community. Further, the 10-page contract detailing the terms and conditions of ALS leave are provided to Plaintiffs, their treatment provider, and various state officials representing the hospital, NGRI Committee, and CMHSP. Each of these parties sign the ALS contract evidencing their understanding and agreement to its terms and conditions. Doc #44, Amended Complaint, Pg. ID 1145, 1155.

A reasonable official in CareLink's position cannot be said to even presume, much less know, that contractors and professionals retained to provide mental health treatment and services would, as alleged by Plaintiffs, falsify or misrepresent their professional judgment. As noted above, CareLink is not a service provider and merely administers the retention of treating professionals who utilize their clinical expertise to render opinions on Plaintiffs' course of treatment. Plaintiffs cannot show that a reasonable official would understand that adhering to the agreed-upon terms of the ALS contract would violate Plaintiffs' rights. *Anderson, supra* at 640. Therefore, this Court should find CareLink is entitled to qualified immunity.

## IV.   COUNTS II (TITLE II – ADA) AND III (REHABILITATION ACT) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

To establish a prima facie case of intentional discrimination under Title II of the Americans with Disabilities Act (ADA), a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program *because of her disability*. *Anderson v. City of Blue Ash*, 798 F3d 338, 357 (6th Cir. 2015) (emphasis added); 42 U.S.C. § 12131, *et seq.* "In other words, the plaintiff must show that the defendant took action because of the plaintiff's disability, i.e., the '[p]laintiff must present evidence that animus against the protected group was a significant factor in the position taken by the municipal

decision-makers themselves or by those to whom the decision-makers were knowingly responsive.'" *Id*.

To establish a *prima facie* violation of section 504 of the Rehabilitation Act (RA), a plaintiff must show that: (1) the plaintiff is a "handicapped person" under the Act; (2) the plaintiff is "otherwise qualified" for participation in the program; and (3) the plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program *solely by reason of his handicap*. 29 U.S.C. 794(a) (emphasis added); *Jones v City of Monroe, MI*, 341 F3d 474, 477 (6th Cir. 2003) *abrogated in part on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc).

For both Counts, Plaintiffs fail to make any specific allegations against CareLink or identify what allegedly discriminatory activity CareLink uniquely engaged in. Rather, Plaintiffs only generally allege that all Defendants "repeatedly subjected the Plaintiffs to long periods of institutionalization, rather than providing treatment to them in the most integrated setting appropriate to their needs." *See* Doc #44, Amended Complaint, Pg. ID 945 ¶288. Again, however, this claim ignores the fact that CareLink is not a "treatment provider." Moreover, by its very nature, CareLink provides services exclusively to consumers with mental illnesses. Importantly, Plaintiffs do not allege that CareLink discriminated against persons *with mental illnesses*. Rather, Plaintiffs allege that they were treated differently

because they were adjudicated *NGRI*. Id. at Pg. ID 947, ¶296-297. The ADA does not recognize individuals adjudicated NGRI as a disability or class entitled to protection separate and distinct from those with mental disability in general, who Plaintiffs do not allege have been subject to discrimination. 42 U.S.C. 12131. Therefore, Plaintiffs have failed to state a claim that the discrimination alleged here constitutes a violation of the ADA.

With respect to the Rehabilitation Act claim, Plaintiffs similarly fail to identify any specific activities performed by CareLink.  Instead, Plaintiffs allege only that "Defendants' action imposed and continue to impose unnecessary confinement and segregation upon Plaintiffs and other individuals adjudicated NGRI… and deny them the most integrated community placements possible".  *See Id.*, ¶296.  However, as discussed at length above, CareLink did not file the actual petitions that Plaintiffs allege to have led to their confinement.

Plaintiffs have failed to allege that CareLink engaged in discrimination in its responsibilities – the administration of contracting with and paying various facilities and service providers. Again, CareLink was not responsible for and did not engage in making professional judgments or recommendations as to Plaintiffs' confinement. Additionally, Plaintiffs have failed to allege that CareLink harbored discriminatory animus against them because of their claimed disability (as required under the ADA), or excluded or denied them benefits solely because of their

34

disability (as required under the RA). To the contrary, Plaintiffs admit that they were afforded community-based treatment, but it was revoked when *their actions* (marijuana/alcohol use) violated the conditions of such treatment. Therefore, Counts II and III of Plaintiffs' Complaint should be dismissed.

## **REQUEST FOR RELIEF**

CareLink Network, Inc. respectfully requests that this Court GRANT its Motion to Dismiss, enter judgment in favor of CareLink, and award such further relief as may be appropriate.

Respectfully submitted,

s/Scott S. Holmes
**FOLEY & MANSFIELD, PLLP**
130 East Nine Mile Road
Ferndale, MI  48220
(248) 721-4200
sholmes@foleymansfield.com
P66580

Dated October 19, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2018 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: NONE

Respectfully submitted,

s/Scott S. Holmes

**FOLEY & MANSFIELD, PLLP**
130 East Nine Mile Road
Ferndale, MI 48220
(248) 721-4200
sholmes@foleymansfield.com
P66580

Dated October 19, 2018