UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DARRYL PELICHET,**
**BONN WASHINGTON,**
**JOSHUA RAGLAND, DARIUS**
**BICKERSTAFF**, through his guardian
**MARY BICKERSTAFF**, and
**MICHIGAN PROTECTION AND**
**ADVOCACY SERVICES, INC.**

                Plaintiffs,

v.

**ROBERT GORDON**,[1] in his official
capacity, **CHARLES STERN**,
individually, **SHARON DODD-**
**KIMMEY**, individually and in her
official capacity, **CRAIG LEMMEN**,
individually and in his official capacity,
**KIMBERLY KULP-OSTERLAND**,
individually and in her official capacity,
**LISA MARQUIS**, individually and in
her official capacity, **MARTHA**
**SMITH**, individually and in her official
capacity, **DAVE BARRY**, individually
and in his official capacity, **KELLI**
**SCHAEFER**, individually and in her
official capacity, **JOE CORSO**,
individually and in his official capacity,
**DIANE HEISEL**, individually and in
her official capacity, **HEGIRA**

Case No. 18-cv-11385

Paul D. Borman
United States District Judge

Anthony P. Patti
United States Magistrate Judge

---

[1] Robert Gordon became Director of MDHHS in January 2019 and is automatically substituted as Defendant for former Director and Defendant Nick Lyon. Nick Lyon is the former Director of MDHHS and was Director of the Michigan Department of Community Health from September 2014 until April 2015, when that agency merged into MDHHS.

**PROGRAMS, INC., NEW CENTER
COMMUNITY SERVICES, INC.,**
and **MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES
(MDHHS),**

                Defendants.

_____/

## OPINION AND ORDER:
## (1) GRANTING DEFENDANT DR. CHARLES STERN'S MOTION FOR PARTIAL RECONSIDERATION (ECF NO. 93); AND
## (2) DISMISSING DEFENDANT CHARLES STERN, PH.D, FROM THIS ACTION

On September 20, 2019, the Court issued an Opinion and Order Ruling on Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), in relevant part Denying Charles Stern, Ph.D.'s Motion to Dismiss in His Individual Capacity, Except for the Eighth Amendment Claim Which is Dismissed. (ECF No. 87, 9/20/19 Opinion & Order.)[2] The remaining claim against Dr. Stern is for violation of Plaintiff Darryl Pelichet's substantive due process rights under the Fourteenth Amendment. On October 4, 2019, Defendant Charles Stern filed a Motion for Partial Reconsideration requesting that the Court reconsider the portion of its decision that left some claims against him intact, and dismiss these claims in their entirety. (ECF No. 93.) Plaintiff

---

[2] That Opinion and Order also granted in part and denied in part a Motion to Dismiss filed by Defendants Michigan Department of Health and Human Services ("MDHHS") and several of its employees in their individual and official capacities (ECF No. 56) and granted a Motion to Dismiss filed by Defendant Lisa Medoff, Ph.D. (ECF No. 63). (9/20/19 Opinion & Order.)

Darryl Pelichet filed a Response on October 22, 2019, as ordered by the Court pursuant to E.D. Mich. L.R. 7.1(h)(2), arguing that Dr. Stern's motion should be denied. (ECF Nos. 94, 95.) The Court held a hearing on this matter on February 14, 2020. For the reasons that follow, the Court **GRANTS** Dr. Charles Stern's motion for partial reconsideration, **DISMISSES** Plaintiff's substantive due process claim against Dr. Charles Stern, and **DISMISSES** Dr. Charles Stern from this action.

## I.    BACKGROUND

The factual background of this matter is set forth in detail in the Court's September 20, 2019 Opinion and Order Ruling on Motions to Dismiss. (9/20/19 Opinion & Order.) In relevant part, Defendant Charles Stern, Ph.D., is a psychologist who was hired by the Walter P. Reuther Psychiatric Hospital ("WPRH") as an independent contractor to conduct psychological evaluations of patients at WPRH who have been adjudicated "not guilty by reason of insanity" ("NGRI"), prior to their annual probate court hearings to determine whether release from continuing hospitalization is appropriate, or whether the court should order continued one year hospitalization. Michigan law requires a state hospital to have a physician or licensed psychologist personally evaluate an NGRI-committed individual, and then testify at the annual hearing. Mich. Comp. Laws § 330.1461.

