UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DARRYL PELICHET, *et al*.

      Plaintiffs,

v.

ROBERT GORDON, *et al*.,

      Defendants.

CASE NO. 2:18-cv-11385

MAG. ANTHONY P. PATTI

**STIPULATED ORDER APPROVING INTERIM SETTLEMENT AGREEMENT BETWEEN MPAS AND MDHHS AND DISMISSING MPAS' CLAIMS AGAINST THE NGRI COMMITTEE DEFENDANTS**

---

Laurence H. Margolis (P69635)
James M. Gallagher (P73038)
Ian T. Cross (P83367)
Margolis, Gallagher & Cross
Attorneys for Plaintiffs
214 S. Main St., Suite 202
Ann Arbor, MI  48104
(734) 994-9590
larry@lawinannarbor.com
jim@lawinannarbor.com
ian@lawinannarbor.com

Thomas G. Cardelli (P31728)
Cardelli Lanfear, P.C.
Attorney for Defendant Hegira
322 W. Lincoln Ave
Royal Oak, MI 48067
(248) 544-1100
(248) 544-1191 Fax
tcardelli@cardellilaw.com

Katherine J. Bennett (P75913)
Darrin F. Fowler (P53464)
Ashlee N. Lynn (P78789)
Assistant Attorneys General
Michigan Department of Attorney General
Attorneys for MDHHS Defendants
P.O. Box 30736
Lansing, MI  48909
(517) 335-7632
bennettk1@michigan.gov
fowlerd1@michigan.gov
LynnA@michigan.gov

Chris E. Davis (P52159)
Simon Zagata (P83162)
Michigan Protection & Advocacy
Service, Inc.
Attorneys for Plaintiff MPAS
4095 Legacy Parkway, Suite 500
Lansing, MI  48911
(517) 487-1755
cdavis@mpas.org
szagata@mpas.org

## <u>STIPULATED ORDER APPROVING INTERIM SETTLEMENT AGREEMENT BETWEEN MPAS AND MDHHS AND DISMISSING MPAS' CLAIMS AGAINST THE NGRI COMMITTEE DEFENDANTS</u>

On October 29, 2020, Plaintiff Michigan Protection and Advocacy Service, Inc. (MPAS) and Defendant Michigan Department of Health and Human Services (MDHHS) entered into an Interim Settlement Agreement.  (Interim Agreement, attached as Exhibit 1.)

Under Paragraph 19 of the Interim Agreement, MPAS and MDHHS agreed that, upon its execution, MPAS and MDHHS would jointly move the Court for approval of the Interim Agreement and dismissal of MPAS' claims against the individually named Defendants in this action including Defendants Sharon Dodd-Kimmey, Craig Lemmen, Kimberly Kulp-Osterland, Lisa Marquis, Martha Smith, Dave Barry, Kelli Schaefer, Joseph Corso, and Diane Heisel (NGRI Committee Defendants) with prejudice.

Accordingly, MPAS and MDHHS now stipulate that this Court approve the attached Interim Agreement and dismiss MPAS' claims against the NGRI Committee Defendants with prejudice.

**IT IS SO ORDERED.**


Dated: November 6, 2020                    s/Anthony P. Patti
                                           Hon. Anthony P. Patti
                                           U.S. MAGISTRATE JUDGE

Stipulated and Approved for Entry:

| | |
|---|---|
| */s/ Simon Zagata* | */s/ Katherine J. Bennett* |
| Simon Zagata (P83162) | Katherine J. Bennett (P75913) |
| Attorney for Plaintiff MPAS | Attorney for MDHHS Defendants |
| | |
| Dated: November 4, 2020 | Dated: November 4, 2020 |

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DARRYL PELICHET, *et al*.

CASE NO. 2:18-cv-11385

Plaintiffs,

HON. PAUL D. BORMAN

v.

MAG. ANTHONY P. PATTI

ROBERT GORDON, *et al*.,

Defendants.

