UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL PELICHET,
BONN WASHINGTON,
JOSHUA RAGLAND,                          Case No. 2:18-cv-11385
DARIUS BICKERSTAFF,                      Honorable Anthony P. Patti
through his guardian
FRANK BICKERSTAFF, and
MICHIGAN PROTECTION
AND ADVOCACY SERVICE,
INC.,

        Plaintiffs,

v.

ELIZABETH HERTEL,[1] *et al*.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING MDHHS DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AS TO THE NGRI
COMMITTEE DEFENDANTS DUE TO QUALIFIED IMMUNITY (ECF
NO. 128)**

**I.    OPINION**

**A.    Disposition procedure for NGRI individuals**

---

[1] Although Plaintiff's September 2018 operative pleading names Nick Lyon as the MDHHS Director (ECF No. 44, PageID.878), Robert Gordon thereafter became the MDHHS Director; accordingly, the Court automatically substituted Gordon for Lyon.  (ECF No. 87, PageID.2343 n.1.)  Currently, Elizabeth Hertel is the MDHHS Director; therefore, she is likewise automatically substituted for Gordon.  (*See* https://www.michigan.gov/documents/mdhhs/Hertel-bio_649915_7.pdf.)

Plaintiffs Pelichet, Ragland, Washington, and Bickerstaff are individuals who have been found not guilty of certain crimes by reason of insanity (NGRI).  At the center of this lawsuit is the provision of Michigan's Mental Health Code that concerns the "disposition of persons found not guilty by reason of insanity."  Mich. Comp. Laws § 330.2050.  The procedure is as follows:

(1)     The court shall immediately commit any person who is acquitted of a criminal charge by reason of insanity to the custody of the center for forensic psychiatry, for a period not to exceed 60 days. The court shall forward to the center a full report, in the form of a settled record, of the facts concerning the crime which the patient was found to have committed but of which he was acquitted by reason of insanity. The center shall thoroughly examine and evaluate the present mental condition of the person in order to reach an opinion on whether the person meets the criteria of a person requiring treatment or for judicial admission set forth in [Mich. Comp. Laws § 330.1401] or [§ 330.1515].

(2)     Within the 60-day period the center shall file a report with the court, prosecuting attorney, and defense counsel. The report shall contain a summary of the crime which the patient committed but of which he was acquitted by reason of insanity and an opinion as to whether the person meets the criteria of a person requiring treatment or for judicial admission as defined by section 401 or 515, and the facts upon which the opinion is based. If the opinion stated is that the person is a person requiring treatment, the report shall be accompanied by certificates from 2 physicians, at least 1 of whom shall be a psychiatrist, which conform to the requirements of [Mich. Comp. Laws § 330.1400](j).

(3)     After receipt of the report, the court may direct the prosecuting attorney to file a petition pursuant to [Mich. Comp. Laws §§ 330.1434 or 330.1516] for an order of hospitalization or an order of admission to a facility with the probate court of the

person's county of residence or of the county in which the criminal trial was held. Any certificates that accompanied the report of the center may be filed with the petition, and shall be sufficient to cause a hearing to be held pursuant to [Mich. Comp. Laws § 330.1451] even if they were not executed within 72 hours of the filing of the petition. The report from the court containing the facts concerning the crime for which he was acquitted by reason of insanity shall be admissible in the hearings.

(4)    If the report states the opinion that the person meets the criteria of a person requiring treatment or for judicial admission, and if a petition is to be filed pursuant to subsection (3), the center may retain the person pending a hearing on the petition. If a petition is not to be filed, the prosecutor shall notify the center in writing. The center, upon receipt of the notification, shall cause the person to be discharged.

(5)    The release provisions of [Mich. Comp. Laws §§ 330.1476 to 330.1479] shall apply to a person found to have committed a crime by a court or jury, but who is acquitted by reason of insanity, except that a person shall not be discharged or placed on leave without first being evaluated and recommended for discharge or leave by the department's program for forensic psychiatry, and authorized leave or absence from the hospital may be extended for a period of 5 years.

Mich. Comp. Laws § 330.2050 (internal and external footnotes omitted).

**B.    Sources of the NGRI Committee's authority**

The Center for Forensic Psychiatry (CFP) NGRI Committee Procedures proffer two sources of authority:  (1) Mich. Comp. Laws § 330.2050(5); and, (2) Mich. Admin. Code R. 330.10097.  (ECF No. 44, PageID.958.)  Plaintiffs contend that Section 330.2050(5) simply "gives the NGRI Committee *veto power* over any decision by a hospital director to unilaterally place on leave or discharge an NGRI

patient during a term of court-ordered hospitalization."  (ECF No. 130,

PageID.2946 (emphasis added).)  The MDHHS Defendants add that "state

administrative rules and policies . . [,]" such as Mich. Admin. Code R. 330.10097,

also authorize the NGRI Committee's oversight of individuals adjudicated NGRI."

