U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DARRYL PELICHET, *et al.*,

                Plaintiffs,

v.

ROBERT GORDON, *et al.*,

                Defendants.

CASE NO. 2:18-cv-11385

MAG. ANTHONY P. PATTI

---

Laurence H. Margolis (P69635)
James M. Gallagher (P73038)
Ian T. Cross (P83367)
Margolis, Gallagher & Cross
Attorneys for Plaintiffs
214 S. Main St., Suite 202
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
jim@lawinannarbor.com
ian@lawinannarbor.com

Thomas G. Cardelli (P31728)
David A. Occhiuto (P84508)
Cardelli Lanfear. P.C.
Attorneys for Defendant Hegira
322 W. Lincoln Ave
Royal Oak, MI 48067
(248) 544-1100
(248) 544-1191 Fax
tcardelli@cardellilaw.com

Andrea L. Rizor (P78382)
Chris E. Davis (P52159)
Simon Zagata (P83162)
Michigan Protection & Advocacy
Service, Inc.
Attorneys for Plaintiff MPAS
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
Phone: (517) 487-1755
arizor@mpas.org
cdavis@mpas.org
szagata@mpas.org

Katherine J. Bennett (P75913)
Darrin F. Fowler (P53464)
Ashlee N. Lynn (P78789)
Michigan Dep't of Attorney General
Attorneys for MDHHS Defendants
P.O. Box 30755
Lansing, MI 48909
Phone: (517) 373-1160
Bennettk1@michigan.gov
Fowlerd1@michigan.gov
LynnA@michigan.gov

## DEFENDANT HEGIRA'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. PROC. 56

Defendant Hegira Programs, Inc. ("Hegira"), through its attorneys, Cardelli Lanfear, P.C., hereby moves this Honorable Court to enter an Order for Summary Judgement as to all claims against it pursuant to Fed. R. Civ. Proc 56.

Here, Hegira is entitled to summary judgment because there is no genuine dispute that Hegira did not violate any Constitutionally protected right of either Plaintiff Pelichet or Plaintiff Washington, as alleged in Count I. First, Hegira is not even a state actor, which precludes a claim against it under 42 U.S.C. § 1983. Second, even if this Court were to incorrectly deem Hegira a state actor, there is no evidence that Hegira in any way infringed upon Plaintiffs' rights. Third, to the extent that Plaintiffs are asserting equal protection claims against Hegira, there is no evidence that Hegira treated Plaintiffs differently than similarly situated individuals. Finally, although it is also not clear whether Plaintiffs are asserting an Eighth Amendment claim against Hegira, such a claim is certainly without merit. Thus, Hegira is entitled to summary judgment as to all the various claims within Count I.

Counts II and III of the Complaint are similar and overlapping claims under the A.D.A. 42 U.S.C. § 12132 and 29 U.S.C. § 794(a). There is absolutely no evidence that Hegira's exercise of medical judgment for the benefit of these

Plaintiffs could rise to the level of supporting either claim. Accordingly, Hegira is plainly entitled to summary judgment as to Counts II and III.

On February 11, 2021, and again on May 26, 2021, counsel for Hegira contacted counsel for Plaintiffs to discuss the nature of its prospective Motion for Summary Judgment and to seek concurrence in the relief requested herein, but concurrence was not obtained.

Wherefore, and for the reasons set forth more fully in its Brief in Support, Hegira respectfully requests this Honorable Court grant its Motion, enter an Order in its favor, and award such further relief as may be appropriate.

Respectfully Submitted,

**CARDELLI LANFEAR, P.C.**

By:  */s/ Thomas G. Cardelli*
Thomas G. Cardelli (P31728)
Anthony F. Caffrey, III (P60531)
Attorneys for Hegira
322 W. Lincoln Ave.
Royal Oak, MI 48067
(248) 544-1100
(248) 544-1191 Fax
tcardelli@cardellilaw.com
acaffrey@cardellilaw.com

Dated: June 16, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DARRYL PELICHET, *et al.*,

        Plaintiffs,

v.

ROBERT GORDON, *et al.*,

        Defendants.

CASE NO. 2:18-cv-11385

MAG. ANTHONY P. PATTI

Laurence H. Margolis (P69635)
James M. Gallagher (P73038)
Ian T. Cross (P83367)
Margolis, Gallagher & Cross
Attorneys for Plaintiffs
214 S. Main St., Suite 202
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
jim@lawinannarbor.com
ian@lawinannarbor.com

Thomas G. Cardelli (P31728)
David A. Occhiuto (P84508)
Cardelli Lanfear. P.C.
Attorneys for Defendant Hegira
322 W. Lincoln Ave
Royal Oak, MI 48067
(248) 544-1100
(248) 544-1191 Fax
tcardelli@cardellilaw.com

Andrea L. Rizor (P78382)
Chris E. Davis (P52159)
Simon Zagata (P83162)
Michigan Protection & Advocacy
Service, Inc.
Attorneys for Plaintiff MPAS
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
Phone: (517) 487-1755
arizor@mpas.org
cdavis@mpas.org
szagata@mpas.org

Katherine J. Bennett (P75913)
Darrin F. Fowler (P53464)
Ashlee N. Lynn (P78789)
Michigan Dep't of Attorney General
Attorneys for MDHHS Defendants
P.O. Box 30755
Lansing, MI 48909
Phone: (517) 373-1160
Bennettk1@michigan.gov
Fowlerd1@michigan.gov
LynnA@michigan.gov

