# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DARRYL PELICHET, *et al.* | CASE NO. 2:18-cv-11385 |
| Plaintiffs, | |
| | MAG. ANTHONY P. PATTI |
| v. | |
| ELIZABETH HERTEL, *et al.*, | **PLAINTIFF BICKERSTAFF'S MOTION FOR ATTORNEY FEES UNDER E.D. MICH. LR 54.1.2** |
| Defendants. | |

| | |
|---|---|
| Laurence H. Margolis (P69635) | Thomas G. Cardelli (P31728) |
| Ian T. Cross (P83367) | CARDELLI LANFEAR, P.C. |
| James M. Gallagher (P73038) | Attorneys for Defendant Hegira |
| Attorneys for Plaintiff | 322 W. Lincoln Ave |
| 214 S. Main St., Suite 200 | Royal Oak, MI 48067 |
| Ann Arbor, MI 48104 | (248) 544-1100 |
| (734) 994-9590 | Fax: (248) 544-1191 |
| larry@lawinannarbor.com | tcardelli@cardellilaw.com |
| ian@lawinannarbor.com | |
| jim@lawinannarbor.com | |
| | |
| Katherine J. Bennett (P75913) | Chris E. Davis (P52159) |
| Darrin F. Fowler (P53464) | Simon Zagata (P83162) |
| Ashlee N. Lynn (P78789) | Michigan Protection & Advocacy |
| Assistant Attorneys General | Service, Inc. |
| Michigan Department of Attorney General | Attorneys for Plaintiff MPAS |
| Attorneys for MDHHS Defendants | 4095 Legacy Parkway, Suite 500 |
| P.O. Box 30736 | Lansing, MI 48911 |
| Lansing, MI 48909 | (517) 487-1755 |
| (517) 335-7632 | cdavis@mpas.org |
| bennettk1@michigan.gov | szagata@mpas.org |
| fowlerd1@michigan.gov | |
| LynnA@michigan.gov | |

# PLAINTIFF BICKERSTAFF'S MOTION FOR ATTORNEY FEES UNDER E.D. MICH. LR 54.1.2

Plaintiff Darius Bickerstaff moves for an award of attorney fees pursuant to Fed. R. Civ. P. 54(d)(2) and E.D. Mich. LR 54.1.2. For the reasons more fully set forth in the attached brief, by virtue of a consent decree entered into between the MDHHS Defendants and his co-Plaintiff, Michigan Protection and Advocacy Service, Inc., Plaintiff Bickerstaff is a "prevailing party" for purposes of the three fee-shifting statutes applicable to this case: 42 U.S.C. § 1988, 29 U.S.C. § 794a(b), and 42 U.S.C. § 12205.

Consequently, Plaintiff Bickerstaff requests that this Court 1) grant his motion, 2) enter an award of attorneys fees in the amount of $88,691.10 and costs in the amount of $5,812.91, and 3) grant any other relief that the Court deems appropriate, just and equitable. There was a conference between attorneys in which the movant explained the nature of the motion and its legal basis, and requested but did not receive concurrence in the relief sought.

Dated: August 23, 2021                /s/ Ian T. Cross
                                      Ian T. Cross (P83367)
                                      Attorney for Plaintiff Bickerstaff
                                      214 S. Main St., Suite 200
                                      Ann Arbor, MI 48104
                                      (734) 994-9590

## TABLE OF CONTENTS

| SECTION | PAGE NO. |
|---|---|
| Table of Contents………………..………………….....………… | iii. |
| Index of Exhibits ……………………………..………………… | iv. |
| Statement of Issues Presented……………………………...…………. | v. |
| Controlling or Most Appropriate Authorities…..…………….…………… | vi. |
| I) Facts and Procedural History...……………….…..……………….. | 2 |
| II) Plaintiff Bickerstaff is a "Prevailing Party"….…..……….………. | 4 |
| III) The Partial Attorneys Fees Sought are Reasonable.……………. | 10 |
| IV) Conclusion……………………………………….………….……. | 14 |