Dr Stern was hired to conduct a psychological evaluation of Plaintiff Darryl Pelichet on November 8, 2016, and then testify at a November 9, 2016 Wayne

County Probate Court hearing on a WPRH petition for a continuing Hospitalization Treatment Order ("HTO"). Dr. Stern did not create a report or introduce any documentary evidence at the hearing before Wayne County Probate Judge David Braxton.

The purpose of the required in-person psychological evaluation and subsequent court testimony was to inform the judge's decision as to whether Pelichet's mental condition continued to meet the standard thresholds for continued involuntary psychiatric hospitalization. Plaintiff Pelichet was present at the hearing and was represented by court-appointed counsel. After hearing Dr. Stern's direct testimony and cross-examination, and other evidence, Judge Braxton granted the WPRH petition to extend the HTO for a year.

Pelichet subsequently filed a complaint with the Office of Recipient Rights ("ORR"), a patient advocacy entity located within the MDHSS, attacking the Judge's ruling and Dr. Stern's evaluation and testimony regarding Pelichet's "need for continuing hospitalization." The ORR investigated Pelichet's claim and ultimately concluded that some of Dr. Stern's testimony was, in part, incorrect and/or misleading.

Pelichet's single Count 42 U.S.C. § 1983 claim against Dr. Stern relates solely to Dr. Stern's one-time November 8, 2016 evaluation and his November 9, 2016 in-court testimony. (9/20/19 Opinion & Order at p. 22, PgID 2364.) Pelichet alleges

4

that Dr. Stern's brief psychological evaluation of him was not a "bona fide" psychological evaluation, and as a consequence of Dr. Stern's testimony he was subjected by the court to an additional year of involuntary hospitalization. (FAC ¶¶ 259, 261-62, PgID 936-37.)

Pelichet's First Amended Complaint alleges that Dr. Stern's pre-hearing evaluation lasted less than 20 minutes, and therefore was "too brief to conduct meaningful psychological testing, to accurately evaluate a patient's present mental health condition, or to determine the patient's present level of dangerousness to himself or others." (*Id.* ¶ 259, PgID 936.) Pelichet further alleges that Dr. Stern, prior to his testimony, did not consult with Pelichet's treatment team, and testified falsely about Pelichet's non-compliance with treatment. (*Id.* ¶ 260.)

The Court notes that the ORR's amended report, attached as an exhibit to Plaintiff's Complaint, stated that Pelichet's "Medimar Report" indicates that Pelichet did in fact intentionally miss his Wellbutrin XR 300 mg medication treatment several times in the months leading up to his court hearing; on September 19, September 22, September 26 and October 27, 2016. (ECF No. 44, FAC Ex. E, ORR Amended Report dated 6/12/17 at p. 32, PgID 1059.)

This Court's September 20, 2019 Opinion and Order dismissed Plaintiff's "global" claims making allegations about Dr. Stern's procedures, not connected to any other specific cases. Thus, the only remaining claim by Pelichet against Dr.

Stern is that Dr. Stern violated his right to substantive due process under the Fourteenth Amendment. Dr. Stern now seeks partial reconsideration of that conclusion, requesting that the Court dismiss Pelichet's claims against him in their entirety.

## II. LEGAL STANDARD

"A motion for reconsideration is governed by the local rules in the Eastern District of Michigan, which provide that the movant must show both that there is a palpable defect in the opinion and that correcting the defect will result in a different disposition of the case." *Indah v. S.E.C.*, 661 F.3d 914, 924 (6th Cir. 2011). Eastern District of Michigan Local Rule LR 7.1(h)(3) provides in pertinent part:

> Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Ososki v. St. Paul Surplus Lines Ins. Co.*, 162 F. Supp. 2d 714, 718 (E.D. Mich. 2001). "A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted." *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 628, 632 (E.D. Mich. 2001). "A motion for reconsideration should not

be used liberally to get a second bite at the apple, but should be used sparingly to correct *actual* defects in the court's opinion." *Oswald v. BAE Indus., Inc.*, No. 10-cv-12660, 2010 WL 5464271, at *1 (E.D. Mich. Dec. 30, 2010). "[A] motion for reconsideration is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith v. Mount Pleasant Pub. Sch.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003). *See also Allen v. Henry Ford Health Sys.*, No. 08-14106, 2010 WL 653253, at *1 (E.D. Mich. Feb. 19, 2010) (holding that motions for reconsideration do not permit a party to "to raise new legal theories that should have been raised earlier" or "attempt to supplement the record with previously available evidence"). Indeed, "[i]t is well-settled that 'parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.'" *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 (6th Cir. 2012) (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g,* 477 F.3d 383, 395 (6th Cir. 2007)).