Laurence H. Margolis (P69635)
James M. Gallagher (P73038)
Ian T. Cross (P83367)
Margolis, Gallagher & Cross
Attorneys for Plaintiffs
214 S. Main St., Suite 202
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
jim@lawinannarbor.com
ian@lawinannarbor.com

Thomas G. Cardelli (P31728 )
Cardelli Lanfear, P.C.
Attorney for Defendant Hegira
322 W. Lincoln Ave
Royal Oak, MI 48067
(248) 544-1100
(248) 544-1191 Fax
tcardelli@cardellilaw.com

Katherine J. Bennett (P75913)
Darrin F. Fowler (P53464)
Ashlee N. Lynn (P78789)
Assistant Attorneys General
Michigan Department of Attorney General
Attorneys for MDHHS Defendants
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632
bennettk1@michigan.gov
fowlerd1@michigan.gov
LynnA@michigan.gov

Chris E. Davis (P52159)
Simon Zagata (P83162)
Michigan Protection & Advocacy
Service, Inc.
Attorneys for Plaintiff MPAS
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
cdavis@mpas.org
szagata@mpas.org

**TABLE OF CONTENTS**

I.     Introduction and Recitations..........................................................................1

II.    Patient Rights Information .............................................................................2

III.   The Department's Policies, Procedures, and Contract
       Language ........................................................................................................3

IV.    Education and Training ..................................................................................6

V.     Data Collection and Monitoring....................................................................7

VI.    Attorneys' Fees, Costs, and Expenses ..........................................................8

VII.   Mediation.......................................................................................................8

VIII.  Release and Settlement of Claims ................................................................8

IX.    Court Approval and Enforcement Powers......................................................9

X.     Miscellaneous Provisions .............................................................................9

## INTERIM SETTLEMENT AGREEMENT

I.     INTRODUCTION AND RECITATIONS

Plaintiff, Michigan Protection and Advocacy Service, Inc. (MPAS)[1] and the Michigan Department of Health and Human Services (Department) enter into this Interim Settlement Agreement (Interim Agreement) to settle the litigation captioned above.

The Parties to this Interim Agreement (the Parties) consist of MPAS and the Department. The Parties agree to comply with the following terms. This Interim Agreement is enforceable in federal court as described in this Interim Agreement.

The Parties hereby stipulate and agree as follows:

WHEREAS Plaintiffs have filed a lawsuit against the Department and others in the United States District Court for the Eastern District of Michigan, styled *Pelichet et al. v. Gordon et al.,* Case No. 2:18-cv-11385;

WHEREAS Plaintiff MPAS claimed violations of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., the Rehabilitation Act, 29 U.S.C. § 794 seq., and the U.S. Constitution, based upon Defendants' alleged failure to provide appropriate mental health services in the least restrictive setting and failure to provide proper due process to individuals deemed Not Guilty by Reason of Insanity (NGRI);

WHEREAS on September 20, 2019, the Court issued its Opinion and Order Denying in part a motion to dismiss filed by the Department, Robert Gordon, Sharon Dodd-Kimmey, Craig Lemmen, Kimberly Kulp-Osterland, Lisa Marquis, Martha Smith, Dave Barry, Kelli Schaefer, Joseph Corso, and Diane Heisel (the MDHHS Defendants);

WHEREAS the MDHHS Defendants have denied and continue to deny such violations;

WHEREAS the Parties desire, through this Interim Agreement, to resolve and settle the litigation without the costs and burdens associated with further litigation with

---

[1] MPAS changed its name under which it conducts business to Disability Rights Michigan (DRM). This name change became effective June 30, 2020.

1

respect to any remaining or potential claims and defenses raised in the litigation by MPAS and the MDHHS Defendants;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and which consideration includes, but is not limited to, the mutual promises and covenants contained herein, the Parties hereby agree to be bound as follows:

II.  PATIENT RIGHTS INFORMATION

1.  The Department will work collaboratively with MPAS to develop and produce a handbook detailing the rights of individuals deemed Not Guilty by Reason of Insanity (NGRI). See Mich. Comp. Laws § 330.2050.

2.  The Parties agree to finalize the language of the NGRI patient[2] handbook and set forth that language in a Final Settlement Agreement (Final Agreement) within 180 days of this Interim Agreement.

3.  Within 30 days of the Final Agreement, the Department will provide or make available a copy of the NGRI patient handbook to every NGRI patient currently receiving inpatient or outpatient treatment in the State of Michigan.

4.  Within 180 days of the Final Agreement, the Department will provide all future NGRI patients and their guardians the NGRI patient handbook upon admission.[3] The Department will publicize the existence of this handbook within any state-operated hospital in which an NGRI patient is treated. Handbooks will be provided to anyone else upon request, and may be provided in electronic format.

---

[2] As used in this Interim Agreement, "NGRI patient" includes all individuals adjudicated NGRI, including those receiving treatment in the community and not merely those that are currently hospitalized.