(ECF No. 135, PageID.3223; ECF No. 128, PageID.2912.)

Nonetheless, Section 330.2050(5):  (1) provides the framework for the

state's Center for Forensic Psychiatry (CFP) NGRI Committee's recommendations

to probate courts (*see* ECF No. 44, PageID.970-971) and its execution of

Authorized Leave Status (ALS) Contracts (*see id.*, PageID.979-982); and, (2)

supports the MDHHS Walter P. Reuther Psychiatric Hospital's Standard Operating

Procedure (ECF No. 44, PageID.1119).

## C.    Policies and Directives

The Committee also appears to be guided by a Department of Mental Health

Policy dated November 12, 1973 and Department of Community Health Directive

10-C-1050-AD (*id.*, PageID.958-959), the latter of which is at issue in this lawsuit.

Administrative Directive 10-C-1050 from the Michigan Department of Community

Health (MDCH) – now known as the Michigan Department of Health and Human

Services (MDHHS) – concerns patients committed under the legal status of NGRI.

(ECF No. 44, ¶ 5; *id.*, PageID.951-952.)

According to Plaintiffs, Administrative Directive 10-C-1050 requires that the NGRI Committee review certain items "prior to filing or court appearance." (ECF No. 44, ¶ 5; *see also id.*, PageID.958-959, 963.)  As Plaintiffs allege, "[t]he MDHHS policy . . . caused and continues to cause an unknown number of Michigan residents, including the Plaintiffs, to spend years of their lives unnecessarily and unconstitutionally confined in state-operated psychiatric hospitals." (*Id.*, ¶ 8.)

### D.    Plaintiffs' claims against the NGRI Committee Defendants

The individual Plaintiffs –Pelichet, Ragland, Washington, and Bickerstaff – allege that they "have been adjudicated 'not guilty by reason of insanity' ('NGRI') and subjected to repeated unlawful involuntary civil commitment . . . ." (ECF No. 44, PageID.874.)  Additionally, Plaintiff Michigan Protection and Advocacy Service, Inc. (MPAS) brings this lawsuit "on its own behalf and on behalf of its constituents who have been directly affected by Defendants' unlawful policies and practices" (*Id.*; *see also* ECF No. 44, ¶¶ 42-62), although its claims against the NGRI Committee Defendants have now been dismissed pursuant to a court-approved interim settlement agreement (ECF No. 144).  Of particular import to the matter currently before the Court are Plaintiff's claims against the nine "NGRI Committee Defendants" in their official and individual capacities.  (ECF No. 44, ¶ 24.)  Plaintiffs allege, *inter alia*, that:

- The NGRI Committee Defendants, acting under color of state law, used and continue to use the authority granted to them by Administrative Directive 10-C1050-AD to exercise control over what recommendations psychiatrists, psychologists, and other treating professionals can make to the Probate Court regarding the NGRI patients in their care.

- The NGRI Committee Defendants compelled and continue to attempt to compel Community Mental Health Contractual Agencies, including Defendants Hegira Programs, Inc., and New Center Community Services, Inc., to file petitions for involuntary civil commitment against NGRI patients living in the community solely for the purpose of maintaining those patients' NGRI status, and not because they continued to meet the statutory and constitutional criteria for involuntary civil commitment.

(*Id.*, ¶¶ 25-26 (emphasis added).)  (*See also* ECF No. 44, ¶ 27; ECF No. 44, Page ID.953-982 [NGRI Committee Procedures Manual].)

Each of the four individual Plaintiffs has been the subject of a probate court petition.  (ECF No. 44, ¶¶ 63-170.)  With respect to Plaintiff Bickerstaff, Plaintiffs allege that "[t]he NGRI Committee Defendants have agreed upon release, but approved release only to the community in another AFC [Adult Foster Care] home pursuant to an ALS contract as of April 12, 2018."  (ECF No. 44, ¶ 168.)

Plaintiffs named twenty-one Defendants, but, through various Court orders, nine Defendants have been terminated.  (ECF Nos. 68, 87, 108 & 134.)  Therefore, only twelve Defendants remain active:  (1) the MDHHS; (2) the MDHHS Director; (3-11) the NGRI Committee Defendants (Dodd-Kimmey, Lemmen, Kulp-Osterland, Marquis, Smith, Barry, Schaefer, Corso, and Heisel); and, (12) Hegira

Programs, Inc., which has recently been restored from default. (ECF No. 151.) This opinion and order focuses on Plaintiff's claims against the NGRI Committee Defendants.