## **BRIEF IN SUPPORT OF DEFENDANT HEGIRA'S MOTION FOR SUMMARY JUDGEMENT PURSUANT TO FED. R. CIV. PROC. 56**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT OF THE ISSUES PRESENTED.................................................. vvi

INTRODUCTION ..................................................................................1

STATEMENT OF FACTS .......................................................................1

ARGUMENT ......................................................................................10

**I.** HEGIRA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE DISPUTE THAT HEGIRA DID NOT VIOLATE ANY CONSTITUTIONALLY PROTECTED RIGHT OF EITHER PLAINTIFF PELICHET OR WASHINGTON, AS ALLEGED IN COUNT I ............ **Error! Bookmark not defined.**

   A.   Hegira is Not a State Actor Subject to Section 1983 Claims...................10

   B.   No Evidence Exists in the Record that Hegira Infringed upon Plaintiff's Federally Protected Due Process Rights ..................................................15

   C.   Plaintiffs Have Failed to Demonstrate that Hegira Treated them Differently Than Similarly Situated Individuals......................................19

   **D.**   Plaintiff's Eighth Amendment Allegations Are Unfounded............**Error! Bookmark not defined.**

  II.   HEGIRA IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNTS II (TITLE II ADA) AND III (SECTION 504 REHABILITATION ACT) BECAUSE NO GENUINE DISPUTE EXISTS THAT HEGIRA DID NOT ENGAGE IN ANY CONDUCT THAT RAN AFOUL OF THE ADA OR REHABILITATION ACT WITH RESPECT TO PLAINTIFF PELICHET OR WASHINGTON........................................................................22

CONCLUSION .....................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) ..........................22

*Bier v. Fleming*, 717 F.2d 308 (6th Cir. 1983) ......................................................14

*Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994)..............................................21

*Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 841 (6th Cir. 1996) ........................................................................................................23

C*enter for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ..........................................................................................................................11

*Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) ...................................12

*Elison v. Gabarino*, 48 F.3d 192,195 (6th Cir. 1995)............................................12

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)...........................................................21

*Flagg Bros. v. Brooks*, 436 U.S. 149, 157–58 (1978)..............................................12

*Flint ex rel. v. Kentucky Dept. of Corrections,* 270 F.3d 340, 351 (6th Cir. 2001).12

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352–53, (1974)............... 12, 14

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)................................................11

*Marsh v. Alabama*, 326 U.S. 501, 505–09, 66 S.Ct. 276, 90 L.Ed. 265 (1946) ......12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).......11

*San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 544 (1987)........................................................................................................14

*Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir., 2004).................... 11, 16

*S.S. v. E. Ky. Univ., 532 F.3d 445, 452-53 (6th Cir., 2008)* .............................. 22-23

*Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003) ................................................12

*Thompson v. Ashe,* 250 F.3d 399, 405 (6th Cir. 2001) ............................................11

*United States v. Price*, 383 U.S. 787, 794 (1966) ....................................................11

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ...................................19

*Wolotsky v. Huhn,* 960 F.2d 1331 (6th Cir. 1992) ........................................... 12, 15

*Wright v. Sapp,* 59 F. App'x 799, 801 (6th Cir. 2003) ............................................21

**Statutes**

29 U.S.C. § 794(a) ....................................................................................................23

42 U.S.C. § 12132 .....................................................................................................22

42 U.S.C. § 1983........................................................................................... passim

Fed. R. Civ. Proc. 56................................................................................ 1, 9, 10, 25

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

**I.     WHETHER HEGIRA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE DISPUTE THAT HEGIRA DID NOT VIOLATE ANY CONSTITUTIONALLY PROTECTED RIGHT OF EITHER PLAINTIFF PELICHET OR WASHINGTON, AS ALLEGED IN COUNT I?**

Hegira Answers:                   Yes.

Plaintiffs will Answer:       No.

This Court should Answer:  Yes.

**II.    WHETHER HEGIRA IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNTS II (TITLE II ADA) AND III (SECTION 504 REHABILITATION ACT) BECAUSE NO GENUINE DISPUTE EXISTS THAT HEGIRA DID NOT ENGAGE IN ANY CONDUCT THAT RAN AFOUL OF THE ADA OR REHABILITATION ACT WITH RESPECT TO PLAINTIFF PELICHET OR WASHINGTON?**

Hegira Answers:                   Yes.

Plaintiffs will Answer:       No.

This Court should Answer:  Yes

## INTRODUCTION

This case arises out of alleged federal constitutional and statutory violations against by numerous entities and individuals, including Hegira Programs, Inc. (hereinafter "Hegira"). In their First Amended Complaint, Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for purported constitutional violations, including Fourteenth Amendment Procedural and Substantive Due Process violations, Equal Protection violations, and Eighth Amendment violations (Count I); deprivation of rights guaranteed by Title II of the Americans with Disabilities Act ("ADA") (Count II); and violation of Section 504 of the Rehabilitation Act (Count III). The crux of Plaintiffs' claims against Hegira is that Hegira maintained "a practice of automatically filing petitions for continued hospitalization in bad faith, in order to keep persons who have been adjudicated NGRI institutionalized when there is no longer a statutory or constitutional basis to confine them." However, as will be further explained below, Plaintiffs have put forth no evidence that would substantiate this allegation. Hegira respectfully requests this Honorable Court grant its Motion for Summary Judgment pursuant to Fed. R. Civ. Proc. 56.