# INDEX OF EXHIBITS

| **EXHIBIT** | **PAGE NO** |
|---|---|
| Ex. 1: *Final Settlement Agreement* …………..………....………… | Passim |
| Ex. 2: *Excerpt from Dr. Craig Lemmen Deposition, 9/8/20..…….* | 4 |
| Ex. 3: *2020 State Bar of Michigan Economics of Law Practice Survey……………………………………………………..……* | 12, 13 |
| Ex. 4: *Affidavit of Laurence H. Margolis.……………………….…* | 12 |
| Ex. 5: *Affidavit of James M. Gallagher.………….…...…………..* | 12 |
| Ex. 6: *Affidavit of Ian T. Cross...………….………….……….….…* | 12 |
| Ex. 7: *Billing Detail for Laurence H. Margolis.……….…..........* | 13 |
| Ex. 8: *Billing Detail for James M. Gallagher………..……..........* | 13 |
| Ex. 9: *Billing Detail for Ian T. Cross.………….………….…........* | 13 |
| Ex. 10: *Detail of Costs and Supporting Documentation.………..* | 13 |

## STATEMENT OF ISSUES PRESENTED

1. Is Darius Bickerstaff a 'prevailing party' in his suit against the MDHHS Defendants, where a comprehensive consent decree has been entered in his case, compelling the MDHHS Defendants to modify their behavior in ways that directly benefit Mr. Bickerstaff?

    Plaintiff answers: YES

    Defendants answer: NO


2. Are the partial attorney fees sought in this motion reasonable?

    Plaintiff answers: YES

    Defendants may answer: NO

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1) *Sierra Club v. Hamilton County Bd. of County Comm'rs*, 504 F.3d 634 (6th Cir. 2007)

2) *NICCW v. AgriProcessors, Inc.*, 489 F.Supp. 2d 881 (N.D. Iowa 2007)

3) *Pedreira v. Sunrise Children's Servs.*, 802 F.3d 865 (6th Cir. 2015)

4) *Williams v. Vukovich,* 720 F.2d 909 (6th Cir. 1983)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

DARRYL PELICHET, *et al.*

    Plaintiffs,

v.

ELIZABETH HERTEL, *et al.*,

    Defendants.

CASE NO. 2:18-cv-11385

MAG. ANTHONY P. PATTI

**BRIEF IN SUPPORT OF PLAINTIFF BICKERSTAFF'S MOTION FOR ATTORNEYS FEES**

| | |
|---|---|
| Laurence H. Margolis (P69635)<br>Ian T. Cross (P83367)<br>Attorneys for Plaintiff<br>214 S. Main St., Suite 200<br>Ann Arbor, MI  48104<br>(734) 994-9590<br>larry@lawinannarbor.com<br>ian@lawinannarbor.com | Thomas G. Cardelli (P31728)<br>CARDELLI LANFEAR, P.C.<br>Attorneys for Defendant Hegira<br>322 W. Lincoln Ave<br>Royal Oak, MI 48067<br>(248) 544-1100<br>Fax: (248) 544-1191<br>tcardelli@cardellilaw.com |
| Katherine J. Bennett (P75913)<br>Darrin F. Fowler (P53464)<br>Ashlee N. Lynn (P78789)<br>Assistant Attorneys General<br>Michigan Department of Attorney General<br>Attorneys for MDHHS Defendants<br>P.O. Box 30736<br>Lansing, MI  48909<br>(517) 335-7632<br>bennettk1@michigan.gov<br>fowlerd1@michigan.gov<br>LynnA@michigan.gov | Chris E. Davis (P52159)<br>Simon Zagata (P83162)<br>Michigan Protection & Advocacy Service, Inc.<br>Attorneys for Plaintiff MPAS<br>4095 Legacy Parkway, Suite 500<br>Lansing, MI  48911<br>(517) 487-1755<br>cdavis@mpas.org<br>szagata@mpas.org |