The Sixth Circuit has affirmed these standards, which govern the Court's consideration of Dr. Stern's motion for reconsideration:

> It is well-settled that "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 395 (6th Cir. 2007). Additionally, reconsideration motions cannot be used as an opportunity to re-argue a case. Furthermore, a party may not introduce evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier.

*Bank of Ann Arbor v. Everest Nat. Ins. Co.*, 563 F. App'x 473, 476 (6th Cir. 2014). *See also Zucker v. City of Farmington Hills*, 643 F. App'x 555, 572 (6th Cir. 2016) ("It is also 'well-settled' law in this circuit that parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued. . . . [a]nd [n]ew arguments based on hindsight regarding how a movant would have preferred to have argued its case do not provide grounds for Rule 60(b) relief.") (internal quotation marks and citations omitted).

## III. ANALYSIS

The Court's September 20, 2019 Opinion and Order stated that "[b]ecause Dr. Stern has testimonial immunity for his statements at the November 9, 2016 hearing on Pelichet's Petition for Discharge, his November 8, 2016 evaluation [of Pelichet] is the conduct at issue." (9/20/19 Opinion & Order at p. 58, PgID 2400.) Pelichet does not challenge the Court's ruling that Dr. Stern has testimonial immunity for his statements in court.

The Court's Opinion recognized that "Plaintiffs' Complaint against Dr. Stern goes far beyond Pelichet's [single] claim, and sets forth global conclusory allegations that Dr. Stern performed 'sham' evaluations on hundreds o[f] patients and concluded that they all required hospitalizations." (*Id.* at p. 58, PgID 2400.) The Court concluded that those

[n]on-specific, conclusory allegations without names or dates, that Dr. Stern allegedly perjured himself in other patients' cases, do not pass even the low evidentiary standard required on a Defendant's Motion to Dismiss.

(*Id.*)  Thus, the Court's Opinion dismissed that "global" claim against Dr. Stern with regard to every WPRH patient Dr. Stern ever saw.  Plaintiff did not seek a motion for reconsideration on that ruling.  Nor did Plaintiff raise that issue in his pleading responding to Defendant Stern's Motion for Reconsideration.  (ECF No. 95.)

Plaintiff's counsel did mention that "global" claim in his oral argument at Defendant Stern's Motion for Reconsideration:

> [S]ay Stern evaluates 100 patients and 90 of them are severely mentally ill and should stay in the hospital for an additional year and he never exercises professional judgment in any of the evaluations and recommends all 100 for another year of hospitalization on the basis of nothing.  I'm arguing that he's violated every one of those patients' constitutional rights….

(ECF No. 106, February 14, 2020 Corrected Hearing Transcript ("Tr.") at pp. 25-26, PgID 2667-68.)  That "global" issue was resolved against Plaintiffs in the Court's September 20, 2019 Opinion and Order, and was not before the Court in Defendant Stern's Motion for Reconsideration.

Turning then to Plaintiff Pelichet's sole surviving allegation against Dr. Stern, that the 10-20-minute pre-hearing evaluation of Pelichet by Dr. Stern on November 8, 2016 violated Pelichet's constitutional right to substantive due process, this claim

was undermined by Plaintiff's counsel at the hearing on Defendant Stern's Motion

for Reconsideration:

> PLAINTIFF'S COUNSEL: First of all, I don't believe that Dr. Stern
> has to come to the wrong conclusion to have failed to exercise
> professional judgment in conducting the evaluation.

(Tr. at p. 24, PgID 2666.)

> PLAINTIFF'S COUNSEL: [T]he crux of the claim, is that Dr. Stern
> did not actually exercise his professional judgment.
>
> *It doesn't matter how long the evaluation is.* It doesn't matter what
> records he reviewed if he didn't exercise professional judgment. The
> length of the evaluation, the staff he talked to or didn't talk to, the
> records he reviewed or didn't review, the veracity of his testimony in
> the hearing are evidence that he did not exercise professional judgment
> in the evaluation.

(*Id.* at p. 26, PgID 2668 (emphasis added).)

Apart from Defendant Stern's November 2016 evaluation of Pelichet,

Plaintiff's Counsel has not presented any specific examples of Dr. Stern's alleged

failure to exercise professional judgment in conducting other evaluations.