[3] Admission as used in this paragraph means admission of an NGRI patient to a state-operated hospital upon first probate commitment following NGRI adjudication. Persons found NGRI who are deemed not to meet probate commitment standards after the statutorily required diagnostic evaluation at the Center for Forensic Psychiatry are released without oversight. They will not, therefore, fall under the group of those adjudicated NGRI who will be provided this handbook.

2

5. The Department will provide MPAS documentation demonstrating that the handbook was distributed as described in this section.

III. THE DEPARTMENT'S POLICIES, PROCEDURES, AND CONTRACT LANGUAGE

6. Within 180 days from the date this Interim Agreement is signed, the Department will have revised and updated its NGRI policies and procedures, hospital policies and procedures, provider and Community Mental Health Service Providers (CMHSP)/Prepaid Inpatient Health Plan (PIHP) contract language, as well as authorized leave status (ALS) contract language to ensure all are consistent with Michigan statutory and case law and the tenets listed below. The Department will work collaboratively and in partnership with MPAS in the development of these policies, procedures, and contract and/or agreement language for the types of contracts and agreements described in this Interim Agreement. The Parties will agree to the revisions before the changes are enacted. The changes will be set forth in the Final Agreement.

A. Recommendations and petitions to probate courts by treatment providers, the Department's staff or the Department's contracted service providers will be based on each patient's actual and real individualized treatment needs including individualized risk mitigation considerations in light of their illness.

B. NGRI patients need not successfully complete five successive years under an ALS contract to be eligible for a recommendation to the probate court to discontinue involuntary mental health treatment. ALS contracts will be no longer than one year each. Policies, procedures, and practices will promote safely supporting individuals in the least restrictive setting with community integrated services and ongoing outpatient treatment as clinically indicated. A hospitalization order will not be recommended for an NGRI patient that has successfully completed an ALS contract under a hospitalization order. Instead, after completing authorized leave from the hospital under an ALS contract, an NGRI patient not evidencing symptoms that raise additional risk concerns that lead to arrest or that warrant inpatient hospitalization based on clinical criteria will be recommended for a probate commitment order for

3

10

assisted outpatient treatment (AOT) if the person is thought to meet the criteria in accordance with Mich. Comp. Laws § 330.1401 as a person requiring treatment. If an NGRI patient continues to meet the definition of a person requiring treatment under Mich. Comp. Laws § 330.1401 after completing an ALS contract and four years of AOT, they will no longer be subject to NGRI Committee oversight.[4] In other words, the NGRI Committee's oversight over an NGRI patient will never exceed five continuous years (up to one year of ALS plus four years of AOT). There may be times when the NGRI Committee's oversight of an NGRI patient will be less than five continuous years, such as if the NGRI patient is found to no longer meet the criteria of a person requiring treatment under Mich. Comp. Laws § 330.1401.

C.  CMHSPs supervising an NGRI patient's AOT will have an individualized plan of service (IPOS) that explains that the CMHSP will consult with the NGRI Committee and that the NGRI Committee will have input in the development and supervision of the AOT treatment plan. The IPOS will specify that the treatment provider must inform the NGRI Committee of any proposed changes to the treatment plan before implementation. The IPOS will serve only to inform the patient of the NGRI Committee's relationship with the CMHSP and the Committee's role in AOT and will not contain additional conditions or restrictions beyond the treatment plan. By the signing of the Final Agreement, the Department will revise its contracts with CMHSPs to require CMHSPs include these provisions in all NGRI patients' IPOS.

D.  Any NGRI patient placed on an AOT order will receive an AOT IPOS as described in the prior paragraph. Any entity currently providing AOT to NGRI patients must have a copy of the AOT IPOS, to be signed by the NGRI Committee, NGRI patient, and the CMHSP before developing or changing an NGRI patient's treatment plan. The Department must provide copies of the AOT

---

[4] The NGRI Committee is the Committee housed within the Department's Center for Forensic Psychiatry responsible for supervising NGRI patients' leave and discharge from state-operated hospitals as described in Mich. Comp. Laws §

4

330.2050(5).

        IPOS to any entity not currently providing AOT to NGRI patients before that entity may provide AOT to an NGRI patient.