### E.    Pending Matter

The parties have consented to my jurisdiction.  (ECF No. 115.)  In the pending motion for partial summary judgment, the MDHHS Defendants argue that the NGRI Committee Defendants – a subset of the MDHHS Defendants –  "are immune from Plaintiffs' individual-capacity [procedural and substantive due process] claims against them[.]"  (ECF No. 128, PageID.2904, 2911.)  In other words, as confirmed at oral argument, the instant motion concerns only certain portions of Count I.  (ECF No. 44, PageID.912-932, ¶¶ 171-193 [Part A], 194-240 [Part B]).

Plaintiffs have filed a response (ECF No. 130), and the MDHHS Defendants have filed a reply. (ECF No. 135.)  Having reviewed the motion papers and having conducted a video motion hearing on October 13, 2020, at which attorneys Ian T. Cross and Katherine Bennett advocated, this matter is now ready for decision.

### F.    Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .  [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving

8

party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## G. Discussion

Unlike the MDHHS Defendants' motion to dismiss, which was based on Fed. R. Civ. P. 12 (ECF No. 56) and which relief the Court denied as to the NGRI Committee Defendants (ECF No. 87, PageID.2415), the MDHHS Defendants' instant motion seeks partial summary judgment under Fed. R. Civ. P. 56. (ECF No. 128, PageID.2904.) Thus, the Court is currently considering whether there is a "genuine dispute as to any material fact . . . [,]" such that "the movant is entitled to judgment as a matter of law[,]" Fed. R. Civ. P. 56(a). *See also Wesley v. Campbell*, 779 F.3d 421, 433-434 (6th Cir. 2015) ("Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the

earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.") (internal quotations and citations omitted).

### 1.    The NGRI Committee always acts as a committee.

The MDHSS Defendants and Plaintiffs each provide a detailed discussion of the NGRI Committee.  (ECF No. 128, PageID.2912-2915; ECF No. 128-1 [Dodd-Kimmey Affid.]; ECF No. 130, PageID.2945-2949.)  Defendant Dodd-Kimmey attests that "[t]he NGRI Committee always acts as a Committee – no individual member or subgroup can approve an NGRI patient's authorized leave or file a recommendation with the probate court."  (ECF No. 128-1, PageID.2935 ¶ 21.) This attestation seems consistent with certain of the MDHHS Defendants' "collective" discovery responses.  (ECF No. 130-13, PageID.3133; ECF No. 130-14, PageID.3153.)  More importantly, as will be discussed again below and as confirmed at oral argument, Plaintiffs agree that "each Defendant can only be held liable for the Committee Members' collective actions during the time period when that Defendant served on the Committee."  (ECF No. 130, PageID.2953, n.4.) Thus, Plaintiffs seem to agree that the Committee members act collectively.

During the hearing, counsel explained that there are two procedures at play: (1) the NGRI Committee makes a recommendation that is provided to the probate court in association with six month review reports for one-year continuing hospitalization orders (ECF No. 44, PageID.961-963, 970); and, (2) the NGRI

10

Committee makes a decision to return an individual to the hospital without any probate court intervention, in association with rehospitalization procedures for an NGRI / ALS individual (ECF No. 44, PageID.979, 1126; ECF No. 130-2, PageID.2981), or, as this Court has put it, "revocation of ALS status without providing notice of right to appeal from a revocation[,]" (ECF No. 87, PageID. 2391, 2389.)  Thus, in the "continuing orders" procedure, the NGRI Committee's recommendation is not the "end-of-the-line," but it has the final say in the "rehospitalization" procedure.

The CFP NGRI Committee Procedures on "Alternative Treatment & Combined Hospitalization/Alternative Treatment Orders" explain, *inter alia*, that "[p]lacement on such orders results in loss of NGRI status, once the patient is discharged from inpatient hospitalization."  (ECF No. 44, ¶ 27; *id*., PageID.964.) Plaintiffs allege that, "[w]hen a patient is not an 'inpatient,' the NGRI Committee Defendants lose their ability to summarily compel the patient to return to the psychiatric hospital without filing a new petition for involuntary civil commitment."  (ECF No. 44, ¶ 31.)

### 2. Whether the NGRI Committee Defendants can be sued under 42 U.S.C. § 1983 for their alleged unconstitutional collective actions?

As a preliminary matter, the Court considers "[w]hether the NGRI Committee Members can be sued under 42 U.S.C. § 1983 for their alleged

unconstitutional collective actions?"  (ECF No. 130, PageID.2944, 2949-2950.)