## STATEMENT OF FACTS

Hegira is a behavioral healthcare organization and Michigan 501(c)(3) nonprofit corporation that that specializes in providing a variety of mental health and substance abuse treatment services to individuals of all ages, dedicated to achieving

wellness first.[1] As part of its behavioral health services, and as it relates to the instant action, Hegira, as a Community Mental Healthcare Service Provider, subcontracted with CareLink Network, Inc. ("CareLink"), a previous party to this litigation and the organization that contracted with the Detroit Wayne Mental Health Authority ("DWMHA") to treat individuals adjudicated Not Guilty by Reason of Insanity ("NGRI")(See CareLink Contract, Exhibit A). As part of this subcontract agreement, Hegira, an independent entity, was to provide community-based healthcare services to NGRI patients.[2]

As discussed in the First Amended Complaint, and accurately delineated by Michigan Department of Health and Human Services ("MDHHS") in its Motion to Dismiss, Plaintiffs Pelichet and Washington[3] are two individuals who were adjudicated NGRI (Doc # 44 Pg. ID 890-900, 905-907; see also Doc #56 Pg. ID 1273-1275). Plaintiff Pelichet and Plaintiff Washington suffer from schizophrenia disorder (Doc #44, Pg ID 890-892; 905) and were charged with assaultive criminal offenses. (*Id.*) After Plaintiffs Pelichet and Washington were adjudicated NGRI, they were civilly committed to Walter P. Reuther Psychiatric Hospital ("WPRH").

---

[1] https://www.hegirahealth.org/about-hegira.

[2] Former Defendant CareLink Network, Inc. provided an accurate overview of the Administration of Medicaid-based health services in Michigan, and thus Hegira will spare this Court the time in re-delineating the same. Doc # 62, Pg. ID 1390-1394.

[3] Of the four named plaintiffs, Hegira only provided treatment to two: Darryl Pelichet ("Plaintiff Pelichet") and Bonn Washington ("Plaintiff Washington").

As it relates to Hegira's role in this case, both Plaintiffs had been released from confinement at WPRH to live in the community subject to hospital oversight pursuant to agreements known as Authorized Leave Status ("ALS") contracts, as already noted by this Court. (Doc #87, Pg ID 2346-2347). Upon release from WPRH, Plaintiffs Pelichet and Washington were placed on respective ALS contracts, each of which delineated the terms and conditions of their release into the community (ALS Contracts of Pelichet and Washington, Exhibit B).[4] As a condition of their release into society, Plaintiffs Pelichet and Washington agreed to maintain sobriety by not using alcoholic beverages, illicit drugs, or other controlled substances. (*Id.*). Plaintiffs Pelichet and Washington agreed that noncompliance with their respective contracts could lead to the revocation of ALS status, warranting their re-hospitalization at WPRH. (*Id.*) Notwithstanding, both Plaintiffs, on numerous occasions (Pelichet 6 times, Washington 4 times), violated their respective contracts by consuming marijuana, despite knowing that the same would lead to their return to confinement. (Doc #44, Pg. ID 916, ¶ 185).

Plaintiffs' First Amended Complaint reveals that their true challenges are as to State of Michigan's policies and procedures governing the treatment of NGRI patients, rather than any specific conduct of Hegira or its employees. The crux of

---

[4] These contracts were subject to extension up to a period of period of five (5) years in accordance with MCL 330.2050(5). (Id.)

3

Plaintiffs' claims against Hegira is that Hegira maintained "a practice of automatically filing petitions for continued hospitalization in bad faith, in order to keep persons who have been adjudicated NGRI institutionalized when there is no longer a statutory or constitutional basis to confine them." (Doc # 44, Pg. ID 931). Specifically, Plaintiffs assert that Hegira "agreed to petition the Probate Court for a one-year continuing Hospitalization Treatment Order for every NGRI patient placed in [its] care, every year for five years, and to never make a recommendation to the Probate Court for discharge or alternative/assisted outpatient treatment, regardless of the opinions of their own treating professionals about the patient's present condition and treatment needs." (*Id.* at 882). This is patently false and is in fact supported by no evidence currently in the record. In fact, this Court has already rejected this argument, noting that Plaintiffs were trying to "cherry-pick" a provision from the Center for Forensic Psychiatry NGRI Committee Procedures that, when read in the proper context, clearly does not evidence a policy of mandating confinement from Community Caretakers and certainly does not order community caretakers to never place an NGRI patient on Alternative Treatment Orders ("ATO"). (Doc # 87 Pg. ID 2382-2383).

Instead, while under ALS contract, it was the role of Hegira to acclimate NGRI patients back into society, including Patients Pelichet and Washington (Affidavit of Bill Hartley, Exhibit C). Pursuant to the ALS contracts, Hegira   filed

4

petitions for continued treatment to continue NGRI patients on their treatment under their ALS contracts, but did not do so because it was compelled by the State, any provision in the ALS contract, or any CFP procedure, as already discussed by this Court. (*Id.*; see also Doc #87 Pg. ID 2382-2382). CareLink provided training materials to Hegira employees with respect to the treatment of NGRI patients (CareLink NGRI Training Materials, Exhibit D). Nothing in these training materials indicate that Hegira was to establish and maintain a practice of automatically filing these petitions in bad faith to maintain NGRI status without regard to their treatment needs, as asserted by Plaintiffs. (*Id.*).