1

# **PLAINTIFF BICKERSTAFF'S BRIEF IN SUPPORT OF HIS MOTION FOR ATTORNEYS FEES UNDER E.D. MICH. LR 54.1.2**

## **I. Facts and Procedural History**

On May 5, 2018, Plaintiffs Darryl Pelichet and Bonn Washington commenced this action for injunctive relief and damages, challenging various aspects of Michigan's comprehensive system for the treatment of individuals adjudicated not guilty by reason of insanity ("NGRI") as violative of their statutory and constitutional rights. (ECF No. 1). Shortly after the Complaint was filed, Michigan Protection and Advocacy Service ("MPAS") contacted Plaintiffs' counsel to express their interest in participating in the litigation. MPAS is a nonprofit organization that receives federal funding under the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI) to "protect and advocate the rights of [individuals with mental illness] through activities to ensure the enforcement of the Constitution and Federal and State statutes[.]" 42 U.S.C. § 10801(b)(2)(A). MPAS sought to join the litigation as a plaintiff in its own right, and requested that Darius Bickerstaff, an MPAS constituent, also be added to the case as a plaintiff.

On July 31st, 2018, attorneys Laurence Margolis and James Gallagher met with Darius Bickerstaff's legal guardian and MPAS attorney Andrea Rizor at the Bickerstaffs' home in Detroit. It was agreed that MPAS' staff attorneys would represent MPAS, Mr. Margolis and Mr. Gallagher would represent Darius Bickerstaff, and that the parties

2

would jointly file an amended complaint adding Mr. Bickerstaff and MPAS as Plaintiffs. Counsel for Bickerstaff and MPAS jointly prepared an Amended Complaint (ECF No. 31-1; ECF No. 44), and filed a joint response to the MDHHS Defendants' motion to dismiss that Amended Complaint (ECF No. 56). In March of 2019, Mr. Gallagher argued this motion for the Plaintiffs. In September of 2019, the MDHHS Defendants' motion to dismiss was granted in part and denied in part. (ECF No. 87). The Court denied the MDHHS Defendants' motion with respect to Counts I-a, I-b, II, and III. (ECF No. 87, PageID.2415).

Over the following year and ten months, the parties engaged in extensive discovery and additional motion practice. Twelve depositions were taken, two noticed by the MDHHS Defendants and ten noticed by the individual Plaintiffs. MPAS attended the depositions and cross-examined the witnesses but did not notice any depositions itself. On July 26, 2021, the Court entered an order incorporating and approving a comprehensive settlement agreement between MPAS and the MDHHS Defendants. (ECF No. 181, PageID.5661). Among other provisions, the agreement (Ex. 1) requires MDHHS to re-train its professional hospital staff, (Ex. 1, pg. 6-7, ¶ 7) eliminates the use of ALS contracts, (Ex. 1, pg. 5, ¶ 4), and requires collection, tracking, and reporting of data concerning treatment recommendations for NGRI patients in an effort to ensure that treatment recommendations are individualized. (Ex. 1, pg. 7, ¶¶ 8-10). The agreement represents a significant step towards eliminating several of the practices at issue in this

3

litigation. It confers important benefits not only on Mr. Bickerstaff but also on the entire NGRI population in Michigan, estimated by Defendant Dr. Lemmen to be over one thousand people. (Ex. 2- Lemmen Dep, 29).