Plaintiff counsel's argument proceeded to focus on Plaintiffs' procedural due

process claims against the MDHHS Defendants for not providing patients with the

statutorily-required notice to a hearing and appeal when patients are "pulled back"

from ALS status to in-patient hospital status: "[e]ven if our clients would have lost

at a hearing had it been provided when they're pulled back from ALS to the hospital,

the fact that they're denied a hearing is still a due process violation," but

acknowledging that this issue – the hearing denial – is "not on Stern" (Tr. at p. 25, PgID 2667), and clearly has nothing to do with Dr. Stern.

To reiterate, two due process hearing issues are contained in the FAC. One is the patient's right to be informed of his right to appeal his being "pulled back" from ALS status to patient status in the hospital. This has nothing to do with Dr. Stern.

Further, the Court has ruled that Plaintiffs' claims of being denied notice of their right to a hearing by the MDHSS Defendants in violation of the statute requiring them to inform the patients of their right to appeal the "pull back," is proceeding forward in this case.

The second hearing issue – the patient's right to an annual hearing in the Probate Court to determine whether he should be continued as a patient of WPRH or released. Dr. Stern's evaluation and testimony occurred with regard to Pelichet's specific November 2016 Probate Court proceeding.

The Court's September 2019 Opinion concluded that the "10-20 minute time factor, in and of itself, does not support the conclusion that Dr. Stern's evaluation was not 'bona fide.'" (9/20/10 Opinion & Order at p. 59, PgID 2401.) Plaintiff counsel's statements at the Stern Motion for Reconsideration hearing agree with that.

The Court's September 2019 Opinion and Order concluded, with regard to Dr. Stern:

Nevertheless, at this stage of its proceedings, considering Plaintiff's allegations and relevant portions of the ORR Reports, this Court will not dismiss Plaintiff Pelichet's claim against Dr. Stern.

(*Id.*)

Since that Opinion and Order, the Court has received Defendant Charles Stern's Motion for Reconsideration, and focused on the specific allegations against Dr. Stern, and "drilled down" on the four ORR Report exhibits attached to the FAC. The Court finds significant that none of the four ORR Reports attached to the FAC as Exhibits D, E, F and G allege with any factual specificity any other patients who have been a subject of Dr. Stern's evaluation or testimony.[3]

Since the length of time of Dr. Stern's examination of Plaintiff Pelichet is not a specific basis for Plaintiff's allegation, and the "Medimar Report" corroborates Dr. Stern's hearing testimony that Plaintiff Pelichet refused, on many occasions in the months before the November 2016 hearing, to take his prescription medications, the

---

[3] Exhibit D to the FAC is an ORR Report dated 2/8/17. (ECF No. 44, Ex. D, PgID 1020, *et seq.*) This deals exclusively with Plaintiff Pelichet's complaint relating to Dr. Charles Stern's testimony at the court hearing on November 9, 2016. The Addendum to the ORR Report stated that Pelichet's Medimar Report, which the ORR did not previously have access to, stated that he "missed his Wellbutrin XR 300 mg medication on 09/19, 09/22, 09/26, 10/27, in the months leading up to his court hearing." (*Id.*, PgID 1034.) Exhibit E, ORR Report dated 6/12/17, also deals solely with Plaintiff Pelichet. (*Id.*, Ex. E, PgID 1049, *et seq.*) Exhibit F, ORR Report dated 9/8/17, also deals with Plaintiff Pelichet. (*Id.*, Ex. F, PgID 1066, *et seq.*) Exhibit G, ORR Summary Report, 4th revision, also deals solely with Plaintiff Pelichet. (*Id.*, Ex. G, PgID 1079, *et seq.*) Thus, none of these Exhibits provide any specific evidence of any other patient cases.

Court, taking the facts in the light most favorable to Plaintiff, the non-moving party, concludes that Plaintiff has not set forth facts that support Pelichet's substantive due process claim against Dr. Charles Stern.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Dr. Charles Stern's Motion for Partial Reconsideration (ECF No. 93) and **DISMISSES** Plaintiff Darryl Pelichet's substantive due process claim against Dr. Charles Stern.  It is further **ORDERED** that Defendant Charles Stern, Ph.D. is **DISMISSED** from this action.

IT IS SO ORDERED.

Dated:  March 6, 2020                                    s/Paul D. Borman
                                                        Paul D. Borman
                                                        United States District Judge