E.    The Department will collaborate with MPAS to promulgate guidelines for completing clinical certificates seeking involuntary hospitalization or AOT treatment orders for NGRI patients. The guidelines will apply to any Department contractor, CMHSP staff, or Department staff seeking an involuntary hospitalization or AOT treatment order. The guidelines will require an individualized assessment that takes into account why the person qualifies as a person requiring treatment pursuant to the clinician's opinion, including specific factors that clinically support that the individual should be certified as a person requiring treatment as defined by Mich. Comp. Laws § 330.1401. The guidelines will also require a written explanation for the requested treatment, the required risk mitigation strategies that will be requested as part of the ALS contract or AOT treatment plan, and the facts that led the assessor to request that treatment. These guidelines will be set forth in the Final Agreement, within 180 days of this Interim Agreement.

F.    All language in guidance to CMHSPs and in ALS contracts that suggests hospitalization orders are required for NGRI patients will be eliminated, including: "Therefore, the patient must be kept on a Hospitalization Treatment Order and should not be placed on an Alternative Treatment Order if the Court deems it appropriate to maintain the patient's NGRI status and preserve ALS eligibility that may be extended for a period of five years in accordance with MCL 330.2050(5)" and "At least 14 days prior to the expiration of the current court order, a Petition for Second or Continuing Treatment Order and a Clinical Certificate are to be filed with the Probate Court. These should reflect a request for a 90 day or one-year hospitalization the_____named as the hospital." Instead, the Parties shall agree upon additional language that is applicable after one year regarding options for shifting from a hospitalization order to an AOT order, following the process and protections outlined in Chapter 4 of the Michigan Mental Health Code. These options will be described through amendments to policy. The Department will revise its contract

5

12

language with the CMHSPs to include instruction according to this Interim Agreement and as delineated in policy to ensure appropriate monitoring of a NGRI patient for the duration of the NGRI-related treatment order within the initial ALS plan and subsequent AOT treatment plan, as well as an appropriate termination of the AOT order when the risks have been sufficiently mitigated.

G.  ALS contracts and AOT treatment plan restrictions for NGRI patients will bear a reasonable relationship to a patient's mental health treatment needs and an individualized risk mitigation recommendation that occurs as part of support for a patient's recovery and treatment. Restrictions that hamper independence such as restricting employment, driving a car, or enrolling in education classes will be eliminated and not included in an ALS contract unless they bear a reasonable relationship to the individual's risk behavior and treatment recommendations.

H.  All NGRI patients (and their guardians) will receive proper due process when rehospitalization is recommended following authorized leave in excess of ten days, as described in Mich. Comp. Laws § 330.1408.

IV.   EDUCATION AND TRAINING

7.  The Department will provide educational written materials regarding the revisions and changes made as a result of this litigation to professional state hospital staff, independent contractors that provide services to NGRI patients under contracts with the Department, and CMHSP providers serving NGRI patients. The Parties will agree upon the language in the written materials described above and set forth that language in the Final Agreement. Distribution will occur no more than 30 days from the date the policies and procedures have been implemented in Section III.

8.  Upon request, the Department will also make these written educational materials available to disability advocacy organizations, probate court judges, appointed defense counsel, and the general public.

9.  No less than 180 days after the Final Agreement is signed the Department will train all professional hospital staff on the new policies

6

and procedures, announced in advance, and open with invitations to the groups named in paragraphs 7 and 8 above, as well as NGRI patients, their families, and guardians. This training will be recorded and made publicly available on the Department's website.

A.  The Parties will collaborate and agree upon the training topics and content to be delivered.

B.  The Department will invite MPAS to attend all trainings and provide the option for MPAS to present at these trainings.

C.  The Department will further provide additional appropriate education to hospital staff involved in treatment decisions and rights protections for NGRI patients (not excluding social workers and recipient rights staff) to ensure awareness of the new policies and procedures that are set forth for them to follow. This targeted hospital staff training will be held biannually for a two-year period. Thereafter, the training will be held at all new employee orientations.

V.  DATA COLLECTION AND MONITORING

10.  The Department will collect data to ensure the policies, procedures, and contracts are being implemented effectively. It will collect this data every 180 days for a two-year period after the policies are made effective.

11.  In the Final Agreement, within 180 days of this Interim Agreement, the Department and MPAS will agree to a description of the information to be collected.

12.  The Department will collect and track data in an easy to use format and will react to the data (including but not limited to evaluations of NGRI patients performed by medical professionals, number of petitions filed by each medical professional, etc.) and take steps necessary to ensure proper compliance with its revised policies, procedures, and contract. Further, the Department will ensure individuals are receiving proper treatment in the least restrictive setting pursuant to the revisions made as a result of this litigation.