On this issue, the MDHHS Defendants emphasize a Sixth Circuit case wherein

"[i]ndividual school board members were . . . entitled to qualified immunity[,]"

because "Plaintiffs ha[d] failed to show that the individual school board members

violated a constitutional duty owed to Plaintiffs."  *Williams v. Port Huron Sch.*

*Dist.*, 455 F. App'x 612, 620-621 (6th Cir. 2012).  The Court explained that "[t]he

school board members . . . cannot be held liable as individuals because they had no

duty to act as individuals[,]" although it also stated that "[o]ur conclusion . . . does

not mean that the same actions by persons with individual duties would be entitled

to qualified immunity on the facts of this case."  *Williams*, 455 F. App'x at 620-

621.  *See also Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of*

*Educ.*, 103 F.3d 495, 511-512 (6th Cir. 1996) (in the context of a "failure to act"

claim, "the individual School Board members cannot 'act' independently.").

Relying upon *Williams*, the MDHHS Defendants argue that the NGRI

Committee Defendants "had no duty as individuals or were unable to act as

individuals—their duties and actions only exist as a collective group."  (ECF No.

128, PageID.2920-2922.)  They support this argument with citations to

Administrative Directive 10-C-1050 and CFP NGRI Committee Procedures.  (Id.,

PageID.2921; ECF No. 44, PageID.952, 958.)

In response, Plaintiffs argue that "[m]embers of government boards and committees are routinely held individually liable under Section 1983 for actions they take collectively that violate the rights of others."  (ECF No. 130, PageID.2949.)  *See Silberstein v. City of Dayton*, 440  F.3d 306, 316 (6th Cir. 2006) (in a wrongful termination case, concluding that Plaintiff "suffered a violation of her constitutional right to due process," and then considering "whether it would have been clear to a reasonable person in the Board Members' position that their conduct was unlawful."); *Flying Dog Brewery, LLLP v. Michigan Liquor Control Comm'n*, 597 F. App'x 342, 346, 352, 355 (6th Cir. 2015) (where application to register a beer label was initially denied and MLCC Commissioners were sued in their individual capacities, the Court began with "the second part of the qualified immunity inquiry" and concluded that "any reasonable state liquor commissioner [should have been] on notice that banning a beer label based on its content would violate the First Amendment unless the Central Hudson test was satisfied."); *Cleavinger v. Saxner*, 474 U.S. 193, 194, 206 (1985) (where respondents, who were prisoners at a federal correctional institution, were each found guilty of rule infractions, qualified immunity – *not* absolute immunity – was available to members of a federal prison's Institution Discipline Committee); and, *Wood v. Strickland*, 420 U.S. 308, 322 (1975) ("*in the specific context of school discipline*, we hold that a school board member is not immune from liability for

damages under s 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.") (emphasis added), *abrogated by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

Preliminarily, at least one of these cases is distinguishable, as the instant lawsuit is not "in the specific context of school discipline[.]" *Wood*, 420 U.S. at 322. And, even if the Civil Service Board in *Silberstein* or the Michigan Liquor Control Commission in *Flying Dog Brewery* or the Institution Discipline Committee in *Cleavinger* is analogous to the NGRI Committee (*i.e.*, even if – as Plaintiffs argue – government committees are "routinely held individually liable under Section 1983 for actions they take collectively," (ECF No. 130, PageID.2949)), this Court's prior order notes – in a section labeled, "Claims Against Defendants MDHHS and the MDHHS Employees Acting in Their Official Capacity and in Their Individual Capacity" – that Plaintiffs must "demonstrate what *each* defendant did to violate the asserted constitutional right." (ECF No. 87, PageID.2379-2381). (*See also* ECF No. 135, PageID.3223.) In fact, throughout its opinion, the Court cited cases that support this statement. *See, e.g., Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 899 (6th Cir. 2019); *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011); and *Terrance v. Northville Reg'l*

14

*Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) ("[V]iolations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what each defendant did to violate the asserted right" and "a plaintiff [must] allege 'with particularity' all material facts to be relied upon when asserting that a governmental official has violated a constitutional right.")  (*See* ECF No. 87, PageID.2353-2354, 2395, 2406.)

To be fair, the Court acknowledges Plaintiffs' attempt to distinguish *Williams* and *Claiborne* as "failure to protect" cases.  (ECF No. 130, PageID.2950.)  In *Williams*, the Court concluded that, "[s]ince the plaintiffs ha[d] failed to articulate any duty imposed on the school board members, *as individuals*, to address the student-on-student racial harassment … Plaintiffs' § 1983 claim against the individual school board members must be dismissed."  (*Id.*, 455 F. App'x at 621 (emphasis added).)  In *Claiborne*, where Plaintiff alleged that she was "sexually harassed, abused, and ultimately statutorily raped by a school teacher . . . when she was a student[,]" the Court stated that "the individual board members had no individual supervisory responsibilities other than those imposed on the School Board *as a whole*."  *Claiborne*, 103 F.3d at 500, 511 (emphasis added).