Instead, the decision to petition the probate court to continue Plaintiffs Pelichet and Washington in their treatment under ALS contract was done at the sound expert discretion of their treating professionals upon careful consideration of the potential for further decompensation that might result from release therefrom, which will be delineated in more detail below. Hegira unequivocally denies that it automatically filed such petitions without regard for the opinions of their treatment professionals or that it was compelled to do so. Indeed, especially in the field of mental health, it is common for disagreements to arise regarding a patient's care and treatment needs, but ultimately everything that is done is in furtherance of the patient's best interest, which is true for Plaintiffs in this case.

Indeed, the fatal flaw in the Plaintiffs' claims against Hegira is that there is no evidence, testimonial or otherwise, to support a claim that the Hegira professionals did anything other than use and apply their mental health training and experience in providing care and treatment for Mr. Pelichet and Mr. Washington. Each of the professionals employed by Hegira who were requested to evaluate either Mr. Pelichet or Mr. Washington used their professional judgment in the assessment.

Everette Carroll is an employee of Walter Reuther Hospital, Center of Forensic Psychology. She has a Bachelor of Science in Sociology and a master's in social work and Mental Health from the University of Michigan (Carroll Deposition, Exhibit E, pg. 6, 10). At Walter Reuther, she was principally in charge in monitoring, treating, reporting, and working on the compliance with the NGRI Committee Guidelines.  Carroll noted that the probate judge has the decision-making authority:

Q.   Would you agree that NGRI Committee is the most powerful body in obtaining and overseeing hospital treatment orders?

A.    No.

Q.    Who is, besides the Probate Judge?

A. Oh, see. There you go. The Probate Judge. Exactly, because no matter what we present, it is up to the Probate Judge to, you know, determine, you know, the legitimacy of the evidence that's provided.  (Pg. 25, Lines 1-8, Transcript of Everette Carroll)

6

She also explained that Hegira personnel collaborated on patient treatment and, despite occasionally disagreeing, were always acting in the best interests of the patients:

> Q.     And sometimes you would disagree with one another?
>
> A.     Yes.
>
> Q. And in settings of the mental health, you've devoted your career towards, you would anticipate that you would have disagreements from time to time within a team setting relative to a patient's care and treatment.
>
> A.     Yes.
>
> Q. That's just part of the process of getting the best result for your patient, correct?
>
> A.     Yes.
>
> Q. And, in fact, if you didn't have that tension or that disagreement from time to time, you would sort of scratch your head a little bit, right, regarding what everybody's bringing to the table. I mean, you anticipate it.
>
> A. Exactly. Exactly. Just as I stated before to Mr. Margolis, you know, we can agree to disagree, and that's not a problem. You know, we present the evidence. We all have a discussion and, the goal is to do what is best for the patient. So, everybody is not going to agree all the time, or sometimes people just bring a different perspective that was not considered. It doesn't mean that I disagree with it. Maybe I had not considered it. So yes, that's to be expected. [*Id*. at 100-101.]

Similarly, Dr. Craig Lemmen, who worked at the Center for Forensic Psychiatry, Walter Reuther and was a chairman of the NGRI Committee for 20 years, testified

in this matter (Lemmen dep, Exhibit F, pg. 6, 10). Dr. Lemmen explained what NGRI means and how that statute operated. More importantly, he described the interaction between Hegira, CMH (Community Mental Health) and the NGRI Committee (*id*. at 28-29). He emphasized that all parties were required to and did exercise independent professional judgment as to the care of NGRI patients (*id*).

Plaintiff also recently deposed Mary Scott (Scott dep, Exhibit G). Scott testified that she has been a mental health advocate for Hegira for 35 years. *Id*. at 6, 10. She testified that her duties included making sure that the patient "has what they need to basically stay out of the hospital; transportation, medication, get back and forth to doctors' appointments, and that kind of thing" (*Id*. at 7). She testified that the only difference between NGRI patients and non-NGRI patients is the paperwork (forms) that must be filled out. *Id*. Her testimony reiterated the basic principles regarding the 90-day reports that must be filled out, including how she must document whether the patients are complying with their contractual requirements in the ALS to stay out of the hospital and in the community. *Id*. at 9-11. However, importantly, she did not have a role in determining those requirements—merely whether the patients were in compliance with same. *Id*.

Ms. Scott testified at length regarding preparing her reports both generally and in regard to Plaintiff Pelichet. She emphasized that nobody told her to put anything specific in Plaintiff Pelichet's 90-day report (*id*. at 21-22). Instead, she was tasked

8

with exercising her professional judgment, which she did. *Id*. Because Plaintiff Pelichet had not complied with his ALS contract, although Scott did not recommend hospitalization for Mr. Pelichet, she did recommend continued outpatient treatment based on her clinical judgment. *Id*. at 26.

Plaintiff also deposed Dr. Puthenparampil Vijayakumaran, a Psychiatrist and Medical Director for Hegira since 1982 (Vijayakumaran dep, Exhibit H, 6-7). Importantly, he testified that (a) he filled out forms with the same level integrity without regard to whether the patient was NGRI or otherwise; (b) his recommendations were based on his professional judgment, after consulting with a variety of professionals; and (c) not only is he not controlled by the NGRI committee, he has not personally received input from that committee (Id. at 21-22).