## II. Plaintiff Bickerstaff is a Prevailing Party

The Civil Rights Attorneys Fees Awards Act, 42 U.S.C. § 1988(b), authorizes awards of attorneys fees to prevailing parties in actions brought under various federal statutes, including 42 U.S.C. §1983. A prevailing party is similarly entitled to collect a reasonable attorneys fee for claims brought pursuant to the Americans with Disabilities Act or the Rehabilitation Act of 1973. *See* 42 U.S.C. § 12205; 29 U.S.C. § 794a(b). "'Prevailing party' is a legal term of art." *McQueary v. Conway,* 614 F.3d 591, 597 (6th Cir. 2010) (citing *Buckhannon Board & Care Home v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 603 (2001)). For a plaintiff to 'prevail,' there must be "actual relief on the merits of his claim that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992). "Relief on the merits" includes both "judgment[s] on the merits" and "settlement agreements enforced through a consent decree," *Buckhannon,* 532 U.S. at 603, but does not include "a defendant's voluntary change in conduct," because a voluntary change in conduct "lacks the necessary judicial *imprimatur* on the change." *Id*. at 605.

4

A consent decree is "essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). Whether a settlement agreement is a consent decree or merely a private contract is not controlled by what the parties call their agreement; even a settlement agreement labeled "Not Consent Decree" may, in fact, be a consent decree. *See Pedreira v. Sunrise Childrens Servs.*, 802 F.3d 865, 872 (6th Cir. 2015). Two key features separate consent decrees from private contracts. First, "judicial approval of the settlement agreement puts the power and prestige of the court behind the compromise struck by the parties." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). Second, "when a court enters a consent decree, it retains jurisdiction to enforce the decree." *Pedreira v. Sunrise Childrens Servs.*, 802 F.3d 865, 871 (6th Cir. 2015). This means that a party alleging a breach of the agreement does not need to file a separate breach-of-contract action to enforce its terms. *Id.*

Under *Williams* and *Pedreira,* the final settlement agreement between the MDHHS Defendants and MPAS is a consent decree. Section VIII of the agreement, entitled "Court Approval and Enforcement Powers," provides that "[a]pproval of this Final Agreement by the Court is a condition precedent to the Final Agreement's effectiveness." (Ex. 1, pg. 9, ¶16). The Agreement further declares on page nine: "This Final Agreement is effective when the Court enters an Order approving it." (Ex. 1, pg. 10). The Final Agreement is incorporated by reference and expressly approved in an order of dismissal (ECF No. 181, PageID.5661).

5

The Final Agreement is subject to "continued judicial policing," *Williams*, 720 F.2d at 920, in addition to judicial approval. The Final Agreement provides: "the parties agree that the Court shall retain jurisdiction over this Final Agreement," (Ex. 1, pg. 8, ¶ 15); "dismissal shall be with prejudice subject to the Court's ongoing authority to enforce the terms of this Final Agreement," and "the court will retain jurisdiction over this action for one year and shall have the power to enforce all terms of this Final Agreement." (Ex. 1, pg. 9, ¶ 16). Where a settlement agreement contains both of these key features, involves a governmental party, and provides for ongoing monitoring and prospective injunctive relief, it is a consent decree. *See Pedreira v. Sunrise Children's Servs.*, 802 F.3d at 871 (6th Cir. 2015).

The Final Agreement materially alters the legal relationship between the MDHHS Defendants and Mr. Bickerstaff by requiring the MDHHS Defendants to modify their behavior in myriad ways that directly benefit Mr. Bickerstaff. Perhaps most significantly, MDHHS cannot condition Mr. Bickerstaff's release from a state psychiatric hospital on signing a five-year ALS Contract, and will not petition for a series of successive one-year hospitalization treatment orders ("HTOs") when Mr. Bickerstaff is not physically confined in a state hospital. (Ex. 1, pg. 5, ¶ 4). As a result, the maximum continuous period of time that Mr. Bickerstaff can be subject to an HTO while residing in a community setting has been reduced from five years to less than one

6

year.[1] After the one-year HTO that was in force at the time of placement on leave expires, the MDHHS Defendants must transition Mr. Bickerstaff to an Assisted Outpatient Treatment ("AOT") order if they desire to continue supervising him. (Ex. 1, pg. 36).