7

13.   The Department will make this data available to MPAS within seven business days of a MPAS request. The Department will also provide MPAS with redacted copies of all documents, records, or data it requests (for example individualized treatment records, court orders, certifications, treatment recommendations, due process documents, ALS contracts, AOT orders, and the like) so that MPAS can monitor compliance with this agreement. Upon request, the Department will provide MPAS evidence that the Department has taken steps necessary to respond to data collected to ensure compliance with its revised policies, procedures, and contracts.

A.   In the Final Agreement, the Department and MPAS will develop a written resolution process for any concerns that arise from MPAS' review of the above information. The resolution process will include an escalation protocol.

VI.   ATTORNEYS FEES, COSTS, AND EXPENSES

14.   In settlement of all of MPAS' claims, the Parties agree that within 30 days of the Final Agreement, the Department shall pay $30,000.00 to MPAS.

VII.   MEDIATION

15.   Should discussions break down on any of the sections above which require the Parties agree upon language within specific timeframes, any party may initiate mediation through the Court after written notice is provided to opposing counsel 15 days in advance. Time is of the essence. However, any deadlines described in this Interim Agreement may be extended in writing with the approval of the Parties and for good cause. The Parties will meet on a regular basis, face to face, no less than every two weeks to effectuate this agreement. For the purposes of this Interim Agreement, face to face meetings include virtual meetings over Zoom or similar platforms.

VIII.   RELEASE AND SETTLEMENT OF CLAIMS

16.   Plaintiff MPAS hereby releases and discharges all individuals named as MDHHS Defendants, including their successors and assigns, of and from any and all claims or causes of action arising out of the matter

8

described in the Plaintiffs' First Amended Complaint filed with the U.S. District Court for the Eastern District of Michigan in Case No. 2:18-cv-11385. This includes claims in any official or individual capacity.[5]

17. Plaintiff MPAS agrees to dismiss with prejudice all claims against MDHHS Defendants in the First Amended Complaint in Case No. 2:18-cv 11385 upon the signing of the Final Agreement, subject to the continued enforcement powers of the Court.

18. The Parties agree that the Court shall retain jurisdiction over this Interim Agreement and the Final Agreement.

IX. COURT APPROVAL AND ENFORCEMENT POWERS

19. Upon execution of this Interim Agreement, the Parties shall jointly move the Court for approval of this Interim Agreement and dismissal of MPAS' claims against the individually named Defendants in this action, including Defendants Sharon Dodd-Kimmey, Craig Lemmen, Kimberly Kulp-Osterland, Lisa Marquis, Martha Smith, Dave Barry, Kelli Schaefer, Joseph Corso, and Diane Heisel. Upon execution of the Final Agreement, the Parties shall jointly move the Court for approval of that Final Agreement and dismissal of MPAS' claims against Robert Gordon and the Department. This dismissal shall be with prejudice subject to the Court's ongoing authority to enforce the terms of this Interim Agreement and the Final Agreement. The Court will retain jurisdiction over this action for one year and shall have the power to enforce all terms of both Agreements. Approval of the Agreements by the Court is a condition precedent to each Agreement's effectiveness.

X. MISCELLANEOUS PROVISIONS

20. There were no inducements or representations leading to the execution of this document, except as stated within the document itself.

---

[5] Paragraph 60 in the First Amended Complaint states: *"Only declaratory and injunctive relief is sought by MPAS as it pertains to the state's policies, practices, supervision, training, and customs as a whole and does not require the participation of individual members to resolve."*

9

21.   This Interim Agreement is binding on the Parties and their successors in interest. Each Party has a duty to so inform any such successor in interest.

22.   Failure by MPAS to seek enforcement of this Interim Agreement pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances and/or provisions.

23.   In the event that a court determines that any provision of this Interim Agreement is unenforceable, such provision will be severed from this Interim Agreement and all other provisions will remain valid and enforceable, provided however that if the severance of any such provision materially alters the rights and obligations of the Parties hereunder, the Parties will attempt, through reasonable, good faith negotiations, to agree upon such other amendments to this Interim Agreement as may be necessary to restore the Parties as closely as possible to the relative rights and obligations initially intended by them hereunder.

This Interim Agreement is effective when representatives for the parties have signed below.

For Plaintiff MPAS:

Dated:  10/29/2020

For the Department:

Dated: 10/23/2020

10

17