However, even if the instant case does not involve a "failure to protect"
claim, Plaintiffs' attempt to distinguish these cases relies upon a portion of the
Sixth Circuit's opinion in *Claiborne* that favors Defendants' position:

> Because section 1983 has a "color of law" requirement, a board
> member can be held liable only if state law, whether provided by
> statute or judicially implied, empowers him with some legal
> obligation to act. *See Rains County,* 66 F.3d at 1411. <u>A "duty" under</u>
> <u>"color of law" must be a distinct element of a section 1983 case</u>
> <u>alleging a "failure to act."</u> That is, a plaintiff must show that an
> individual defendant failed to act under color of law. *See id.* If state
> law does not impose a duty to take action, "there is no conduit through
> which an exercise of state power can be said to have caused the
> constitutional injury." *Id.* at 1416.
>
> Defendants' positions as board members, without more, cannot be the
> basis for the existence of this element; "a person does not act under
> color of state law solely by virtue of [his] relationship to the state,"
> instead, liability depends on the nature of his conduct. *Id.* at
> 1411 (citing *Polk County v. Dodson,* 454 U.S. 312, 319–20 . . .
> (1981)). *The absence of an identifiable duty* would leave a malleable
> and elusive standard of conduct to which officials should conform
> their actions, rendering the causal connection between the omission
> and the deprivation far too abstract to impose section 1983 liability.
> This result is not reasonably obtainable under the plain language
> of section 1983.
>
> We conclude that to state a claim for a failure to act when the alleged
> wrongdoer is not a supervisory government official, a plaintiff must
> separately establish the "color of law" requirement of section 1983 *by*
> *identifying some cognizable duty* that state or federal law imposes
> upon the alleged "enactor." *In the absence of a duty* there is no section
> 1983 liability because the failure to act cannot be said to have
> occurred under color of law.

*Claiborne*, 103 F.3d at 512 (emphases added).  (ECF No. 130, PageID.2950.)

In addition to *Williams* and *Claiborne*, the MDHHS Defendants correctly point out that the Sixth Circuit recently noted "the Supreme Court's instruction that public officials be held accountable for their own actions, but not the actions of others." *Jones v. City of Elyria, Ohio*, 947 F.3d 905, 913 (6th Cir. Jan. 17, 2020) (citing *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984) (citing *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)).  Addressing qualified immunity as to three defendant police officers, the Sixth Circuit explained:  "[W]e do not lump together each of the relevant government actors.  Rather, we assess each actor's liability on an individual basis." *Jones*, 947 F.3d at 913.  *See also Kellom v. Quinn*, 381 F. Supp. 3d 800, 817 (E.D. Mich. 2019) (Cox, J.) (in addressing qualified immunity as to an ICE Agent and two Detroit Police Department Officers, "[e]ach defendant's liability must be assessed individually based on his [or her] own actions.") (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).  (ECF No. 135, PageID.3222.)  While *Jones* and *Kellom* did not concern members of a board or committee, which is certainly relevant to the "collective action" at issue in this case, the Sixth Circuit's standard of review for qualified immunity makes clear that "we do not lump together each of the relevant government actors." *Jones*, 947 F.3d at 913.

As the Sixth Circuit has instructed, albeit when reviewing "the denial of a motion to dismiss based on qualified immunity," the Court "must analyze

17

separately whether [Plaintiffs have] stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant." *Heyne*, 655 F.3d at 564.  Thus, if Plaintiffs' *individual* capacity claims against the NGRI Defendants are to survive summary judgment, Plaintiffs must "demonstrate what *each* defendant did to violate the asserted constitutional right."  (*Id.*)

### 3.     Whether there is evidence of individual action?

The Court now considers whether there is *evidence* to establish liability against the NGRI Committee Defendants *in their individual capacities*, *i.e.*, what did each NGRI Committee Defendant do?

**a.**     Even though this is a motion for summary judgment, the Court preliminarily observes that Plaintiffs' operative pleading does not articulate that *NGRI Committee Members* have *individual* duties or responsibilities.  First, it seems the only mention of "duty" is within the procedural due process portion of the amended complaint, where Plaintiffs allege that "Defendants knew or should have known that they had a statutory and constitutional duty to Plaintiffs to provide some modicum of procedural due process either before or shortly after depriving the Plaintiffs of their liberty interests in being free of physical detention[,]" (ECF No. 44, ¶¶ 189).  This allegation does not identify individual duties or responsibilities, as Plaintiffs brought their constitutional claims against "*[a]ll*

Defendants."  (ECF No. 44, PageID.912 (emphasis added).)  Second, where

Plaintiff's operative pleading describes their procedural and substantive due

process claims, the mentions of responsibility are not specific to the NGRI

Committee Defendants.  (*See* ECF No. 44, PageID.913 ¶ 173; *id*., PageID.926 ¶

219.)  Third, to the extent Plaintiffs are relying on Mich. Comp. Laws §§

330.2050(5), which is cited in the sample NGRI Committee Court Letter (ECF No.