In sum, no witness has testified that they did anything other than exercise their independent, professional judgment in assessing patients—be they NGRI or otherwise. With discovery having concluded, it is abundantly clear that Hegira is entitled to summary judgment. Hegira and its employees **always** would use their own professional opinions relative to working with Plaintiffs Pelichet and Washington. Hegira respectfully requests that this Honorable Court grant its motion for summary judgment pursuant to Fed. R. Civ. Proc. 56.

Additional facts will be set forth below as necessary.

# **ARGUMENT**

## I.   HEGIRA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE DISPUTE THAT HEGIRA DID NOT VIOLATE ANY CONSTITUTIONALLY PROTECTED RIGHT OF EITHER PLAINTIFF PELICHET OR WASHINGTON, AS ALLEGED IN COUNT I

Plaintiffs plead a variety of constitutional claims within Count I. As will be explained below, Hegira is entitled to summary judgment[5] as a matter of law as to allegations in Count I.

### A.   Hegira is not a State Actor Subject to Section 1983 Claims

Plaintiffs allege due process violations pursuant to the Fourteenth Amendment via 42 U.S.C. § 1983. (Doc #44, Pg. ID 912-932). In support of their due process claims, Plaintiffs assert that they were deprived of their liberty each and every time they were returned to confinement at WPRH as a consequence of violating their respective ALS contracts (Doc #44, Pg. ID 913, ¶ 175). However, these allegations fail as Hegira is not a state actor subject to Section 1983.

---

[5] Summary judgment should be granted when the moving party demonstrates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587; 89 L. Ed. 2d 538; 106 S. Ct 1348 (1986). The nonmoving party may not rest upon his or her pleadings; rather, the nonmoving party's response must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. Proc. 56(e). Where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001).

42 U.S.C. Section 1983 "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws" of the United States. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir., 2004). To substantiate a Section 1983 claim for violation of the Constitution, a plaintiff must demonstrate that the defendant, in causing the deprivation, was "acting under color of state law." *Id.* It is axiomatic that Section 1983 and constitutional claims require state action. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). A party acts under color of state law when it exercises authority "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classics*, 313 U.S. 299, 326 (1941). By definition, private parties do not act under color of law as required for liability under Section 1983, and the exceptions are rare. See generally *United States v. Price*, 383 U.S. 787, 794 (1966).

With respect to private actors, the Supreme Court "has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). Under the public-function test, courts ask whether the private actor "exercise[d] powers which are traditionally exclusively reserved to the state"; under the state-compulsion test, courts ask whether the state "significantly encouraged" or "coerced" a private party

11

into doing some act; and, lastly, under the symbiotic relationship or nexus test, courts ask whether there is a "sufficiently close contact" to impute the action taken by the private actor onto the state. *Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003) (quoting *Elison v. Gabarino*, 48 F.3d 192,195 (6th Cir. 1995)).

The public function test is generally interpreted narrowly by courts in the Sixth Circuit, and has rarely been used to find state action by private parties. *Chapman*, *supra* 319 F.3d at 833-834. Only functions like holding elections, exercising eminent domain, and operating company towns fall within this category. *Id.*[6] The Sixth Circuit has held that "providing health services has not been a power which has traditionally been exclusively reserved to the state." *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992) (holding a community mental health center not to be a state actor for purposes of Section 1983). As such, Hegira, as a mental health service provide, cannot properly be deemed a state actor pursuant to the public function test, as providing mental health services is not a function traditionally exclusively reserved to the State.

Under the state-compulsion test, Plaintiffs have put forth no evidence that the State "significantly encouraged" or "coerced" Hegira into doing any act. While

---

[6] ; See also *Flagg Bros. v. Brooks*, 436 U.S. 149, 157–58, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Jackson v. Metropolitan Edison Co*., 419 U.S. 345, 352–53, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Marsh v. Alabama*, 326 U.S. 501, 505–09, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

Plaintiffs generally allege that Hegira, at the instruction of the CFP NGRI procedures, agreed to petition the probate court for continuing treatment orders and to never make recommendations for discharge or alternative outpatient treatment "regardless of the opinions of their own treating professionals about the patient's present condition and treatment needs" (the heart of the claims against Hegira), this is indisputably false and not supported by any evidence in the record. (Doc #44, Pg. ID 882, ¶ 29). In support of this argument, Plaintiffs cite to a section of the CFP NGRI Committee Procedures entitled "Alternative Treatment and Combined Hospitalization Treatment Orders," which reads:

> IN ORDER TO MAINTAIN NGRI STATUS, NGRI PATIENTS SHOULD NOT BE PLACED ON ANY TYPE OF ALTERNATIVE TREATMENT ORDER OR COMBINED HOSPITALIZATION/ALTERNATIVE TREATMENT ORDER. Placement on such orders results in loss of NGRI status, once the patient is discharged from inpatient hospitalization.

Doc #44, Exhibit B to First Amended Complaint, Pg. ID #964). However, this Court has already held that, when read in context, this provision simply clarifies the process for continued NGRI status and explains the impact of a patient's loss thereof. (Doc #86, September 20, 2019 Order, Pg. ID 2358, 2382-2382). Plaintiffs' assertion is without any factual basis, and this Court has explained that this "is not an order to [Hegira] that [it] must never place an NGRI patient on ATO." (Doc #86, supra at 2383). There is simply no evidence in the record that the State ever instructed,

13

coerced, or encouraged Hegira to petition the probate court for continuing treatment orders in the manner described by Plaintiffs.