The difference between an HTO and an AOT is significant from the patient's perspective because patients on AOT orders have statutory rights that are unavailable to patients on HTOs. For example, if the terms of an AOT order include mandatory drug testing, the patient has a right to judicial review of that requirement every 180 days. MCL 330.1468(d)(ix). If treatment providers seek to hospitalize a patient on an AOT because they believe he is violating the terms of the AOT, they must ask the probate court to modify the order. *See* MCL 330.1475(1); MCL 330.1475(3). If the court elects to modify the order and hospitalize the patient, the maximum period of hospitalization the court can authorize is 90 days. *See* MCL 330.1475(2)(b); MCL 330.1475(4)(c). This is a significant concession: under the ALS Contract system, none of the individual plaintiffs were ever returned to a community setting within 90 days after their ALS Contract was revoked. Mr. Bickerstaff's first stint in WPRPH following ALS revocation lasted 578 days, (ECF No. 182-15, PageID.5771), and his current hospitalization has been ongoing for more than a year.

---

[1] MCL 330.1472a(4) limits the duration of an HTO to one year. Any placement on leave per MCL 330.1479 will occur during the term of a one-year HTO.

7

The Settlement Agreement even benefits Mr. Bickerstaff while he remains hospitalized. He no longer needs NGRI Committee approval to obtain a "grounds card," (Ex. 1, pg. 90) which allows him to spend 30 minutes at a time in a fenced outdoor yard experiencing fresh air and sunlight. If the NGRI Committee denies one of Mr. Bickerstaff's requests for a leave-of-absence or discharge planning, it must now proffer a written explanation for the denial, and its decisions are subject to an administrative review procedure. (Ex. 1, pg. 24). The MDHHS Defendants will re-train their entire professional hospital staff (Ex. 1, pg. 6-7, ¶ 7 A-C) in an effort to eliminate some of the practices at issue in this case. Staff will be taught that they must actually examine the patient face-to-face when completing a clinical certificate, (Ex. 1, pg. 78), that patients have a right to be treated in the least restrictive setting appropriate, (Ex. 1, pg. 54), and that "[**r**]**ecommendations for hospitalization orders cannot be based solely on maintaining NGRI status.**" (Ex. 1, pg. 77) (emphasis in original).

The fact the Mr. Bickerstaff is not a party to the consent decree does not mean that he is not a prevailing party. When separately-represented co-plaintiffs seek the same injunctive relief in the same lawsuit, *Buckhannon* does not permit the defendant and one of the plaintiffs to "use the [other] plaintiffs' time, effort and expense as a bargaining chip to settle the case without paying the [other] plaintiffs' litigation costs."[2] *NICCW v. AgriProcessors, Inc.*, 489 F.Supp. 2d 881, 894 (N.D. Iowa 2007). This tactic was

---

2 The Final Settlement Agreement also provides for the payment of $30,000.00 to MPAS. (Ex. 1, pg. 8, ¶ 12).

addressed by the Sixth Circuit in *Sierra Club v. Hamilton County Bd. of County Comm'rs*, 504 F.3d 634 (6th Cir. 2007). The defendant in *Sierra Club* argued that under *Buckhannon*, organizational-plaintiff Sierra Club and individual plaintiff Marilyn Wall were not prevailing parties by virtue of a consent decree compelling the municipal defendant to spend over a billion dollars upgrading its wastewater treatment system, because they were not parties to that decree. *Sierra Club*, 504 F.3d at 640, 643. The Sixth Circuit "conclude[d] that this argument borders on the absurd." *Id.* at 643. The panel held that Sierra Club and Ms. Wall were collectively entitled to over one million dollars in fees on the basis of the consent decree, despite the fact that they "did not obtain any judicially-enforceable relief or rights as a result of that decree," and all of the objections they lodged to the decree were "specifically den[ied]." *Sierra Club*, 504 F.3d at 652 (dissenting opp.).