44, PageID.970) and the sample ALS Contract (ECF No. 44, PageID.979), this

subsection refers to "the department's program for forensic psychiatry," *i.e.*, not to

individuals.[2]  Fourth, the operative pleading consistently refers to the NGRI

Defendants as a group, *i.e.*, not as individuals.  True, the Court notes Plaintiffs'

allegation that "[m]embers of Mr. Ragland's treatment team met with *a*

*representative* from the NGRI Committee . . . [,]" at which point it was determined

that "ultimate responsibility for petitioning remains with the hospital[.]"  (ECF No.

44, ¶ 130.)  However, the nine names appear only in the caption and when

identifying the "NGRI Committee" members (ECF No. 44, PageID.872, 880 ¶ 24),

which supports a conclusion that Plaintiff has not pleaded a basis for relief against

the NGRI Committee Defendants *as individuals*.

---

[2] *See also* ECF No. 44, PageID.1133-1173 (Pelichet and Washington ALS
Contracts).

**b.**     Next, Judge Borman previously made clear the paramount importance of this focus on individual action in its September 20, 2019 opinion:  "[d]amages [sic] claims against government officials in their individual capacity arising from alleged violations of constitutional rights must allege with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (ECF No. 87, PageID.2380-2381) (emphasis in original).  Although Judge Borman ultimately denied the NGRI Committee Defendants' motion to dismiss Counts I, II, and III in their individual capacity (ECF No. 87, PageID.2415), he had already acknowledged:  (i) "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior[,]" *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); (ii) "[t]here are plausible allegations that the members of the NGRI Committee authorized, approved or knowingly acquiesced in conduct in violation of the Constitution, the ADA and the Rehabilitation Act[;]" (iii) "[a]lthough Plaintiffs consistently lump together Defendants Dodd-Kimmey, Lemmen, Kulp-Olsterland, Marquis, Smith, Barry, Schaefer, Heisel, and Corso, without specifying how each, or any, participated in the alleged constitutional violations, *the actions of their Committee* are specifically addressed by Plaintiffs throughout the entirety of the FAC[;]" and (iv) Plaintiffs' allegation that the NGRI Defendants "regularly exercise their seemingly absolute discretion . . . without any adversarial hearings or other judicial oversight[,]" (ECF

No. 44, PageID.917 ¶ 191).  (ECF No. 87, PageID.2390-2391 (emphasis added).)

Thus, it is clear that Judge Borman's opinion and order was referring to *the NGRI Committee's actions* when he sustained individual capacity claims against the member Defendants.  Still, the Court has no reason to believe that Judge Borman meant to relieve Plaintiffs of their burden, namely that "[d]amages claims against government officials in their individual capacity arising from alleged violations of constitutional rights must allege with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right."  (ECF No. 87, PageID.2380-2381 (emphasis in original).)

      **c.**      Perhaps most importantly, Plaintiffs' *motion response* does not mention eight of the nine NGRI Committee Defendants, although their names may appear within the defendants' discovery responses that Plaintiffs attach. (ECF No. 130-13 [Ex. N] & ECF No. 130-14 [Ex. O].)  The motion response's only individual references to NGRI Committee Defendants appear to be the mentions of then-NGRI Committee Chairman, Defendant Dr. Craig Lemmen:  (i) on the issue of procedural due process, when asserting that "the NGRI Committee members clearly acted under color of state law when they revoked Plaintiffs' ALS contracts and ordered them confined in a state hospital[,]" (ECF No. 130, PageID.2950-2952); and, (ii) on the issue of substantive due process, when arguing that "[t]he emails produced concerning Plaintiff Ragland provide further evidence of the

*NGRI Committee's role* in the petitioning process."  (*See* ECF No. 130, PageID.2965-2967 (emphasis added).)  (*See also* ECF No. 130-10 [January 2016 emails between Evette Adams and Lemmen regarding Plaintiff Ragland's NGRI/ALS Hospital Admission] and ECF No. 130-27, PageID.3198-3205 [April 2017 emails between Evette Carroll and Lemmen regarding Plaintiff Ragland's court order].)  Notably, even Plaintiffs' own argument and commentary on the evidence focusses on and repeatedly references the actions of the "NGRI Committee," as opposed to its individual members.  (*Id.*)  As Plaintiffs own characterization attests: "The emails produced concerning Plaintiff Ragland provide further evidence *of the NGRI Committee's role* in the petitioning process." (ECF No. 130, PageID.2965 (emphasis added).)  Evidence of individual action by committee members, other than the chairperson, is neither emphasized nor forthcoming.