Under the symbiotic relationships test, there must exist a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as the state itself. *Jackson*, *supra* 419 U.S. at 351. However, the mere fact that a business is regulated by the state does not, by itself, convert its action into that of the state. *Id.* at 350. Instead, there must be intimate involvement by the state in the challenged private conduct for that conduct to be attributable to the state for purposes of Section 1983. *Bier v. Fleming*, 717 F.2d 308 (6th Cir. 1983). Moreover, the fact that a private entity may perform a function that serves the public does not mean it is engaged in state action. *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 544 (1987).

Again, there is no evidence presently in the record that the State of Michigan was intimately involved in the treatment of NGRI patients by Hegira. The fact that Hegira filed periodic petitions to continue Plaintiffs Pelichet and Washington on their treatment does not transform Hegira into a state actor. That Hegira was tasked with acclimating Plaintiffs Pelichet and Washington back into society while on NGRI status is not dispositive here—indeed, Hegira treats mentally ill patients regardless of their status of NGRI, and would have continued to do so even if it had not been subcontracted by CareLink.

14

Simply put, Hegira's conduct satisfies none of the aforementioned tests, and thus cannot properly be deemed a state actor for purposes of Section 1983. In fact, Hegira did not even contract with the State to provide such services to NGRI patients; rather, Hegira is the subcontracting entity of CareLink Network, another private, non-profit corporation.[7] See Hartley Affidavit.  Hegira had no contracts with the State whereby it was to act as the agent of the State. Indeed, in *Wolotsky*, the Sixth Circuit held a private community mental health center not to be a state actor because, among other reasons, it had its own independent board of trustees. *Wolotsky*, *supra* 960 F.2d at 1335. In accord with the foregoing, there exists no genuine dispute that Hegira cannot properly be deemed to be a state actor for purposes of Section 1983, and thus summary judgement on Plaintiffs Pelichet and Washington's constitutional claims is appropriate.

B. <u>No Evidence Exists in the Record that Hegira Infringed upon Plaintiff's Federally Protected Due Process Rights</u>

Even if Hegira is deemed to be a state actor for purposes of Section 1983, no evidence currently in the record indicates that any conduct by Hegira with respect to the treatment of Plaintiffs Pelichet or Washington infringed upon any federally protected rights.

---

[7] Doc # 62, CareLink's Motion to Dismiss, Pg. ID 1403, (CareLink contracted with DWMHA to ensure the treatment of individuals adjudicated NGRI, which then contracted with community mental health service providers, such as Hegira); *See also* Exhibit A – CareLink Contract.

To reiterate, the sole basis of the claims by Plaintiffs Pelichet and Washington against Hegira is that Hegira petitioned the probate court for one-year continuing treatment orders for NGRI patients in its care, suggesting that it somehow endeavored to never make recommendations to the probate court for alternative outpatient treatment, regardless of the conditions and treatment needs of its NGRI patients. (Doc #44, *supra*, Pg. ID 882, ¶ 29). As noted above, Scott recommended out-patient treatment for Plaintiff Pelichet.

Regardless, to maintain an action pursuant to Section 1983, a plaintiff must demonstrate a violation or deprivation of a federal statutory or constitutional right. *Flint ex rel. v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001); see also *Smith*, *supra* at 576. The only evidence put forth by Plaintiffs in support of this allegation is extraordinarily speculative and weak. This Court has already observed Plaintiffs' reliance upon the out-of-context CFP NGRI procedure to be unpersuasive. (Doc # 87 Pg. ID 2382-2383).

Second, Plaintiffs may point to the pre-litigation testimony of Mary Scott in the probate court, delineating that "throughout her entire career, when completing a Petition for Continuing Treatment Order form for an NGRI patient, she had never checked a box in the 'I recommend' section other than the box for one additional year of hospitalization." (Doc #44, *supra*, Pg. ID 928, ¶ 227). However, every Hegira witness—including Ms. Scott—has testified in this matter that he or she

16

always exercised independent medical judgment with respect to each patient. Indeed, Hegira's decision to file petitions was always based upon individualized assessments of NGRI patients by psychiatrists. Frequently, this was based on violation of the ALS contracts regarding illicit drug use, which is important because drugs like marijuana may trigger psychotic episodes. Continued treatment supports drug testing, which is unquestionably beneficial for the Plaintiffs in ensuring the absence of future psychotic episodes. Moreover, with respect to Plaintiff Pelichet, Ms. Carroll added that he did not understand his need for treatment and that he often minimized his symptoms (Exhibit E, pg. 113). Specifically, Ms. Carroll testified that there were times that Plaintiff Pelichet resisted treatment and decompensated even further (*Id.*) In fact, she testified that "there has been times when Plaintiff Pelichet, while out on ALS, walked back into WPRH, stating that he needed to be hospitalized." (*Id.*). In sum, the decision to continue Plaintiffs Pelichet and Washington on their respective treatment on NGRI status, however frequent, was made only after careful assessment by licensed professionals.

Third, as part of its treatment of NGRI patients, Hegira employees underwent training organized and directed by CareLink. (*see* generally, Exhibit D). Nothing in these training materials directs Hegira employees to automatically file petitions without regard for treatment needs. (*Id.*). See also Affidavit of Carol Zuniga, Exhibit I, ¶ 7.