In this case, a comprehensive consent decree has been entered *in the lawsuit that Mr. Bickerstaff brought against the MDHHS Defendants*, compelling the MDHHS Defendants to modify their behavior in ways that directly benefit Mr. Bickerstaff. Thus, Mr. Bickerstaff prevailed. For purposes of establishing prevailing-party status, it does not matter that the consent decree did not provide Mr. Bickerstaff with all of the relief that he wanted. "The threshold [to prevailing-party status] is crossed when the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit

9

the parties sought in bringing suit." *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006).

### III. The Partial Attorneys Fees Sought are Reasonable

In the present Motion, Plaintiff Bickerstaff only seeks attorneys fees attributable to his litigation against the MDHHS Defendants up until the date of entry of the consent decree. Fees are not being requested at this time for hours expended opposing the NGRI Committee Defendants' Motion for Summary Judgment, (ECF No. 177), for work researching and drafting the initial Complaint, as Mr. Bickerstaff was not a party at that time, or for work performed litigating against parties other than the MDHHS Defendants, such as Dr. Charles Stern, Dr. Lisa Medoff, or Hegira Programs, Inc.[3] Additionally, Plaintiff is not seeking fees for work performed preparing this fee petition.

All three fee-shifting statutes underlying this motion require the fee award to be "reasonable." 42 U.S.C. § 1988; 42 U.S.C. § 12205; 29 U.S.C. § 794a(b). A "reasonable fee" is one that is "adequate to attract competent counsel" but does not "produce windfalls for attorneys." *Blum v. Stenson*, 465 U.S. 886, 893-94 (1984). "The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007). There is "[a] strong presumption that the lodestar figure . . .

---

3  Plaintiff Bickerstaff is not waiving his rights to recover fees for this work should he later prevail on any of the associated claims, either at trial or on appeal.

10

represents a 'reasonable' fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  Time spent litigating unsuccessful claims is included in the lodestar calculation, so long as the unmeritorious and the successful claims "arise out of a common core of facts, and involve related legal theories." *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 697 (6th Cir. 2015); *See also Jordan v. City of Cleveland*, 464 F.3d 584, 604 (6th Cir. 2006); *Mich. Immigrant Rights Ctr. v. Dep't of Homeland Sec.*, 2021 U.S. Dist. LEXIS at *33-*34 (E.D. Mich. 2021).

A reasonable hourly rate is "a rate that is sufficient to encourage competent attorneys in the relevant community to undertake representation of similarly-situated plaintiffs." *Potter v. Blue Cross Blue Shield of Mich.*, 10 F.Supp. 3d 737, 761 (E.D. Mich.  2014); *See also Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016).  The State Bar of Michigan's Economics of Law Practice Survey (Ex. 3) is an acceptable source for the determination of the market rate for practitioners in Michigan. *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 222-23 (W.D. Mich. 2018).  Because "compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as services are performed," fee awards should be adjusted for the delay in payment. *See Missouri v. Jenkins*, 491 U.S. 274, 283 n.6 (1989). "District courts can use either current market rates or past rates

11

with interest" to account for this adjustment. *Bank One, N.A. v. Echo Acceptance Corp.*, 595 F.Supp. 2d 798, 802 (S.D. Ohio 2009).

Three lawyers represented Mr. Bickerstaff in this matter: Laurence H. Margolis, who has been practicing law for twenty-six years, James M. Gallagher, who has been practicing for eleven years, and Ian T. Cross, who became an attorney in May of 2019, during the pendency of this action. Per the 2020 State Bar Survey, the mean hourly billing rates for attorneys in Michigan with twenty-six, eleven, and one-to-two years of experience are $337/hour, $297/hour, and $233/hour, respectively. (Ex. 3, pg. 4). Plaintiff contends that these figures represent reasonable hourly rates,[4] particularly in light of "the novelty and difficulty of the questions presented," *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 222 (W.D. Mich. 2018), and "the 'undesirability' of the case," given the unique difficulties associated with representing clients that are seriously mentally ill. *Id*. For hours worked by Ian T. Cross before he became an attorney, Plaintiff contends that $80/hour is a reasonable hourly rate. *See Murray v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 90641 at *1 (E.D. Mich. 2018) (awarding $80/hour for paralegal work performed in metro Detroit); *Gross v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 41709 (E.D. Mich. 2018) (same).