Moreover, with respect to the particular email they highlight – in support of the notion that Dr. Lemmen, the NGRI Committee chair, acted on his own volition in returning Plaintiff Ragland to the hospital for being noncompliant with treatment – Plaintiffs neither demonstrate that he failed to consult with other committee members, nor that he knew or should have known that such unilateral action violated Ragland's constitutional rights. (ECF No. 130, PageID.2951-2952; ECF No. 135, PageID.3224-3225.)  The email itself seeks committee action ("I

would like the committee put something in writing…."), and Plaintiffs have not

provided testimony from any of the three people who were involved in this email

chain (Lemmen, Carroll or Brock) demonstrating that the "documentation

indicating *that the NGRI Committee recommended* that Mr. Ragland be returned to

WRPH" was somehow false. (ECF No. 130, PageID.2952.)[3]  The Court will not

conjecture falsity based on the timing of the communications alone, as Plaintiffs

"must do more than simply show that there is a metaphysical doubt as to the

material facts." *Matsushita*, 475 U.S. at 586.  And, as noted above, the MDHHS

Defendants have provided unrebutted affidavit evidence from a committee member

that the NGRI Committee always acts as a committee.  (ECF No. 128-1,

PageID.2935 ¶ 21.)  Furthermore, Plaintiffs' statement that "the NGRI Committee

members clearly acted under color of state law when they revoked Plaintiffs' ALS

contracts and ordered them confined in a state hospital[,]" (*id*. (emphasis added)),

suggests that whatever "cognizable duty" may be "impose[d] upon" the individual

NGRI Committee members by state law, such duty is just as "abstract" as was the

County Board of Education members' – *i.e.*, "enactors'" – duty in *Claiborne*.  In

fact, the remainder of Plaintiffs' argument on this issue cites multiple exhibits,

---

[3] Defendants represent in a footnote to their reply brief that Dr. Lemmen testified in his September 8, 2020 deposition that he may have consulted with his fellow committee members around the time he sent this email, and that the deposition transcript would be filed when ready (ECF No. 135, PageID.3225, n. 3), but it does not appear that the transcript has been made part of this record.

perhaps acknowledging, but without providing the individualized proof required for maintaining an individual capacity claim against each of the NGRI Committee Defendants.  (ECF No. 130, PageID.2950-2953.)

Additionally, where Plaintiffs' motion response mentions "duty" or "responsibility," it does so only when:  (i) quoting *Claiborne*, 103 F.3d at 512 ("A 'duty' under 'color of law' must be a distinct element of a section 1983 case alleging a 'failure to act[,]'" and "[i]n the absence of a duty there is no section 1983 liability because the failure to act cannot be said to have occurred under color of law."); (ii) characterizing the MDHHS Defendants' argument that "it is the hospital director's responsibility to provide the requisite notice[,]" (ECF No. 129, PageID.2924), as the NGRI Committee Defendants "are not responsible for depriving the Plaintiffs of their liberty interests without notice and a hearing[;]" and, (iii) summarizing an assignment of responsibility in *Witzke v. Marlan*, No. 2:16-CV-13753, 2018 WL 7254255, at *8 (E.D. Mich. Oct. 19, 2018) (where Defendant attested, "If I made the determination to revoke Witzke's parole, a parole revocation hearing would have been scheduled utilizing the process outlined in the attached operating procedure[,]" *i.e.*, MDOC OP 06.06.115 "Parole Violation Processing") (Patti, M.J.), *report and recommendation adopted sub nom. Witzke v. Pullins-Govantes*, 397 F. Supp. 3d 975 (E.D. Mich. 2019) (Tarnow, J.).  (ECF No. 130, PageID.2950, 2953-2954)  These references do not establish

24

that the *individual* NGRI Committee members had duties or responsibilities, let alone that they acted individually in violating Plaintiffs' civil rights.