17

Finally, the ALS contracts of Plaintiffs Pelichet and Washington do not support Plaintiffs' assertion of due process violations. Indeed, the ALS contracts both reference and mirror MCL 330.2050(5), which provides that a person in relevant part that an NGRI individual shall not be discharged or placed on ALS without first being evaluated and recommended for discharge. (Doc #44, Pg. ID 1134-1173, ALS contract excerpts). These contracts also reference Hegira's professional evaluation of each NGRI patient's need for continuing treatment pursuant to the "Sixth Month Review Report," which is defined as a "determination by a psychiatrist whether the patient continues to be a person in need of mental health treatment." (*Id.* at 1136 ALS contract excerpts). See generally CareLink's Motion to Dismiss. (Doc #62, Pg. ID 1406-1407). The suggestion by Plaintiffs that Hegira filed these petitions without regard for the opinions of its own treating professionals is, in fact, counterintuitive, also pointed out by CareLink. (*Id.* at 1408). This is because Hegira's alleged unconstitutional behavior would have violated that very same policy Plaintiffs assert required such conduct.

In sum, there is no genuine dispute that any action or policy on the part of Hegira violated the procedural or substantive due process rights of either Plaintiff Pelichet or Washington. As such, summary judgement on Plaintiffs Pelichet and Washington's procedural and substantive due process claims is appropriate.

18

C. <u>Plaintiffs Have Failed to Demonstrate that Hegira Treated Them Differently Than Similarly Situated Individuals</u>

Plaintiffs also bring an Equal Protection claim in the First Amended Complaint, although it is unclear whether Plaintiffs are asserting this claim against Hegira (Doc #44, Pg. ID 932-934, ¶¶ 241-249). Notwithstanding this general averment, there is no genuine dispute that no conduct by Hegira ran afoul of the Equal Protection Clause.

To maintain a claim for Equal Protection, a plaintiff must demonstrate the "intentional and arbitrary discrimination" by the state, meaning that the plaintiff has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Sixth Circuit has held that "the threshold element of an equal protection claim is disparate treatment." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

Plaintiffs allege that they were treated differently than similarly situated individuals, alleging differential treatment between NGRI individuals and GBMI individuals. (Doc #44, Pg. ID 62, ¶¶ 243-246). If there are any differences, it is only because the State of Michigan system creates certain differences. Hegira, as a private healthcare organization, plays no part in this. Moreover, this Court has already held that "Plaintiffs have alleged discrimination based on their NGRI status, but they have not pled that they were treated differently than other NGRI patients or

19

non-NGRI patients…Accordingly, Plaintiffs' equal protection claim is dismissed."
(Doc #87, Pg. ID 2405).

Moreover, there is no evidence that Hegira treated Plaintiffs Pelichet or
Washington any different from any other NGRI or non-NGRI patient within its care.
In fact, "Hegira does not label its patient files 'NGRI' when a patient is, in fact,
NGRI status." (Affidavit of Deborah Olexa, Exhibit J). Thus, NGRI patients are
treated no differently than non-NGRI patients. Consequently, to the extent that
Hegira is subject to the Equal Protection Clause, and to the extent that Plaintiffs'
Equal Protection claim remains viable, summary judgement on Plaintiffs' Equal
Protection claim against Hegira is appropriate.

D. Plaintiff's Eighth Amendment Allegations Are Unfounded

Count I of the First Amended Complaint also contains an Eighth Amendment
claim for cruel and unusual punishment, although, again, it is unclear whether
Plaintiffs are asserting this claim against Hegira, as this portion of the Amended
Complaint contains to specific factual allegations against Hegira. (Doc #44, Pg. ID
934-942, ¶¶ 250-278). Plaintiffs' Eighth Amendment claim only references
Defendant Bavineni and Defendant Stern and their "sham evaluations," but nowhere
references Hegira. (*Id.*, at 935-939, ¶¶ 255-271; Doc 87. Pg. ID 2406).

Notwithstanding, to the extent that Plaintiffs Pelichet and Washington have
pled an Eighth Amendment claim against Hegira, there is no genuine dispute    that

20

Hegira did not display "deliberate indifference" to the medical needs of Plaintiffs Pelichet or Washington. To maintain a claim for cruel and unusual punishment pursuant to the Eighth Amendment, a plaintiff must demonstrate "deliberate indifference" to serious medical needs of prisoners by the defendant such that constitutes the "unnecessary and wanton infliction of pain" necessarily proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); see also, *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The Sixth Circuit has held that mere acts of negligence, even if repeated, are insufficient to sustain a claim under the Eighth Amendment. *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994). Moreover, and as noted by this Court, disagreements with respect to medical care do not state an Eighth Amendment claim. *Wright v. Sapp*, 59 F. App'x 799, 801 (6th Cir. 2003); Doc # 87, Pg. ID 2407).

In the present case, the only arguable reference to Hegira with respect to the alleged Eighth Amendment violation comes when Plaintiffs' allege that the "NGRI Committee Defendants, through their contractual agreements with the CMH Contractor and Subcontractor Defendants [here, Hegira], directed those entities to ensure that each NGRI patient remained subject to hospitalization." (Doc #44, Amended Complaint, Pg. ID 69, ¶ 274). As set forth above, this assertion is patently false, as the evidence establishes that it maintained no such practice. There is no evidence that Hegira undertook any course of conduct that amounted to  the

deliberate indifference for the medical needs of either Plaintiff Pelichet or Washington. To the contrary, Hegira was tasked with providing mental health services and every Hegira witness confirmed that they did so in good faith. Moreover, Plaintiffs continued confinement is attributable to their continuing violations of their respective ALS contracts by consuming narcotics, as well as objective and professional determinations that they required continued treatment.