In determining whether the hours expended were reasonable,

---

4 These rates are lower than the rates Plaintiff's attorneys customarily charge: $450, $300, and $250 per hour, respectively. (Ex. 4, Ex. 5, Ex. 6). They are also lower than the mean billing rate for attorneys in downtown Detroit ($343), where this action is being litigated, and in Ann Arbor ($362), where Plaintiff's attorneys' office is located. (Ex. 3, pg. 5).

12

> "[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed."

*Bank One, N.A. v. Echo Acceptance Corp.*, 595 F.Supp. 2d 798, 801 (S.D. Ohio 2009) (quoting *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1173 (6th Cir. 1990)). The attorneys fees and costs sought in this motion are enumerated in the attached billing details. (Ex. 7, Ex. 8, Ex. 9, Ex. 10). Plaintiff requests fees for 69.3 hours of work performed by Mr. Margolis, 36.3 hours worked by Mr. Gallagher, and 313.4 hours worked by Mr. Cross, with 121.1 of those hours billed at a paralegal rate. Plaintiff is also requesting $5,812.91 in costs (Ex. 10), for expenses reasonably incurred in the prosecution of this action. The hours expended were reasonable given the length and complexity of this litigation, and they are in line with expenditures of attorney time previously found to be reasonable in this District. For example, Plaintiff's counsel billed a total of 27.9 hours briefing his response to the MDHHS Defendants' motion for partial summary judgment. In *Mich. Immigrant Rights Ctr. v. Dep't of Homeland Sec.*, 2021 U.S. Dist. LEXIS at *38-*39 (E.D. Mich. 2021), a FOIA case, plaintiff's counsel billed 132.1 hours for preparing a 25-page motion for summary judgment and 65.5 hours for writing a 15-page reply brief. These specific time entries were found to be reasonable. *Id*. In *Hardrick v. City of Detroit*, 2017 U.S. Dist. LEXIS 136928 at *13-*14, *22 (E.D. Mich. 2017), this Court found that $95,367.50 in fees for approximately 280 hours of

13

attorney time, expended by two attorneys across sixteen months of civil rights litigation, to be reasonable. The present litigation has been ongoing for more than twice as long as the period billed for in *Hardrick*.

## IV. Conclusion

Plaintiff Bickerstaff is a prevailing party by virtue of a consent decree entered in this action. Under *Pedreira v. Sunrise Childrens Servs.*, 802 F.3d 865 (6th Cir. 2015), the Final Settlement Agreement between MPAS and the MDHHS Defendants is a consent decree. Per *Sierra Club v. Hamilton County Bd. of County Comm'rs*, 504 F.3d 634 (6th Cir. 2007), a Plaintiff 'prevails' when a consent decree is entered between the defendant and a co-plaintiff in his case, even when he is not a party to that consent decree. As a prevailing party, Plaintiff Bickerstaff is entitled to an award of attorneys fees under 42 U.S.C. § 1988(b) and the amount of fees sought in this motion is reasonable. Consequently, Plaintiff requests that this Court: (1) grant this motion; (2) enter an award of attorney fees in the amount of $88,629.10 and an award of costs in the amount of $5,812.91, consistent with Fed. R. Civ. P. 54(d)(2) and E.D. Mich. LR 52.1.2; and (3) grant any other relief that this Court deems appropriate, just and equitable.

Dated: August 23, 2021
/s/ *Ian T. Cross*
Ian T. Cross (P83367)
Attorney for Plaintiff Bickerstaff
214 S. Main St., Suite 200
Ann Arbor, MI 48104
(734) 994-9590

14