Finally, Plaintiffs agree that "each Defendant can only be held liable for the Committee Members' collective actions during the time period when that Defendant served on the Committee." (ECF No. 130, PageID.2953, n.4.) Plaintiffs claim this is "of little practical significance[,]" as "[e]very named NGRI Committee Defendant was on the Committee during at least one of the ALS revocations at issue[,]" and further noting: "it matters little to each Plaintiff which individual Committee Defendants participated in each decision to return him to confinement." (*Id*.) The Court disagrees. In their individual capacities, it matters (or should matter) a great deal. As the MDHHS Defendants correctly note, "it remains their burden to bear." (ECF No. 135, PageID.3223.) Plaintiffs have not met that burden, even when given the opportunity to do so at the hearing. They have neither clearly shown which individual NGRI Committee members participated in which decisions, nor have they demonstrated action by individual NGRI Committee members, except as to Lemmen in an isolated communication. Even so, Defendant Dodd-Kimmey attests: "[t]he NGRI Committee always acts as a Committee – no individual member or subgroup can approve an NGRI patient's authorized leave or file a recommendation with the probate court." (ECF No. 128-1, PageID.2935 ¶ 21.)

Accordingly, for the reasons set forth in the cases cited by the MDHHS Defendants, and consistent with the Court's prior opinion in this case, under 42 U.S.C. § 1983, Plaintiffs cannot sue the NGRI Committee Defendants in their individual capacities for damages based on allegedly unconstitutional *collective* actions; instead, they must "demonstrate what *each* defendant did to violate the asserted constitutional right."  (ECF No. 87, PageID.2380-2381) (emphasis in original).  Plaintiffs have not done so here.  Nonetheless, Plaintiffs' claims against the NGRI Defendants in their *official* capacities may proceed.

### 4.   Were the alleged procedural and substantive due process rights clearly established?

Defendants argue that the NGRI Committee Defendants in their individual capacities are immune from Plaintiff's procedural and substantive due process claims.  (ECF No. 128, PageID.2921-2925, 2925-2928.)  "Personal defenses such as absolute or qualified immunity may only be asserted by an individual and may not be raised in an official capacity suit."  Jeffrey I. Bedell, *Personal Liability of School Officials Under S 1983 Who Ignore Peer Harassment of Gay Students*, 2003 U. Ill. L. Rev. 829, 862 (2003) (referencing *Owen v. City of Indep., Mo.*, 445 U.S. 622, 657 (1980) ("The offending official, so long as he conducts himself in good faith, may go about his business secure in the knowledge that a qualified immunity will protect him from personal liability for damages that are more

appropriately chargeable to the populace as a whole.")).  "The procedure for

evaluating claims of qualified immunity is tripartite:

> First, we determine whether a constitutional violation occurred;
> second, we determine whether the right that was violated was a clearly
> established right of which a reasonable person would have known;
> finally, we determine whether the plaintiff has alleged sufficient facts,
> *and supported the allegations by sufficient evidence*, to indicate that
> what the official allegedly did was objectively unreasonable in light of
> the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (emphasis added)(quoting

*Dickerson v. McClellan*, 101 F.3d 1151, 1157–58 (6th Cir.1996)).  *See also Foster*

*v. Patrick*, 806 F.3d 883, 886 (6th Cir. 2015).

Although Defendants' motion is premised on qualified immunity (ECF No.

128, PageID.2904, 2908, 2911, 2918), this Court has already explained that

Plaintiffs "have failed to articulate any duty imposed on the [NGRI Committee

Defendants], as individuals . . . ."  *Williams*, 455 Fed. App'x at 621.  Put another

way, Plaintiffs have not shown that "[the NGRI Committee Defendants'

individual] conduct violated a constitutional right[.]"  *Saucier v. Katz*, 533 U.S.

194, 201 (2001).  Plaintiffs having failed to establish that the NGRI Committee

Defendants "individually violated Plaintiffs' rights," or that they "have individual

duties or the authority to act as individuals[,]" (ECF No. 128, PageID. 2921, 2926),

the Court need not address whether the procedural and substantive due process

rights described by Plaintiffs are "clearly established in pre-existing constitutional

law[,]" (ECF No. 128, PageID.2911, 2923, 2927).  *See Saucier*, 533 U.S. at 201

("If no constitutional right would have been violated were the allegations

established, there is no necessity for further inquiries concerning qualified

immunity.  On the other hand, if a violation could be made out on a favorable view

of the parties' submissions, the next, sequential step is to ask whether the right was

clearly established."); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding

that judges have "discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first . . . [.]").

## II.    ORDER

For the reasons stated above, the MDHHS Defendants' August 19, 2020

motion for partial summary judgment due to qualified immunity (ECF No. 128) is

**GRANTED**.  Accordingly, Plaintiffs' individual capacity claims against the NGRI

Committee Defendants (Dodd-Kimmey, Lemmen, Kulp-Osterland, Marquis,

Smith, Barry, Schaefer, Corso, and Heisel) are **DISMISSED**.


Date:  March 27, 2021

Anthony P. Patti
United States Magistrate Judge