And, even if there were differing opinions as to the necessity of treatment, this would not rise to the level of an Eighth Amendment violation anyway. *Wright*, *supra*, at 801. Thus, to the extent that this claim is even directed at Hegira, summary judgement must be granted on their Eighth Amendment claim.

## II. HEGIRA IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNTS II (TITLE II ADA) AND III (SECTION 504 REHABILITATION ACT) BECAUSE NO GENUINE DISPUTE EXISTS THAT HEGIRA DID NOT ENGAGE IN ANY CONDUCT THAT RAN AFOUL OF THE ADA OR REHABILITATION ACT WITH RESPECT TO PLAINTIFF PELICHET OR WASHINGTON

The nature of the two statutes that give rise to these two causes of action are sufficiently intertwined that this Court may consider them together.

The ADA prohibits a program or activity provided by a public entity from discriminating against a qualified individual with a disability "by reason of such disability." 42 U.S.C. § 12132. To establish a prima facie case of intentional discrimination under Title II of the ADA, Plaintiffs Pelichet and Washington  must show that: (1) they have a disability; (2) they are otherwise qualified; and (3)  they

22

were being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Plaintiffs must demonstrate that Hegira "took action because of the [their] disabilit[ies]" or that "animus against the protected group was a significant factor in the position taken" by the decision-makers or those to whom they answer. *Id.*

The Rehabilitation Act similarly prohibits a program which receives federal financial assistance from discriminating against an "otherwise qualified individual with a disability" "solely by reason of her or his disability." 29 U.S.C. § 794(a). To establish a prima facie case for a violation of the Rehabilitation Act, the plaintiffs must show that (1) they are "handicapped persons" under the Act; (2) they are "otherwise qualified"; (3) they are being subjected to discrimination under the program solely because of their handicaps; and (4) that the program or activity receives federal funds. *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*,  91 F.3d 836, 841 (6th Cir. 1996).

Hegira will discuss the issue of discrimination pursuant to the ADA and the Rehabilitation Act in conjunction as they are substantially similar and the main difference is the standard of conduct in that the ADA requires proof of discrimination "because of" disability and the Rehabilitation Act requires proof of discrimination "solely because of" a handicap. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452-53   (6th

23

Cir., 2008). Plaintiffs are unable to prove the requisite standard pursuant to either the ADA or the Rehabilitation Act.

There is absolutely no evidence that Hegira treated Plaintiffs differently from any of its other patients who are not under NGRI status. Hegira does not even make any indication on its patient files regarding whether a patient held NGRI status! See Olexa affidavit, ¶ 8. Each Hegira witness testified that he or she treated patients based on their individual treatment needs. Plaintiffs have provided no evidence that Hegira discriminated against either Plaintiff Pelichet or Washington because they suffer from schizophrenia disorder. Indeed, Hegira's role as a mental health service provider is to <u>treat</u> such individuals and exercise medical judgment because they suffer from that disorder.

Moreover, Plaintiffs' own amended complaint concedes that their re-institutionalization was due to their violation of their ALS contracts. (*see* Doc #44, Amend. Compl. Pg. ID 83, ¶ 287). Additionally, Plaintiffs have not provided any evidence to suggest the existence of an animus against the protected group on the part of Hegira, much less that this animus was a significant factor in the decision to petition for Plaintiffs to continue their treatment under their ALS contracts. *See Anderson*, 798 F.3d at 357. Rather, as discussed above, such decisions were based upon individualized assessments. The basis for these petitions was rooted in Plaintiff Pelichet and Washington's inability to refrain from the use of narcotics during the

course of their treatment, and the potential for relapse and further decompensation. Of course, the ultimate decision about whether Plaintiff Pelichet or Washington would be returned to WPRH rested with the probate court, not Hegira. (Exhibit E – *Deposition of Evette Carroll*, pg. 109). In light of the foregoing, there exists no genuine issue of material fact that Hegira did not discriminate against Plaintiffs in violation of the ADA or the Rehabilitation Act, and summary judgment is required pursuant to Fed. R. Civ. Proc. 56.

## <u>CONCLUSION</u>

WHEREFORE, as set forth above, Defendant Hegira Programs, Inc., respectfully requests this Honorable Court grant its Motion for Summary Judgement, enter an Order in its favor, and award such further relief as may be appropriate.

Respectfully Submitted,

**CARDELLI LANFEAR, P.C.**

By:   */s/ Thomas G. Cardelli*
Thomas G. Cardelli (P31728)
Attorneys for Hegira
322 W. Lincoln Ave.
Royal Oak, MI 48067
(248) 544-1100
tcardelli@cardellilaw.com

Dated: June 16, 2021

25

## __CERTIFICATE OF SERVICE__

I, Katelyn M. Tanner, hereby certify that on the 16th day of June 2021 a copy of this Defendant Hegira's Motion for Summary Judgement Pursuant to FED.R.CIV.PROC.56 was served upon counsel of record via the court's ECF system. I declare under the penalty of perjury that the statement above is true to the best of my information, knowledge, and belief.

_Isl_ Katelyn M.Tanner

Katelyn M. Tanner, Legal Assistant

26