UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DARRYL PELICHET, *et al.*

    Plaintiffs,

                          No. 2:18-cv-11385

v

                          HON. ANTHONY P. PATTI

ELIZABETH HERTEL, *et al*.,

    Defendants.

_____/

| | |
|---|---|
| Laurence H. Margolis (P69635) | Chris E. Davis (P52159) |
| James M. Gallagher (P73038) | Simon Zagata (P83162) |
| Ian T. Cross (P83367) | Michigan Protection & Advocacy |
| Margolis, Gallagher & Cross | Service, Inc. |
| Attorneys for Plaintiffs | Attorneys for Plaintiff MPAS |
| 214 S. Main St., Suite 202 | 4095 Legacy Parkway, Suite 500 |
| Ann Arbor, MI 48104 | Lansing, MI 48911 |
| (734) 994-9590 | (517) 487-1755 |
| larry@lawinannarbor.com | cdavis@mpas.org |
| jim@lawinannarbor.com | szagata@mpas.org |
| ian@lawinannarbor.com | |

| | |
|---|---|
| Katherine J. Bennett (P75913) | Thomas G. Cardelli (P31728) |
| Darrin F. Fowler (P53464) | Cardelli Lanfear, P.C. |
| Ashlee N. Lynn (P78789) | Attorney for Defendant Hegira |
| Assistant Attorneys General | 322 W. Lincoln Ave |
| Michigan Department of Attorney General | Royal Oak, MI 48067 |
| Attorneys for MDHHS Defendants | (248) 544-1100 |
| P.O. Box 30736 | (248) 544-1191 Fax |
| Lansing, MI 48909 | tcardelli@cardellilaw.com |
| (517) 335-7632 | |
| bennettk1@michigan.gov | |
| fowlerd1@michigan.gov | |
| LynnA@michigan.gov | |

Exhibit 1 1 Final Settlement Agreement 000001

# TABLE OF CONTENTS

I.      INTRODUCTION AND RECITATIONS ...................................................... 2

II.     PATIENT RIGHTS INFORMATION ............................................................. 3

III.    THE DEPARTMENT'S POLICIES, PROCEDURES, AND
        CONTRACT LANGUAGE ............................................................................. 4

IV.     EDUCATION AND TRAINING ...................................................................... 5

V.      DATA COLLECTION AND MONITORING ................................................. 6

VI.     ATTORNEYS FEES, COSTS, AND EXPENSES ......................................... 7

VII.    RELEASE AND SETTLEMENT OF CLAIMS ............................................ 7

VIII.   COURT APPROVAL AND ENFORCEMENT POWERS ........................... 7

IX.     MISCELLANEOUS PROVISIONS................................................................. 8

1

Exhibit 1 1 Final Settlement Agreement 000002

## FINAL SETTLEMENT AGREEMENT

### I. INTRODUCTION AND RECITATIONS

Plaintiff, Michigan Protection and Advocacy Service, Inc. (MPAS)[1] and the Michigan Department of Health and Human Services (Department) enter into this Final Settlement Agreement (Final Agreement) to settle the litigation captioned above.

The Parties to this Final Agreement (the Parties) consist of MPAS and the Department. The Parties agree to comply with the following terms. This Final Agreement is enforceable in federal court.

The Parties hereby stipulate and agree as follows:

WHEREAS Plaintiffs have filed a lawsuit against the Department and others in the United States District Court for the Eastern District of Michigan, styled *Pelichet et al. v. MDHHS et al.,* Case No. 2:18-cv-11385;

WHEREAS Plaintiff MPAS claimed violations of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and the U.S. Constitution, based upon Defendants' alleged failure to provide appropriate mental health services in the least restrictive setting and failure to provide proper due process to individuals deemed Not Guilty by Reason of Insanity (NGRI);

WHEREAS on September 20, 2019, the Court issued its Opinion and Order Denying in part a motion to dismiss filed by the Department, Robert Gordon, Sharon Dodd-Kimmey, Craig Lemmen, Kimberly Kulp-Osterland, Lisa Marquis, Martha Smith, Dave Barry, Kelli Schaefer, Joseph Corso, and Diane Heisel (the MDHHS Defendants);

WHEREAS the MDHHS Defendants have denied and continue to deny such violations;

WHEREAS on November 6, 2020, the Court entered a Stipulated Order Approving Interim Settlement Agreement Between MPAS and MDHHS and Dismissing

---

[1] MPAS changed its name under which it conducts business to Disability Rights Michigan (DRM). This name change became effective June 30, 2020.

2

Exhibit 1 1 Final Settlement Agreement 000003

MPAS' Claims Against the NGRI Committee Defendants, which dismissed with prejudice MPAS' claims against Defendants Dodd-Kimmey, Lemmen, Kulp-Osterland, Marquis, Smith, Barry, Schaefer, Corso, and Heisel;

WHEREAS through the Interim Settlement Agreement (Interim Agreement), the parties agreed to collaborate on a series of objectives and to enter into the Final Agreement once those objectives were met;

WHEREAS the Parties' respective obligations under the Interim Agreement have been completely fulfilled;

WHEREAS the Parties desire, through this Final Agreement, to resolve and settle the litigation without the costs and burdens associated with further litigation with respect to any remaining or potential claims raised by MPAS and defenses raised by the MDHHS Defendants in response to MPAS' claims;[2]

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and which consideration includes, but is not limited to, the mutual promises and covenants contained herein, the Parties hereby agree to be bound as follows:

## II.   PATIENT RIGHTS INFORMATION

1. The Parties collaborated to develop a handbook detailing the rights of individuals deemed NGRI. Within 30 days of this Final Agreement, the Department will provide or make available a copy of the NGRI patient handbook ("the Handbook") attached as Exhibit A to every NGRI individual currently receiving inpatient or outpatient treatment in the State of Michigan.

2. Within 180 days of this Final Agreement, the Department will ensure all future NGRI patients and their guardians receive the Handbook upon the patient's admission. The Department will publicize the existence of the Handbook within any state-operated hospital in which an NGRI patient is treated. The Department will provide the Handbook to anyone else upon request and may provide it in electronic format.

---

[2] This Final Agreement does not waive or resolve the MDHHS Defendants' defenses in response to the individual Plaintiffs' claims.

3

Exhibit 1 1 Final Settlement Agreement 000004

3. The Department will provide MPAS documentation demonstrating that current NGRI patients received the handbook and that the Department has a procedure by which future NGRI patients will also receive the handbook.

## III. THE DEPARTMENT'S POLICIES, PROCEDURES, AND CONTRACT LANGUAGE

4. The Parties collaborated to revise and update the Department's NGRI policies and procedures, hospital policies and procedures, and Community Mental Health Service Provider (CMHSP)/Prepaid Inpatient Health Plan (PIHP) contract language in accordance with the guidelines set forth in the Interim Agreement. These documents, as amended, are attached as Exhibits B-F. However, instead of revising Authorized Leave Status (ALS) contract language as contemplated in the Interim Agreement, the Parties have agreed to the elimination of ALS contracts. The contents of these agreed-to documents can be summarized as follows.

   A. Any NGRI patient placed on an assisted outpatient treatment (AOT) order will receive an AOT Individual Plan of Service (IPOS) with risk mitigation strategies overseen by the NGRI Committee, in accordance with Exhibit B. These risk mitigation strategies must be tied to the person's behavioral health treatment needs.

   B. Any NGRI patient with an AOT IPOS will receive notification of the NGRI Committee's oversight via the language in Exhibit C, attached to their IPOS.

   C. Per Exhibit B, NGRI Committee oversight of NGRI patients will end when the risk mitigation goals in a patient's AOT IPOS are met or when the patient ceases to meet the definition of a person requiring treatment in Mich. Comp. Laws § 330.1401. NGRI committee oversight will not exceed five (5) continuous years during which the person is on an AOT order.

   D. The Parties have agreed to guidelines for completing clinical certificates, attached as Exhibits D and E.

4

Exhibit 1 1 Final Settlement Agreement 000005

E.   The Parties have agreed on new contract language between the Department and the CMHSPs/PIHPs, attached as Exhibit F.

F.   All NGRI patients (and their guardians) will receive proper due process when rehospitalization is recommended following authorized leave in excess of ten days, as described in Mich. Comp. Laws § 330.1408.

G.   For implementation purposes, the Parties agree that any NGRI patient currently subject to an ALS contract will have their contract terminated at the time their current hospitalization order expires or upon individual request, whichever occurs first. At that time, the new policies and procedures described herein will be applied to such patients.

## IV.   EDUCATION AND TRAINING

5.   The Department will provide educational written materials, to professional state hospital staff, independent contractors that provide services to NGRI patients under contracts with the Department, and CMHSP providers serving NGRI patients regarding the revisions and changes made as a result of this litigation. The Department and MPAS have agreed upon the language of those materials, attached as Exhibit G.  Distribution will occur no more than 30 days from the date the Final Agreement is approved by the Court.

6.   Upon request, the Department will also make these written educational materials available to disability advocacy organizations, probate court judges, appointed defense counsel, and the general public.

7.   No less than 180 days after this Final Agreement is approved by the Court, the Department will train all professional hospital staff on the new policies and procedures, announced in advance, and open with invitations to the groups named in paragraphs 5 and 6 above, as well as NGRI patients, their families, and guardians.  This training will be recorded and made publicly available on the Department's website.

A.   The Parties have agreed on the training topics and content to be delivered, outlined in Exhibit G.

5

Exhibit 1 1 Final Settlement Agreement 000006

B.    The Department will invite MPAS to attend all trainings and provide the option for MPAS to present at these trainings.

C.    The Department will further provide additional appropriate education to hospital staff involved in treatment decisions and rights protections for NGRI patients (not excluding social workers and recipient rights staff) to ensure awareness of the new policies and procedures that are set forth for them to follow. This targeted hospital staff training will be held biannually for a two-year period. Thereafter, the training will be held at all new employee orientations.

## V.    DATA COLLECTION AND MONITORING

8.    The Department will collect data to ensure the policies and procedures and contracts are being implemented effectively. It will collect this data every 180 days for a two-year period after the policies are made effective.

9.    The Parties have agreed to the data to be collected as laid out in Exhibit H.

10.    The Department will collect and track data in an easy-to-use format and will react to the data (including but not limited to evaluations of NGRI patients performed by medical professionals, number of petitions filed by each medical professional, etc.) and take steps necessary to ensure proper compliance with its revised policies and procedures. Further, the Department will ensure individuals are receiving proper treatment in the least restrictive setting pursuant to the revisions made as a result of this litigation. The Department will make this data available to MPAS within seven business days of a MPAS request. The Department will also provide MPAS with redacted copies of all documents, records, or data it requests (for example individualized treatment records, court orders, certifications, treatment recommendations, due process documents, AOT orders, and the like) so that MPAS can monitor compliance with this agreement. Upon request, the Department will provide MPAS evidence that the Department has taken steps necessary to respond to data collected to ensure compliance with its revised policies, procedures, and contracts. The Department and MPAS have agreed to the escalation and

6

Exhibit 1 1 Final Settlement Agreement 000007

resolution process outlined in Exhibit I, should any concerns arise from MPAS' review of the data.

11. The Parties agree that MPAS' monitoring role may continue for two calendar years following the date the Court approves this Final Agreement. Further, the Parties agree the Department will utilize Exhibits A-G for this same two-year period, unless circumstances require changes to be made, such as an amendment to governing laws. The Department may also revise Exhibit G over time to reflect evidence-based practices. The Parties agree to collaborate in good faith in the event changes to these materials becomes necessary, as described in Paragraph 20 below.

## VI. ATTORNEYS FEES, COSTS, AND EXPENSES

12. In settlement of all of MPAS' claims, the Parties agree that within 30 days of the date this Final Agreement is approved by the Court, the Department shall pay $30,000.00 to MPAS

## VII. RELEASE AND SETTLEMENT OF CLAIMS

13. Plaintiff MPAS hereby releases and discharges all individuals named as MDHHS Defendants, including their successors and assigns, of and from any and all claims or causes of action arising out of the matter described in the Plaintiff's Complaint filed with the U.S. District Court for the Eastern District of Michigan in Case No. 2:18-cv-11385. This includes claims in any official or individual capacity.

14. Plaintiff MPAS agrees to dismiss with prejudice all claims against the Department and its Director in Case No. 2:18-cv 11385 upon the Court's approval of this Final Agreement, subject to the continued enforcement powers of the Court.

15. The Parties agree that the Court shall retain jurisdiction over this Final Agreement.

## VIII. COURT APPROVAL AND ENFORCEMENT POWERS

16. Upon execution of this Final Agreement, the Parties shall jointly move the Court for approval of this Final Agreement and dismissal of MPAS'

7

Exhibit 1 1 Final Settlement Agreement 000008

claims against the Department and its Director. This dismissal shall be with prejudice subject to the Court's ongoing authority to enforce the terms of this Final Agreement. The Court will retain jurisdiction over this action for one year and shall have the power to enforce all terms of this Final Agreement. Approval of this Final Agreement by the Court is a condition precedent to the Final Agreement's effectiveness.

## IX.    MISCELLANEOUS PROVISIONS

17.    This Final Agreement constitutes the entire Agreement between the Parties. There were no inducements or representations leading to the execution of this document, except as stated within the document itself.

18.    This Final Agreement is final and binding on the Parties and their successors in interest. Each Party has a duty to so inform any such successor in interest.

19.    Failure by MPAS to seek enforcement of this Final Agreement pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances and/or provisions.

20.    In the event that a court determines that any provision of this Final Agreement is unenforceable, such provision will be severed from this Agreement and all other provisions will remain valid and enforceable, provided however that if the severance of any such provision materially alters the rights and obligations of the Parties hereunder, the Parties will attempt, through reasonable, good faith negotiations, to agree upon such other amendments to this Final Agreement as may be necessary to restore the Parties as closely as possible to the relative rights and obligations initially intended by them hereunder.

21.    The MDHHS Defendants deny any liability in this litigation, and this Final Agreement should not be construed as an admission of liability. Further, nothing in this Final Agreement may be used against the MDHHS Defendants in the continuing litigation with the individual Plaintiffs.

8

Exhibit 1 1 Final Settlement Agreement 000009

This Final Agreement is effective when the Court enters an Order approving it.

For Plaintiff MPAS:

Dated: 7/20/21

For the Department:

George E. Mellos, MD

Dated: 7-20-21

9

Exhibit 1 1 Final Settlement Agreement 000010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DARRYL PELICHET, *et al*.

     Plaintiffs,

v.

ELIZABETH HERTEL, *et al*.,

     Defendants.

CASE NO. 2:18-cv-11385

HON. JUDGE ANTHONY P. PATTI

**INDEX OF EXHIBITS**

---

Laurence H. Margolis (P69635)
James M. Gallagher (P73038)
Ian T. Cross (P83367)
Margolis, Gallagher & Cross
Attorney for Plaintiffs
214 S. Main St., Suite 202
Ann Arbor, MI  48104
(734) 994-9590
larry@lawinannarbor.com
jim@lawinannarbor.com
ian@lawinannarbor.com

Chris E. Davis (P52159)
Simon Zagata (P83162)
Michigan Protection & Advocacy
Service, Inc.
Attorneys for Plaintiff MPAS
4095 Legacy Parkway, Suite 500
Lansing, MI  48911
(517) 487-1755
cdavis@mpas.org
szagata@mpas.org

Katherine J. Bennett (P75913)
Darrin F. Fowler (P53464)
Ashlee N. Lynn (P78789)
Assistant Attorneys General
Michigan Dep't of Attorney General
Attorneys for MDHHS Defendants
P.O. Box 30736
Lansing, MI  48909
(517) 335-7632
bennettk1@michigan.gov
fowlerd1@michigan.gov
LynnA@michigan.gov

Thomas G. Cardelli (P31728)
Cardelli Lanfear, P.C.
Attorney for Defendant Hegira
322 W. Lincoln Ave
Royal Oak, MI 48067
(248) 544-1100
tcarfelli@cardellilaw.com

1

Exhibit 1 1 Final Settlement Agreement 000011

## INDEX OF EXHIBITS

Exhibit A          NGRI Handbook

Exhibit B          APF 106

Exhibit C          AOT IPOS Notification Language

Exhibit D          Clinical Certificate Guidance for Clinicians

Exhibit E          Completing a Clinical Certificate

Exhibit F          1st NGRI Contract

Exhibit G          Training Materials

Exhibit H          Clarified NGRI data collection

Exhibit I          DRM Proposed Resolution Process

2

Exhibit 1 1 Final Settlement Agreement 000012

*Darryl Pelichet v Elizabeth Hertel*
**USDC-ED of Mich. No. 2:18-cv-11385; Hon. Judge Anthony P. Patti**

# EXHIBIT A

Exhibit 1 1 Final Settlement Agreement 000013

# NGRI Handbook

℘

## Michigan Department of Health and Human Services

Exhibit 1 1 Final Settlement Agreement 000014

Not Guilty by Reason of Insanity

NGRI

What You Need to Know

## WHAT DOES NGRI MEAN?

- ▪ Not Guilty by Reason of Insanity (NGRI) is often referred to as an insanity plea. It is a plea deal entered for you during your court hearing about your legal charge. It means that you admit to doing the act, but that you were not in your usual state of mind. NGRI makes sure you get mental health treatment instead of prison/jail time.

## HOW DID I GET TO THIS POINT?

- Prior to entering a plea for NGRI, you participated in an examination called a criminal responsibility evaluation to find out if you were legally insane at that time.
- If the court decided that you should be NGRI, Michigan law says that you must be sent to the Center for Forensic Psychiatry to be observed in a hospital for up to 60 days (Diagnostic Order).
- During this diagnostic period, it will be determined if you have a mental condition that needs treatment. You may be given treatment voluntarily.
- You will be interviewed by two psychiatrists to see if you need continued treatment.
- Reports will be shared with the court.

## WHAT SHOULD I EXPECT IN THE HOSPITAL?

- You may be recommended to participate in treatment.
- You will have a team of people who will help in your treatment in a hospital or outpatient setting. The entire treatment team will review your progress at least every 90 days and help to make plans so that you will succeed in the hospital and the community.
- The team will create and explain a plan for your treatment based on your personal needs. Your goals and plan for treatment are called an Individualized Plan of Services or IPOS. You may also hear it called your treatment plan.
- You are also part of your treatment team.
- You will have meetings with your team. The team will review your progress, discuss discharge planning, and answer any questions you may have about your treatment.
- You will be interviewed by psychiatrists for court.
- You will have court hearings about your need for treatment.

Exhibit 1 Final Settlement Agreement 000015

**TRANSFERS/DISCHARGES/LEAVES OF ABSENCE**

- The State Hospital Administration (SHA) works with the probate court to provide appropriate care for all persons found *Not Guilty by Reason of Insanity* (NRGI) in the least restrictive setting.

- Once your team feels that you are ready for a discharge/transfer/leave of absence, they will make a request to the NGRI Committee. The request will include information about your history, present mental status, progress in treatment, as well as a detailed description of future treatment.

- If your request is denied, you may request to petition for discharge from treatment from the probate court or a review of the decision by the State Hospital Administration Senior Deputy Director.

**NGRI COMMITTEE**

- The NGRI Committee is made up of specially trained forensic staff (psychiatrists, psychologists and social workers) who are appointed by the hospital director at the Center for Forensic Psychiatry.

- The NGRI Committee may work with your treatment team for support to help you remain stable, address safety risks, and to help you successfully meet your goals.

- The NGRI Committee will work with your treatment team to include risk mitigation strategies in your IPOS. These risk mitigation strategies must be tied to your mental health treatment needs.

**COURT PROCESS**

- Your treatment team will monitor your progress and make recommendations to the court about whether you need to continue in treatment.
- Before your hearing, a doctor will interview you and review your medical records.
- You will get a copy of the court paperwork. These court reports are called petitions and clinical certificates.
- A lawyer will come to see you and discuss possible legal options.
- You can choose whether you go to court for a hearing or agree to treatment as recommended in the report.
- A mental health professional may testify at your hearing about whether you need to remain in treatment.
- The judge will make the final decision about your case. There may be a few options:

  1. Hospitalization Orders: The court will hear your case to determine if you need treatment. The judge may order you for treatment in a hospital setting. The

Exhibit 1 1 Final Settlement Agreement 000016

court may order up to 60 days, 90 days or one year of treatment within a hospital.

- Even if you are on a hospitalization order, your treatment team will be working with you to prepare for your discharge. You may be discharged to the community at any point during the hospitalization.
- A person on a One-year Continuing Treatment Order has the opportunity to go to probate court as follows:

    1. Your treatment team will submit a six-month Review Report to the court. If you disagree with your need to stay in a hospital, you will have a chance to file a Petition for Discharge. Once the court receives this form, they will set a hearing date.
    2. Prior to the end of your one-year treatment order, your treatment team may file a petition to continue your treatment. If you disagree with the petition, a court hearing will be set.
    3. If a request by your team for discharge or leave of absence is denied by the NGRI committee, you may file a Petition for Discharge.  Once the court receives this petition, they will set a hearing date.

2. <u>Combined Hospital and Community Treatment:</u> The judge may order Assisted Outpatient[DS(1] Treatment (AOT) for combined hospital and outpatient treatment. This order allows, but does not require, treatment in a hospital for up to 90 days. Otherwise, treatment is in an outpatient setting.

3. <u>Community Treatment:</u> The judge may order AOT for outpatient treatment only.

4. <u>Discharge with no court-ordered treatment:</u> The judge may decide that you do not have a mental illness and/or do not need court ordered treatment.


**<u>Appeals and Right to Object</u>**

1. If it is recommended that you be transferred to another hospital, you, your patient advocate, your guardian or your nearest relative will be notified and may object to the transfer. You, your patient advocate, your guardian or your nearest relative will also be provided an opportunity to appeal the transfer.  A *Notice of Transfer and Right to Appeal* form will be presented to you at the time of admission and discharge. If you complete this form, a hearing will be scheduled. (MMHC sec. 407)

Exhibit 1 1 Final Settlement Agreement 000017

2. If you have been on an authorized leave for more than 10 days and you are returned to the hospital, you may object to going back to the hospital and have an opportunity to appeal. Hospital staff will provide you a *Notice of Right to Appeal Return to Hospital from Authorized Leave.* Once completed and turned in to hospital staff, the court will set a hearing. (MMHC sec. 408)

3. If you are on an order for assisted outpatient treatment or combined hospitalization and assisted outpatient treatment and your treatment team determines that you are not complying with the court order or that the assisted outpatient treatment is not sufficient to prevent harm to you or others, the court will be notified. If you believe that the assisted outpatient treatment program is not appropriate, you may notify the court of that fact. If you are hospitalized without a hearing after placement in an assisted outpatient treatment program, you have the right to object to the hospitalization. The hospital must notify you of your right to object. Upon receipt of an objection to a hospitalization the court shall schedule a hearing to determine if you require hospitalization. (MMHC sec. 475 and 475a)

4. **If the NGRI Committee denies a request for leave or discharge that your treatment team recommends, they must, in writing, tell you or your guardian of the reason for the denial and give treatment recommendations that will lead towards approval of the leave or discharge request. They must also notify you or your guardian of the ability to file a petition for discharge under §484 of the MMHC.**

5. Current ALS contracts will be converted to "risk mitigation strategies" in your IPOS tied to your mental health treatment needs when your current hospitalization order expires, and a new Assisted Outpatient Treatment (AOT) order is issued. You may request this change prior to expiration of your hospitalization order by informing your treatment team of your wishes.

Exhibit 1 1 Final Settlement Agreement 000018

*Darryl Pelichet v Elizabeth Hertel*
**USDC-ED of Mich. No. 2:18-cv-11385; Hon. Judge Anthony
P. Patti**

# EXHIBIT B

Exhibit 1 1 Final Settlement Agreement 000019

| | | | APB 2021-wrk004 |
|---|---|---|---|
| **APF 106** | 1 of 7 | **NOT GUILTY BY REASON OF INSANITY COMMITTEE & PROCESSES** | 3-1-2021 |

## PURPOSE

To ensure all discharges and leaves of absence for persons adjudicated not guilty by reason of insanity (NGRI) are reviewed and approved by the NGRI committee in accordance with applicable law rules and policy. Treatment recommendations are based on actual individualized needs, including risk mitigation strategies, and are provided in the least restrictive setting that is appropriate and available.

## DEFINITIONS

### Assisted Outpatient Treatment (AOT) Order

A directive issued by a probate court requiring a person to undergo AOT consistent with §468(2)(c) and (d) of the Michigan Mental Health Code (MMHC). Assisted outpatient treatment can be an order to adhere to outpatient services or it may incorporate both outpatient and admission to a hospital.

### Assisted Outpatient Treatment (AOT)

Services ordered by a probate court under §468 or 469a of the MMHC. AOT may include a case management plan and case management services to provide care coordination under the supervision of a psychiatrist and developed in accordance with person-centered planning under §712 of the MMHC. This definition also may include one or more of the following:

- Medication.

- Periodic blood tests or urinalysis to determine compliance with prescribed medications.

- Individual or group therapy.

- Day or partial day programming activities.

- Vocational, educational, or self-help training or activities.

- Assertive community treatment team services.

- Alcohol or substance use disorder treatment and counseling and periodic tests for the presence of alcohol or illegal drugs for an individual with a history of alcohol abuse or substance use disorder.

---

**ADMINISTRATIVE POLICY FACILITIES/HOSPITAL**　　　　　　　　**STATE OF MICHIGAN**

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Exhibit 1 1 Final Settlement Agreement 000020

- Supervision of living arrangements, and

- Any other services within a local or unified services plan developed under the MMHC that are prescribed to treat the individual's mental illness and to assist the individual in living and functioning in the community or to attempt to prevent a relapse or deterioration that may reasonably be predicted to result in suicide, the need for hospitalization, or serious violent behavior.

The medical review and direction included in AOT must be provided under the supervision of a psychiatrist.

**Discharge**

An absolute, unconditional release of an individual from a hospital by action of the hospital or a court. Discharge decisions must be based on each person's actual, real, and individualized risk mitigation and behavioral health treatment needs. For purposes of this policy, a discharge also includes a person's release from a hospital on an AOT order pursuant to §468(2)(c) and (d). This policy does not address an individual's discharge from an AOT order.

**Forensic Liaison**

An individual assigned by the Center for Forensic Psychiatry (CFP), another hospital operated by the department, or community mental health services program (CMHSP) to provide administrative management and coordination between the treating parties. Such coordination activities include, but may not necessarily be limited to, leave of absences (LOAs) and discharges.

**Hospital**

An inpatient program operated by the MDHHS for the treatment of individuals with serious mental illness, serious emotional disturbance or intellectual/developmental disability.

**Individual Plan of Service (IPOS)**

The fundamental document in the person's record, developed in partnership with the person using a person-centered planning process that establishes meaningful goals and measurable objectives including risk mitigation strategies overseen by the NGRI Committee. The plan must identify services (including discharge

Exhibit 1 Final Settlement Agreement 000021

planning), supports and treatment as desired or required by the person.

## Leave of Absence (LOA)

A temporary leave from a hospital ordered by a physician for treatment or community engagement purposes that does not exceed one year. The NGRI committee will be notified of LOAs and evaluate and approve any non-medical LOAs that include an overnight stay. Any LOA may require an NGRI committee evaluation and approval, if indicated in the IPOS and based upon the individualized treatment needs including appropriate risk mitigation strategies.

## Not Guilty by Reason of Insanity (NGRI)

An affirmative defense to a prosecution of a criminal offense that the defendant was legally insane when they committed the acts constituting the offense. An individual is legally insane if, because of a mental illness as defined in § 400 of the MMHC, or because of having an intellectual disability as defined in §100b of the MMHC, that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of their conduct or to conform their conduct to the requirements of the law. Mental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity.

## Not Guilty by Reason of Insanity (NGRI) Committee

A multidisciplinary committee consisting of forensic clinical staff (psychiatrists, psychologists, and social workers) who are certified/consulting forensic examiners. Members of the committee are appointed by the CFP director.

## Person

For purposes of this policy, an individual that has been adjudicated NGRI.

## Plan Coordinator

A licensed social worker or psychologist who integrates, coordinates, monitors and assures implementation of each person's IPOS. Monitoring includes ongoing review of the IPOS, recording progress and changes, and initiating modification of the IPOS as necessary.  A member of the treatment team will be designated as

Exhibit 1 Final Settlement Agreement 000022

the plan coordinator for the hospital treatment team or community treatment team where indicated.

**Risk Mitigation Strategies**

Strategies in a person's IPOS designed to reduce a person's risk of harming themselves or others.  Risk mitigations strategies must be tied to the person's behavioral health treatment needs.

**Supervisory Level Forensic Psychiatrist**

A 19-level, or higher, forensic psychiatrist assigned by the CFP director who coordinates services between the hospital treatment team, the NGRI Committee and the forensic liaison. This position advises the hospital treatment team to ensure, at a minimum, that risk mitigation strategies have been addressed based upon the person's behavioral health needs.

**Treatment Team**

Individuals who work together to develop and implement an IPOS. A treatment team includes the person, the person's guardian, a multidisciplinary team of mental health care professionals, including the plan coordinator, and involved direct care staff. A treatment team may either be a hospital treatment team or community treatment team.

**Violent Crime**

First, second- and third-degree murder, voluntary manslaughter, and criminal sexual conduct crimes.

**POLICY**

All persons adjudicated NGRI and who are probate court ordered for treatment are entitled to treatment, care, and services in the least restrictive setting that is appropriate and available. Decisions regarding treatment will be made to promote safely supporting persons in the least restrictive setting with community integrated services and ongoing outpatient treatment as clinically indicated.

**PROCEDURE**

A hospital or community treatment team must request, in writing, approval from the NGRI committee for a person's proposed discharge or LOA from a hospital. The request to the NGRI committee must include information relating to:

Exhibit 1 Final Settlement Agreement 000023

- The person's history.

- The person's present mental status.

- A detailed description of the proposed placement and services that ensure risk mitigation strategies are identified based upon the person's behavioral health treatment needs and available in the proposed setting.

Any recommended discharge or LOA from a hospital for a person who was acquitted by reason of insanity on charges of a violent crime, or upon request from the NGRI committee, must be reviewed for final approval by a forensic psychiatrist independent of the NGRI committee designated by the senior deputy director of the State Hospital Administration (SHA).

After reviewing the treatment team's request, the NGRI committee will:

- Either approve or disapprove the discharge or LOA. Written notification of the NGRI committee's decision must be provided to the person, the person's guardian, the hospital director, and the treatment team. If the request is denied:

  - The notification must include a detailed reason for the decision and treatment recommendations that will lead the person towards approval.

  - The hospital treatment team will notify the person, or their guardian, of their ability to file a petition for discharge per §484 of the MMHC.

  - The person, the person's guardian, the hospital director, or the community treatment team may request an administrative review of the denial to the SHA senior deputy director to ensure that the decision was made in compliance with §708 and §712 of the MMHC.  If it is determined through the secondary review that there was non-compliance with those provisions the decision will be reconsidered by the NGRI committee for further action and approval by the SHA senior deputy director and the NGRI committee. The person and the requestor (if different) must be notified in writing of the outcome of the review.

- The decision will be entered into the electronic medical record and be made available to the court upon request.

Exhibit 1 Final Settlement Agreement 000024

**Discharge**

If a person is deemed clinically suitable for discharge from a hospital and still meets criteria as a person requiring treatment under §401 of the MMHC the NGRI committee may recommend a person be discharged on an AOT order per §472a.

At the expiration of the initial AOT order the NGRI committee may recommend a petition for a continuing AOT order if the person continues to require treatment pursuant to §401. The NGRI committee may make recommendations for a continuation of AOT orders in compliance with §472a. NGRI committee involvement in the AOT order will end when the risk mitigation goals are met. NGRI committee involvement shall not exceed five (5) continuous years during which the person is on an AOT order. Discharge of NGRI committee involvement does not preclude the CMHSP from seeking additional AOT orders if clinically appropriate.

The supervisory level forensic psychiatrist will:

- Provide input to the hospital treatment team regarding forensic processes to incorporate appropriate risk mitigation strategies into the IPOS in consultation with the NGRI committee. The IPOS must not include any additional restrictions or conditions that exceed the individualized risk mitigation needs. The NGRI committee must review and approve the risk mitigations strategies in the IPOS prior to discharge or LOA (if applicable).

- Receive clinical information from, and provide feedback to, the hospital treatment team on proposed changes to the IPOS as it relates to risk mitigation strategies and may consult with the NGRI committee to aid the hospital team in completing the IPOS.

The NGRI committee and CFP forensic liaison are notified immediately if the person experiences any significant changes in behavioral or medical health status as it impacts risk mitigation. The appropriate CMH forensic liaison may be required to notify the court pursuant to §475 of the MMHC.

At any time, the hospital or community treatment team may request urgent or emergent consultation with the NGRI committee for persons under their care.

Exhibit 1 Final Settlement Agreement 000025

| | | | |
|---|---|---|---|
| **APF 106** | 7 of 7 | **NOT GUILTY BY REASON OF INSANITY COMMITTEE & PROCESSES** | APB 2021-wrk004<br><br>3-1-2021 |

**REFERENCES**

Michigan Mental Health Code, MCL 330.1401,330.1468, 330.1469a, 330.1482,330.1472a, 330.1483, 330.1484. MCL 330.1708. MCL 330.2050(5),

MDHHS Administrative Rule R330.10097

**CONTACT**

For more information, contact the State Hospital Administration.

Exhibit 1 Final Settlement Agreement 000026

*Darryl Pelichet v Elizabeth Hertel*
**USDC-ED of Mich. No. 2:18-cv-11385; Hon. Judge Anthony
P. Patti**

# EXHIBIT C

Exhibit 1 1 Final Settlement Agreement 000027

**Proposed AOT IPOS Notification Language**

As an individual adjudicated NGRI, risk mitigation strategies are incorporated into your IPOS. The NGRI Committee is consulted on these risk mitigation strategies, and the NGRI Committee reviews and approves your IPOS. These risk mitigation strategies cannot be restrictions that are not clinically indicated.

If you believe that your IPOS contains risk mitigations strategies or restrictions that are not related to your mental health treatment, or have other issues with your treatment, contact Disability Rights Michigan at 517-487-1755.

You also have the right to submit a complaint to the State Office of Recipient Rights. Phone number 1-800-854-9090, send written complaints to:

Michigan Department of Community Health
Office of Recipient Rights
Lewis Cass Building-Garden Level
Lansing, MI 48933

Exhibit 1 1 Final Settlement Agreement 000028

*Darryl Pelichet v Elizabeth Hertel*
**USDC-ED of Mich. No. 2:18-cv-11385; Hon. Judge Anthony
P. Patti**

# EXHIBIT D

Exhibit 1 1 Final Settlement Agreement 000029

**Clinical Certificate**

**GUIDANCE for CLINICIANS and TREATMENT TEAMS**

## Purpose

This guide is written to ensure that all members of the treatment team are aware of the responsibilities associated with the legal regulation of psychiatric care for individuals who are in SOM hospitals related to their commitment for treatment and discharge planning.

## Definitions

**Clinical Certificate**
The written conclusion and statements of a physician or a licensed psychologist attesting to their clinical opinion as to whether an individual legally qualifies as a "person requiring treatment" (PRT). It includes, in reasonable detail, the information that supports the conclusions and is submitted to the court on the form prescribed by the State Court Administrative Office or on a substantially similar form.

**Subject of Petition**
An individual regarding whom a petition has been filed with the court asserting that the individual is or is not a person requiring treatment or for whom an objection to involuntary mental health treatment has been made under section 484 of the Michigan Mental Health Code.

**Mental Illness**
Defined in the Michigan Mental Health Code as "A substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."

**Person Requiring Treatment**
In accordance with the Michigan Compiled Laws, 330.1401, a PRT is defined for the purposes of court-ordered treatment.  Although there may be persons who generally require or could benefit from care, for the purpose of the certification process, the PRT framework defines Person Requiring [court-ordered care] by meeting any or all of the following criteria:
(a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.
(b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.
(c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

Exhibit 1 1 Final Settlement Agreement 000030

## Procedure

Discharge planning is a necessary component of care provided for all persons hospitalized in SOM hospitals. All persons require treatment in the least restrictive environment. Therefore, it is important that there be ongoing assessments of the individual's needs. When individuals are hospitalized under a civil commitment chapter 4 court order, it is important to continually assess whether they meet ongoing criteria for this commitment.

In the weeks prior to the expiration of any commitment order, a psychiatrist or psychologist must re-examine the individual to determine whether, in their opinion, they meet the criteria as a PRT.  If the individual's treating psychiatrist is completing the clinical certificate, he or she must meet with the patient specifically for this purpose.  Guidance on completing the needed paperwork is attached (ATTACHMENT A).

In order to complete the proper assessment of an individual, every effort must be made for a face to face examination, and it is expected that this occur unless the person is unwilling to participate in that examination. Even in the event of unwillingness to participate, the psychiatrist can incorporate direct observations of the individual's mental status examination.

**Conducting the Examination:**

Minimum steps for conducting the examination for civil commitment include:

1. Face-to-face interview with the individual
2. Review of relevant records
3. Consultation with the treatment team
4. Completion of the Clinical Certificate form

Prior to interviewing the subject of the petition, the following statement found on the Clinical Certificate form must be read aloud to the individual being assessed:

> *I am authorized by law to examine you for the purpose of advising the court if you have a mental condition which needs treatment and whether such treatment should take place in a hospital or in some other place. I am also here to determine if you should be hospitalized or remain hospitalized before a court hearing is held. I may be required to tell the court what I observe and what you tell me.*

The content of the subsequent interview will vary somewhat depending on the individual's clinical circumstances and how well the psychiatrist knows the individual. For example, a treating psychiatrist who has worked with an individual for months would not need to review the individual's entire psychosocial history. Rather, **the interview will focus on questions relevant to whether the individual meets statutory criteria for a person requiring treatment**. Relevant considerations include:

Exhibit 1 1 Final Settlement Agreement 000031

1. Assessment of mental illness: Does the individual have a "substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life"? What are the individual's current symptoms and impairments? (*Note: if the individual's symptoms are in remission or well controlled at the time of the interview, the assessment of mental illness as documented in the clinical certificate may be based on historical information, including relevant records*).
2. Assessment of danger to self or others. The examiner should conduct a suicide risk assessment and a violence risk assessment
3. Assessment of ability to attend to basic physical needs.
4. Assessment of the individual's ability to understand need for treatment. Relevant questions may include: Do you think you have a mental illness? What symptoms of mental illness do you experience? Do you think you need treatment for your mental illness? How do your medications affect you? What would happen if you stopped your medications? For NGRI acquittees, this assessment will generally include asking the individual about their original NGRI offense and assessing whether the individual appreciates a connection between their mental illness and their behaviors. If the individual is seeking to be discharged from the hospital, ask questions about what their plan would be in a community setting: Where would you live? Who would support you?

Completion of the Clinical Certificate form incorporates information from the interview as well as from other sources noted above.  At a minimum, the following items must be entered:

- Subject's name
- Lines 1, 3, 4, 6, 7, 8 (if applicable), 9
- Date, time, signature and printed name and telephone no. of examiner

**Courtroom Testimony**

The clinical certificate is a formal, legal document that is submitted to the relevant probate court. Clinicians who complete clinical certificates for civil commitment will frequently be required to testify as to their examination of the individual and their conclusions. In general, clinicians should be expected to be asked about:

- Their credentials
- Whether they read the advisement statement at the top of the clinical certificate prior to interviewing the individual
- Their relationship with the individual, and whether they met with the individual specifically for the purposes of determining the need for civil commitment
- Whether the individual has a mental illness as statutorily defined
- The basis for the determination regarding mental illness (clinicians should be prepared to describe the patient's symptoms, behavior and history)
- Whether the individual meets criteria A, B, and/or C as a person requiring treatment, and the basis for this determination
- What level of care the individual requires (hospital, outpatient) and why

Exhibit 1 1 Final Settlement Agreement 000032

**<u>References</u>**

Michigan Mental Health Code

Clinical Certificate form **PCM 208 (12/19),** approved by SCAO

Exhibit 1 1 Final Settlement Agreement 000033

*Darryl Pelichet v Elizabeth Hertel*
**USDC-ED of Mich. No. 2:18-cv-11385; Hon. Judge Anthony P. Patti**

# EXHIBIT E

Exhibit 1 1 Final Settlement Agreement 000034

# **Completing a Clinical Certificate**



Full name of person must be entered.

Examiner's Credentials

Examiner, patient, location, date, time and duration.

All of the above information must be entered. Examiner will likely be asked during voir dire/testimony about this information.



In filling out the petition, you must determine whether the person is mentally ill or not. Someone not mentally ill does not meet the criteria for civil commitment.

Enter diagnosis and data supporting diagnosis and conclusion.

Facts should include pertinent observations and gathered history.

Exhibit 1 1 Final Settlement Agreement 000035



8. Explain in the space below the facts which lead you to believe that future conduct may result in (check applicable box)
☐ a. likelihood of injury to self.   Facts:

Therefore, I believe that the examined person, as a result of mental illness, can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self.

☐ b. likelihood of injury to others.   Facts:

Therefore, I believe that the examined person, as a result of mental illness, can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure others.

☐ c. inability to attend to basic physical needs.   Facts:

Therefore, I believe that the examined person, as a result of mental illness, is unable to attend to those basic physical needs (such as food, clothing or shelter) that must be attended to in order to avoid serious harm in the near future and has demonstrated that inability by failing to attend to those basic physical needs.

☐ d. inability to understand need for treatment.   Facts:

Therefore, I believe that the examined person, as a result of mental illness, is so impaired by that mental illness and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to himself/herself or others.

9. I conclude the individual ☐ is ☐ is not a person requiring treatment.

10. (optional)  I recommend ☐ hospitalization only
☐ a combination of hospitalization and assisted outpatient treatment
☐ assisted outpatient treatment without hospitalization
as follows:

I certify that I am a person authorized by law to certify as to the individual's mental condition. I am not related by blood or marriage either to the person about whom this certificate is concerned or to any person who has filed, or whom I know to be planning to file, a petition in this proceeding. I declare under the penalties of perjury that this certificate has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Date | Time of signing | Signature |
| --- | --- | --- |
| | | Print or type name and business telephone no. |

You should only petition for civil commitment if the individual meets either a, b, c or d. If the individual meets a, b, c, or d, you must check the correct box and enter facts supporting that conclusion.

Must conclude whether the individual requires treatment or not.

May recommend type of order.

Must sign, date/time and print examiner's name.

Petitions for involuntary mental health treatment must accurately reflect the treatment the individual will receive.  Petitions for hospitalization should only be filed if the person meets the criteria for inpatient hospitalization and will receive treatment in the hospital.  If the person is going to receive treatment in the community, the petition must request AOT or combined AOT/hospitalization.  This is the case regardless of an individual's NGRI status.

Exhibit 1 1 Final Settlement Agreement 000036

*Darryl Pelichet v Elizabeth Hertel*
**USDC-ED of Mich. No. 2:18-cv-11385; Hon. Judge Anthony
P. Patti**

# EXHIBIT F

Exhibit 1 1 Final Settlement Agreement 000037

## NGRI Process and Responsibilities

### DEFINITIONS:

### Alternative Treatment Report

A report developed and submitted by the responsible community mental health services program (CMHSP) to the probate court during the hearing for involuntary hospitalization offering a community treatment alternative during the involuntary hospitalization hearing.

### Assisted Outpatient Treatment (AOT) Order

A directive issued by a probate court requiring an individual to undergo AOT consistent with §468(2)(c) and (d) of the Michigan Mental Health Code (MMHC). Assisted outpatient treatment can be both an order to adhere to outpatient services or it may incorporate both outpatient and admission to a hospital.

### Assisted Outpatient Treatment (AOT)

Services ordered by a probate court under §468 or 469a of the MMHC. Assisted outpatient treatment may include a case management plan and related services to provide care coordination under the supervision of a psychiatrist and developed in accordance with person-centered planning under §712 of the MMHC. This definition also may include one or more of the following:

- Medication.
- Periodic blood tests or urinalysis to determine compliance with prescribed medications.
- Individual or group therapy.
- Day or partial day programming activities.
- Vocational, educational, or self-help training or activities.
- Assertive community treatment team services.
- Alcohol or substance use disorder treatment and counseling and periodic tests for the presence of alcohol or illegal drugs for an individual with a history of alcohol abuse or substance use disorder.
- Supervision of living arrangements, and
- Any other services within a local or unified services plan developed under the MMHC that are prescribed to treat the individual's mental illness and to assist the individual in living and functioning in the community or to attempt to prevent a relapse or deterioration that may reasonably be predicted to result in suicide, the need for hospitalization, or serious violent behavior.

- The medical review and direction included in AOT must be provided under the supervision of the psychiatrist.

Exhibit 1 1 Final Settlement Agreement 000038

**Diagnostic Period**

A period of time, not to exceed 60 days, that the Center for Forensic Psychiatry (CFP) has to thoroughly examine and evaluate the present mental condition of a person adjudicated as being not guilty by reason of insanity (NGRI) to determine whether they meet criteria as requiring treatment.

**Discharge**

An absolute, unconditional release of an individual from a hospital by action of the hospital or a court. Discharge decisions must be based on each person's actual, real, and individualized risk mitigation and behavioral health treatment needs. For purposes of this policy, a discharge also includes a person's release from a hospital on an AOT order pursuant to §468(2)(c) and (d). This document does not address an individual's discharge from an AOT order.

**Forensic Liaison**

An individual assigned by CFP, another hospital operated by the department, or community mental health services program to provide administrative management and coordination between the treating parties. Such coordination activities include, but may not necessarily be limited to, leave of absences (LOAs) and discharges.

**Hospital**

An inpatient program operated by the department for the treatment of individuals with serious mental illness, serious emotional disturbance, or intellectual/developmental disability.

**Individual Plan of Service (IPOS)**

The fundamental document in the person's record, developed in partnership with the person using a person-centered planning process that establishes meaningful goals and measurable objectives including risk mitigation strategies overseen by the NGRI Committee. The plan must identify services (including discharge planning), supports and treatment as desired or required by the person.

**Leave of Absence (LOA)**

A temporary leave from a hospital ordered by a physician for treatment or community engagement purposes that does not exceed one year. The NGRI committee will be notified of LOAs and evaluate and approve any non-medical LOAs that include an overnight stay. Any LOA may require an NGRI committee evaluation and approval, if indicated in the IPOS and based upon the individualized treatment needs including appropriate risk mitigation strategies.

Exhibit 1 1 Final Settlement Agreement 000039

**Not Guilty by Reason of Insanity (NGRI)**

An affirmative defense to a prosecution of a criminal offense that the defendant was legally insane when they committed the acts constituting the offense. An individual is legally insane if, because of a mental illness as defined in § 400 of the MMHC, or because of having an intellectual disability as defined in §100b of the MMHC, that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of their conduct or to conform their conduct to the requirements of the law. Mental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity.

**Not Guilty by Reason of Insanity (NGRI) Committee**

A multidisciplinary team consisting of forensic clinical staff (psychiatrists, psychologists, and social workers) who are certified or consulting forensic examiners. Members of the committee are appointed by the CFP director.

**Person**

For purposes of this document, an individual who has been adjudicated NGRI.

**Plan Coordinator**

A licensed social worker or psychologist who integrates, coordinates, monitors and assures implementation of each person's IPOS. Monitoring includes ongoing review of the IPOS, recording progress and changes, and initiating modification of the IPOS, as necessary.  A member of the treatment team will be designated as the plan coordinator for the hospital treatment team or community treatment team where indicated.

**Risk Mitigation Strategies**

Strategies in a person's IPOS designed to reduce a person's risk of harming themselves or others.  Risk mitigations strategies must be tied to the person's behavioral health treatment needs.

**Supervisory Level Forensic Psychiatrist**

A forensic psychiatrist assigned by the CFP director who coordinates services between the hospital treatment team, the NGRI Committee and the forensic liaison. This position advises the hospital treatment team to ensure, at a minimum, that risk mitigation strategies have been addressed based upon the person's behavioral health needs.

**Treatment Team**

Those individuals who work together to develop and implement an IPOS. A treatment team includes the person, the person's guardian, a multidisciplinary team of mental health care professionals, including the plan coordinator, and involved direct care staff, A treatment team may be either a hospital treatment team or community treatment team.

Exhibit 1 1 Final Settlement Agreement 000040

**Violent Crime**

First-, second- and third-degree murder, voluntary manslaughter, and criminal sexual conduct crimes.

## NOT GUILTY BY REASON OF INSANITY

### 1. Overview

Persons adjudicated NGRI will be immediately committed to CFP. During the diagnostic period CFP will:

- Examine and evaluate the present mental condition of the person to determine whether they meet the criteria of the person requiring treatment as defined by §401 of the MMHC.
- File a report to the court indicating the findings of the individual's condition and whether they meet § 401 criteria. If the person is determined to be a person requiring treatment, the court may direct the prosecutor to file a petition pursuant to §434 for an order of hospitalization.

The contractual provisions below describe the responsibilities of the NGRI Committee, CFP, regional hospitals (RH), and CMHSP in the coordination of care, treatment, and transition to community living.

### 2. Petitions of Involuntary Treatment / Assisted Outpatient Treatment Orders

Petitions for involuntary mental health treatment must accurately reflect the treatment the individual will receive. Petitions for hospitalization should only be filed if the person meets the criteria for in-patient hospitalization and will receive treatment in the hospital. If the person is going to receive treatment in the community, the petition must request AOT or combined AOT/hospitalization. This is the case regardless of an individual's NGRI status.

Individuals adjudicated NGRI may be discharged from a hospital on an AOT order. The NGRI Committee will collaborate with the CMHSP on the AOT order to ensure appropriate risk mitigation strategies are incorporated into the IPOS. The NGRI committee's involvement will end after the individual has been in the community for five continuous years on an AOT order. Nothing in this contract precludes the CMHSP from petitioning for an AOT order following NGRI involvement if the CMHSP determines it is clinically appropriate.

### 3. Roles and Responsibilities

#### a. NGRI Committee

Exhibit 1 1 Final Settlement Agreement 000041

i. Consult with the supervisory level forensic psychiatrist to incorporate appropriate risk mitigation strategies into the IPOS. The risk mitigation strategies should be designed to promote the person's discharge to a less restrictive setting.

ii. Receive clinical information from, and provide feedback to, the hospital treatment teams and the CMHSP on proposed changes to the IPOS as it relates to risk mitigation strategies.

iii. Review and authorize request for discharges and LOAs based on whether the person continues to meet the criteria of a person requiring treatment pursuant to §401.

iv. Submit requests for discharge or LOA for individuals charged with a violent crime to a forensic psychiatrist independent of the NGRI committee designated by the senior deputy director of the State Hospital Administration (SHA) in accordance with APF 106.

v. Provide written notification to the person, hospital treatment team and CMHSP of the approval or disapproval of the requested discharge or LOA that includes a detailed reason for the decision and treatment recommendations that will lead the person towards approval.

vi. Consult with the CMHSP on appropriate risk mitigation strategies to be included in an IPOS once a person is discharged to the community on an AOT order.

vii. End NGRI involvement when the risk mitigation goals are met and the person no longer meets treatment criteria, or after five continuous years in the community whether on an AOT order or under an ALS contract, which ever happens first.

**b. Hospital Treatment Team**

i. Consult with the supervisory level forensic psychiatrist to ensure risk mitigation strategies, based on the person's behavioral health needs, are addressed in the IPOS.

ii. Consult with the CMHSP on an individualized pre-release plan for appropriate community placement and aftercare services appropriate for each person in accordance with §209a of the MMHC.

iii. Request in writing a request for discharge or LOA to the NGRI committee in accordance with MDHHS Hospital Policy APF 106.

iv. Provide advance notice to the CMHSP of a person's anticipated release to the community.

v. Notify and provide a Petition for Discharge (PCM 220) to the person and their guardian, of the ability to file a petition for discharge in accordance with §484 of the MMHC if a discharge is denied by the NGRI Committee.

vi. Notify the person and their guardian of the right to request an administrative review of a denial for discharge or LOA in accordance with MDHHS Hospital Policy APF 106.

Exhibit 1 1 Final Settlement Agreement 000042

     vii.   Notify the NGRI committee of any significant changes in the behavioral or medical health status of the individual as its impacts risk mitigation.

    viii.  Request an emergent consultation with the NGRI Committee as necessary.

**c. Community Mental Health Service Providers**

    i.   Identify a primary and secondary Forensic Liaison that is primarily responsible for:

       1.  Tracking, reviewing, and monitoring court documentation and statutorily required reports. See Exhibit A.

       2.  Documenting and summarizing the risk mitigation strategies recommended by the NGRI Committee. These strategies will be monitored and submitted to Disability Rights Michigan by the NGRI Committee upon request.

       3.  Notify the court pursuant to §475 of the MMHC when mental health professional who is supervising an individual's assisted outpatient treatment program determines that the individual is not complying with the court order or that the assisted outpatient treatment has not been or will not be sufficient to prevent harm that the individual may inflict on himself or herself or upon others.

       4.  Notify the NGRI Committee as outlined in Exhibit B.

       5.  Transition all ALS/hospitalization order to an AOT order with appropriate risk mitigation strategies incorporated into the IPOS at the expiration of a hospitalization order or upon request. AOT orders should only be pursued if the person meets the criteria for treatment.

       6.  Ensure that each person currently in the community is provided a NGRI Handbook.

       7.  Include the following language in the IPOS when there is NGRI committee oversight:

**AOT IPOS Notification Language**

**As an individual adjudicated NGRI, risk mitigation strategies are incorporated into your IPOS. The NGRI Committee is consulted on these risk mitigation strategies, and the NGRI Committee reviews and approves your IPOS. These risk mitigation strategies cannot be restrictions that are not clinically indicated.**

**If you believe that your IPOS contains risk mitigations strategies or restrictions that are not related to your mental health treatment, or have other issues with your treatment, contact Disability Rights Michigan at 517-487-1755.**

Exhibit 1 1 Final Settlement Agreement 000043

**You also have the right to submit a complaint to the State Office of Recipient Rights. Phone number 1-800-854-9090, send written complaints to:**

> **Michigan Department of Community Health**
> **Office of Recipient Rights**
> **Lewis Cass Building-Garden Level**
> **Lansing, MI 48933**

8.  Notify people who have received treatment in the community for five years or longer that they are no longer under NGRI supervision.

ii.   Participate in prerelease planning services in accordance with §209a and §209b. This includes but is not limited to consulting with the hospital treatment team, the NGRI Committee, and the person on an individualized pre-release plan for appropriate community placement as well as appropriate aftercare services. The release plan must include individualized risk mitigation strategies as recommended by the NGRI Committee.

iii.  Supervise treatment and the individualized risk mitigation strategies in the IPOS in accordance with the individual's clinical needs. This includes, but is not limited to, developing and monitoring IPOS, medication management, providing day or residential programs, counseling, psychotherapy, and other treatment deemed necessary by the individual's treatment team.

iv.   Provide an opportunity to resolve disputes regarding the planning and provision of services and supports in accordance with MCL 330.1206a.

v.    Attend MDHHS trainings on NGRI processes.

vi.   Submit all petitions and reports by fax to the NGRI committee the Forensic Liaison at the responsible RH, and the person in accordance with Exhibit A.

vii.  All notification and authorization requirements are to be in writing and faxed to the NGRI Committee and Forensic Liaison as provided in Sec. 6 of this agreement.

viii. Must seek authorization from the NGRI committee within 14 days of the recommended changes in treatment or living arrangements.

ix.   Must notify the NGRI Committee and Forensic Liaison at the RH within 72 hours of occurrence giving rise to the notification requirement described in Exhibit B.

x.    Will seek NGRI Committee Authorization or Notification as outlined in in Exhibit B.

Exhibit 1 1 Final Settlement Agreement 000044

xi. If a person adjudicated NGRI is receiving treatment in the community on an AOT order and is determined to be on Unauthorized Leave of Absence, the CMH Forensic Liaison/designee will:

1) Notify the NGRI Committee and SHA Regional Hospital Forensic Liaison as soon as possible but no later than 72 hours of determination of the ULOA status.
2) Contact the local police to file a missing person's report.
3) Report and any additional updates/information to the NGRI Committee and SHA Regional Hospital Forensic Liaison.
4) Once the person is located, coordinate with local police and hospital personnel to facilitate admission if rehospitalization is indicated.
5) If a determination has been made that the patient needs to be readmitted to CFP, send a CMH Approval Letter to the SHA Regional Hospital Forensic Liaison to facilitate the administrative transfer process.

xii. If a person adjudicated NGRI is receiving treatment in the community on an AOT order or in LOA status, and is displaying a dangerous behavior or poses a safety risk that may require rehospitalization, the CMH Forensic Liaison/designee will:

1) Secure local hospitalization to ensure stability and inform the local hospital that patient is on a current court order.
2) Notify the NGRI Committee and SHA Regional Hospital Forensic Liaison of the circumstances.
3) Maintain contact with the RH staff and convey information to the NGRI Committee and SHA Regional Hospital Forensic Liaison.
4) If stabilization cannot occur locally and additional hospitalization is required, will coordinate with the RH admissions staff and the NGRI Committee to secure a bed at a RH.
5) Upon securing a bed at a RH, prepare a rehospitalization packet and arrange admission.
6) If the person needs to be readmitted to CFP, provide a CMH Approval Letter to the hospital to facilitate the administrative transfer process.

**4.** Notices

All notices and other communications required or permitted under this Contract must be in writing and will be considered given and received when:
- Verified by written receipt if sent by courier.
- Received if sent by mail without verification of receipt; or
- Verified by automated receipt or electronic logs if sent by facsimile or email

Exhibit 1 1 Final Settlement Agreement 000045

**NGRI Committee**                    **CMH Forensic Liaison**

**Insert Fax/ phone/email**           **Insert Fax/ phone/email**

Exhibit 1 1 Final Settlement Agreement 000046

**EXHIBIT A**

Court Documentation and Reporting

| CMH required court forms and Reports | When | Court Form | MCL /MCR |
|---|---|---|---|
| Order and Report on Alternative Mental Health Treatment | 14 prior to the expiration of the current order | PCM 216 | 330.1453a, 330.1468 MCR 5.741 |
| Petition for continuing Mental Health Treatment Order | 14 days prior to expiration of current order | PCM 218a | MCL 330.1472a, MCL 330.1473 |
| Ninety-day reports | 90 days and 270 days after the date the current order was signed | x | x |
| (3) Thirty - Day Reports when individuals are released to community directly from CFP. | At 30, 90 and 120 days from the date of release. | | |

Exhibit 1 1 Final Settlement Agreement 000047

**Exhibit B**

| Authorization from NGRI Committee 14 days prior to event. | | Notification to NGRI/RH Forensic Liaison within 72 hours. |
|---|---|---|
| Significant changes in treatment plans | | Any significant changes in the behavioral or medical health status of the individual. |
| Overnight leaves of absence from the designated living setting | | Community Hospital Admissions, including the reason for the hospitalizations, facility name, date of admission and date of discharge |
| Movement between dependent living settings | | Contacts with law enforcement |
| Any changes from one independent setting to another | | Any change in case manager or case management providers/ contractual agencies |
| Any change in the patients permanent living address | | |
| Permission to leave the state of Michigan | | |

Exhibit 1 1 Final Settlement Agreement 000048

**EXHIBIT C**

SAMPLE 30/90 DAY REPORT

Exhibit 1 1 Final Settlement Agreement 000049

**EXHIBIT D**

Community Leave of Absence Request

**Exhibit E**

**Flow Chart**

Exhibit 1 1 Final Settlement Agreement 000050

*Darryl Pelichet v Elizabeth Hertel*
**USDC-ED of Mich. No. 2:18-cv-11385; Hon. Judge Anthony
P. Patti**

# EXHIBIT G

Exhibit 1 1 Final Settlement Agreement 000051



# Administrative Policy Facilities/Hospital (APF) 106

# Not Guilty by Reason of Insanity (NGRI) Committee & Processes

Exhibit 1 1 Final Settlement Agreement 000052



# Why Now?

- Immediate need for standardization of NGRI processes across hospitals and community providers

- Ensure treatment is individualized and in accordance with Michigan Mental Health Code

Exhibit 1 1 Final Settlement Agreement 000053



# Policy

All persons adjudicated NGRI and who are probate court ordered for treatment are entitled to treatment, care, and services in the <mark>least restrictive setting that is appropriate and available</mark>. Decisions regarding treatment will be made to promote safely supporting persons in the least restrictive setting with community integrated services and ongoing outpatient treatment as clinically indicated.

Exhibit 1 1 Final Settlement Agreement 000054

# Policy Purpose



- Discharges and Leaves of Absence (LOA) for NGRI persons are appropriately reviewed and approved by the NGRI committee

- Treatment recommendations are based on actual individualized needs, including risk mitigation strategies

- Treatment is provided in the least restrictive setting that is appropriate and available

Exhibit 1 1 Final Settlement Agreement 000055



# What is New

- The NGRI committee may recommend discharge from a hospital to Assisted Outpatient Treatment (AOT)

- The NGRI committee will **not** recommend **continuing hospitalization** orders for NGRI persons residing in the community, but rather may recommend continuing AOT order

- NGRI committee involvement shall not exceed 5 continuous years of AOT

Exhibit 1 1 Final Settlement Agreement 000056



# Assisted Outpatient Treatment (AOT) Order

A probate court order which can incorporate both outpatient and inpatient treatment.

AOT:

- may include case management services to provide care coordination
- under the supervision of a psychiatrist
- developed in accordance with person-centered planning

Exhibit 1 1 Final Settlement Agreement 000057

# AOT May Include:



- Medications
- Blood testing
- Individual or group therapy
- Day or partial day programming
- Vocational, educational or self help activities
- ETOH/substance abuse treatment and testing for persons with history of substance use disorder
- Supervision of living arrangements
- Other services

Exhibit 1 1 Final Settlement Agreement 000058



# What is New (cont.)

- **Authorized Leave Status (ALS) and ALS contracts are being retired over the next year**

- Instead IPOS focus areas with individualized risk mitigation strategies integrated into the goals and interventions

  - Reviewed and updated regularly by teams with NGRI committee input

  - Conversion from ALS contract to IPOS with risk mitigation will occur at the time the current treatment order expires and a new AOT order is issued or when the patient requests.

Exhibit 1 1 Final Settlement Agreement 000059

# What is NOT New



- Requests for discharge or leave of absence (LOA) overnight or longer require prior NGRI committee approval

- NGRI persons may initially be placed in the community on **LOA** while still on hospitalization order – similar to former Authorized Leave Status (ALS) -  patient is still considered hospitalized, but on leave

- Ninety-day reports required

Exhibit 1 1 Final Settlement Agreement 000060



# Leave of Absence

A temporary leave from a hospital ordered by a physician for treatment or community engagement purposes that does not exceed one year. The NGRI committee will be notified of LOAs and evaluate and approve any non-medical LOAs that include an overnight stay.

Exhibit 1 1 Final Settlement Agreement 000061



# What is NOT New (cont.)

- Significant events are reported to the NGRI committee
  – Deterioration of condition
  – Unauthorized leaves of absence
  – Treatment non-adherence
- Forensic Liaisons manage and coordinate services between hospitals and community settings
- The NGRI committee will seek independent forensic examination for violent offenses

Exhibit 1 1 Final Settlement Agreement 000062



# Risk Mitigation Strategies

Strategies in a person's IPOS designed to reduce a person's risk of harming themselves or others. Risk mitigations strategies must be tied to the person's behavioral health treatment needs.

Exhibit 1 1 Final Settlement Agreement 000063



# Examples of Risk Mitigation Strategies

Exhibit 1 1 Final Settlement Agreement 000064

# If NGRI Committee Disapproves…

- Written notification provided to person, guardian, hospital director, and team including detailed reason for decision and treatment recommendations that will lead to approval

- Team will notify patient or guardian of ability to file petition for discharge from treatment

- Person, guardian, hospital director, or team may request administrative review that decision was made in compliance with applicable mental health law.  If not, reconsideration by NGRI committee and further action and approval by SHA senior deputy director

Exhibit 1 1 Final Settlement Agreement 000065



# Supervisory Level Forensic Psychiatrist

A forensic psychiatrist assigned by the Center for Forensic Psychiatry director who coordinates services between the hospital treatment team, the NGRI Committee and the forensic liaison. This position advises the hospital treatment team to ensure, at a minimum, that risk mitigation strategies have been addressed based upon the person's behavioral health needs

Exhibit 1 1 Final Settlement Agreement 000066

# Duties of SLFP



Meet regularly with regional hospital teams to provide input regarding

- Use of appropriate risk mitigation strategies in the IPOS of NGRI persons
- Proper administration of Clinical Certificates
- Relevant clinical and legal forensic issues
- Quality control/monitoring of above

Exhibit 1 1 Final Settlement Agreement 000067





Exhibit 1 1 Final Settlement Agreement 000068



Thank you

Exhibit 1 1 Final Settlement Agreement 000069



# Clincal Certificates

Exhibit 1 1 Final Settlement Agreement 000070



# What is a Clinical Certificate?
# The short answer:

- Legal document containing conclusions and statements supporting the opinion whether an individual is a **PERSON REQUIRING TREATMENT**

Exhibit 1 1 Final Settlement Agreement 000071

# What is a Clinical Certificate?
# The long answer:



Process which incorporates:

1. Consideration of discharge planning
2. Face to face examination
3. Review of relevant records
4. Consultation with treatment team
5. Completion of appropriate form and submission to court
6. Court testimony supporting the opinions asserted

Exhibit 1 1 Final Settlement Agreement 000072

# PERSON REQUIRING TREATMENT



- First criteria – Does the person have a mental illness?

    substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life

Exhibit 1 1 Final Settlement Agreement 000073

# PERSON REQUIRING TREATMENT



- Second criteria – (a) and (b) as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally <u>seriously physically injure himself, herself, or another individual</u>, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

Exhibit 1 1 Final Settlement Agreement 000074

# PERSON REQUIRING TREATMENT



- Second criteria – (c) as a result of that mental illness is <u>unable to attend to those of his or her basic physical need</u>s such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

Exhibit 1 1 Final Settlement Agreement 000075

# PERSON REQUIRING TREATMENT



- Second criteria – (d) whose judgment is so impaired by that mental illness, and whose <u>lack of understanding of the need for treatment</u> has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

Exhibit 1 1 Final Settlement Agreement 000076



# How does discharge planning impact clinical certificates?

- MMHC requires persons receive treatment in the least restrictive setting
- Ongoing assessment of individual needs – input from treatment team
- **Recommendations for hospitalization orders can not be based solely on maintaining NGRI status**

Exhibit 1 1 Final Settlement Agreement 000077

# Conducting the Examination



- Make every effort for face-to-face examination
- Even if person is unwilling to participate, direct observations of mental status can be incorporated
- Clinical circumstances will determine structure/content of interview i.e. treating clinician vs. initial meeting
- Prior to interview, examiner must read or paraphrase following statement:

  *I am authorized by law to examine you for the purpose of advising the court if you have a mental condition which needs treatment and whether such treatment should take place in a hospital or in some other place. I am also here to determine if you should be hospitalized or remain hospitalized before a court hearing is held. I may be required to tell the court what I observe and what you tell me.*

Exhibit 1 1 Final Settlement Agreement 000078

# Conducting the Examination (cont)



- (a) Suicide risk assessment
- (b) Violence risk assessment
- (c) Assessment of person's ability to attend to basic physical needs
- (d) Understanding of need for treatment
  - Do you think you have a mental illness or need treatment?
  - What symptoms of mental illness do you experience?
  - How do your medications help you? What would happen if you stopped your medications?

Exhibit 1 1 Final Settlement Agreement 000079

# Understanding MI and NGRI Acquitees



- How did mental illness impact thoughts and behaviors at the time of offense

- How to recognize and manage symptoms should they worsen

- What would be done differently given the same circumstances

- If the person is seeking to be discharged from the hospital, what is the plan for living in a community setting: Where would you live? Who would be a support for you? Finances?  Follow-up care?

Exhibit 1 1 Final Settlement Agreement 000080



## Completing a Clinical Certificate

| | PCS CODE: CCT TCS CODE: CCT |
|---|---|
| Approved, SCAO | |

| STATE OF MICHIGAN PROBATE COURT COUNTY OF | CLINICAL CERTIFICATE | FILE NO. |
|---|---|---|

In the matter of _____
First, middle, and last name

**TO THE EXAMINER: You must read the following statement to the individual before proceeding with any questions.**

I am authorized by law to examine you for the purpose of advising the court if you have a mental condition which needs treatment and whether such treatment should take place in a hospital or in some other place. I am also here to determine if you should be hospitalized or remain hospitalized before a court hearing is held. I may be required to tell the court what I observe and what you tell me.

1. I am a ☐ psychiatrist. ☐ licensed psychologist. ☐ physician.

2. I certify that on this date I read the above statement to the individual before asking any questions or conducting any examination.

3. I further certify that I, _____ , personally examined _____
Name (type or print)                                                    Patient

at _____
Name and address where examination took place

on _____ starting at _____ and continuing for _____ minutes.
Date                          Time

*Full name of person must be entered.*

*Examiner's Credentials*

*Examiner, patient, location, date, time and duration.*

**All of the above information must be entered. Examiner will likely be asked during voir dire/testimony about this information.**

Exhibit 1 1 Final Settlement Agreement 000081



INSTRUCTIONS: Describe in detail the specific actions, statements, demeanor, and appearance of the individual, together with other information which underlie your conclusion. **Indicate the source of any information not personally known or observed.** If this certificate is to accompany a petition for discharge, state why the individual continues to be or is no longer a person requiring treatment or in need of hospitalization.

4. My determination is that the person is
☐ mentally ill (has a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life).
☐ not mentally ill.

☐ 5. (if applicable) The person has
☐ convulsive disorder.   ☐ alcoholism.   ☐ other drug dependence.
☐ mental processes weakened by reason of advanced years.
☐ other (specify):

6. My diagnosis is:

7. Facts serving as the basis for my determination are:

(SEE SECOND PAGE)

Do not write below this line - For court use only

In filling out the petition, you must determine whether the person is mentally ill or not. Someone not mentally ill does not meet the criteria for civil commitment.

Enter diagnosis and data supporting diagnosis and conclusion.

Facts should include pertinent observations and gathered history.

Exhibit 1 1 Final Settlement Agreement 000082



8. Explain in the space below the facts which lead you to believe that future conduct may result in (check applicable box)

☐ a. likelihood of injury to self.  Facts:

Therefore, I believe that the examined person, as a result of mental illness, can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self.

☐ b. likelihood of injury to others.  Facts:

Therefore, I believe that the examined person, as a result of mental illness, can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure others.

☐ c. inability to attend to basic physical needs.  Facts:

Therefore, I believe that the examined person, as a result of mental illness, is unable to attend to those basic physical needs (such as food, clothing or shelter) that must be attended to in order to avoid serious harm in the near future and has demonstrated that inability by failing to attend to those basic physical needs.

☐ d. inability to understand need for treatment.  Facts:

Therefore, I believe that the examined person, as a result of mental illness, is so impaired by that mental illness and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to himself/herself or others.

You should only petition for civil commitment if the individual meets either a, b, c or d. If the individual meets a, b, c, or d, you must check the correct box and enter facts supporting that conclusion.

Exhibit 1 1 Final Settlement Agreement 000083



9. I conclude the individual ☐ is ☐ is not a person requiring treatment.

Must conclude whether the individual requires treatment or not.

10. (optional) I recommend
☐ hospitalization only
☐ a combination of hospitalization and assisted outpatient treatment
☐ assisted outpatient treatment without hospitalization

as follows:

May recommend type of order.

I certify that I am a person authorized by law to certify as to the individual's mental condition. I am not related by blood or marriage either to the person about whom this certificate is concerned or to any person who has filed, or whom I know to be planning to file, a petition in this proceeding. I declare under the penalties of perjury that this certificate has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Date | Time of signing | Signature |
| --- | --- | --- |
| | | Print or type name and business telephone no. |

Must sign, date/time and print examiner's name.

**Petitions for involuntary mental health treatment must accurately reflect the treatment the individual will receive. Petitions for hospitalization should only be filed if the person meets the criteria for inpatient hospitalization and will receive treatment in the hospital. If the person is going to receive treatment in the community, the petition must request AOT or combined AOT/hospitalization. This is the case regardless of an individual's NGRI status.**

Exhibit 1 1 Final Settlement Agreement 000084

# Court Testimony



- Credentials
- Was the advisement statement at the top of the clinical certificate read prior to interviewing
- Relationship with the person, and whether they met with the person specifically for the purposes of determining the need for civil commitment
- Whether the person has a mental illness as statutorily defined
- The basis for the determination regarding mental illness (symptoms, behavior and history)
- Whether the person meets criteria as a person requiring treatment, and the basis for this determination
- What level of care the individual requires (hospital, outpatient) and why

Exhibit 1 1 Final Settlement Agreement 000085





Exhibit 1 1 Final Settlement Agreement 000086



# Thank you

Exhibit 1 1 Final Settlement Agreement 000087



# NGRI Committee

Exhibit 1 1 Final Settlement Agreement 000088

# What will remain the same?

- Most NGRI operations will be unaffected.
- Ninety-day reports will continue to be sent to the NGRI Committee and regional hospital.
- Discharges, move requests, changes to IPOS risk mitigation strategies, and overnight leaves of absence (LOAs), and permission to leave the State will still require NGRI committee approval.
- The NGRI Committee and regional hospital will still need to be notified about:
  - ❑ Deterioration or changes in mental status of patient condition
  - ❑ Unauthorized leaves of absence (ULOA)
  - ❑ Treatment non-adherence
  - ❑ Any problematic issue which could interfere with the patient's stability, safety, and progress in treatment
- Provide consultation as needed to assist in coordinated care of individual
- Individuals can still receive NGRI Committee monitoring for a period of up to five continuous years once released into the community

Michigan Department of Health & Human Services

GRETCHEN WHITMER, GOVERNOR • ROBERT GORDON, DIRECTOR

Exhibit 1 1 Final Settlement Agreement 000089



# Summary of Changes

- The dissolution of the ALS Contract

- Individuals will no longer be on hospitalization orders in the community

- Transition all ALS/hospitalization orders to AOT orders with appropriate risk mitigation strategies incorporated into the IPOS at the expiration of a hospitalization order or upon request if the person meets the criteria for treatment

- If they meet criteria, individuals will be transitioned to an AOT and still receive monitoring by the NGRI Committee while in the community

- NGRI Committee will no longer be reviewing ground cards or staff-escorted outings at the regional

- NGRI Committee will now consult with the CMHSP on appropriate risk mitigation strategies to be included in an IPOS once a person is discharged to the community on an AOT order

Exhibit 1 1 Final Settlement Agreement 000090

# The ALS Contract



## Historically

- Agreement between the patient, NGRI Committee, regional hospital, and CMH
- Identified CMH Requirements, Requirements for all NGRI patients, and Individual Requirements
- Identified court and NGRI reporting timelines
- Committed CMHs to provide care, defined placement, defined level of services
- Document to assist the individual in understanding treatment expectations
- Guided reporting of contract nonadherence, significant changes in clinical condition
- Assigned approval of overnight leaves, changes in placement, and services to the NGRI Committee

## How/Why were ALS Contract Individual Requirements identified?

- Treatment teams, CMH, and NGRI Committee assessed each person's individualized risk factors
- Identified what level of care would offer the most appropriate support as the individual transitions back to the community.
- Identified what individualized services would be available and provided to patient to enhance their support and treatment in community
- Incorporated additional requirements that were **individualized** to reduce a person's risk to engage in dangerous behavior

Exhibit 1 1 Final Settlement Agreement 000091

# How will we ensure continuity of care?



## Transitioning ALS Contract into IPOS Development

- From the time of admission, treatment teams should be utilizing assessments to identify what factors may have led to the NGRI offense (Focus Areas and Discharge Barriers)

- Consider what factors may have led to past episodes of hospitalizations, risk of harm to self or others, or legal involvement (Focus Areas and Discharge Barriers)

- What supports/services/circumstances will increase an individual's success in the community

- Incorporating those identified services into our IPOS Focus Areas, Short/Long-Term goals, and into Interventions

- Carefully formulate IPOS interventions that correlate to the individualized risk mitigation strategies

- IPOS Focus Areas, Goals, and Interventions should be fluid and should be based on the individual's progress in treatment

Exhibit 1 1 Final Settlement Agreement 000092

# Prior to release from the hospital into the community

- CMH, treatment team, and patient will consider the identified focus areas of treatment and determine if discharge criteria has been met

- Identify those services and placement options that are available in the community

- Treatment teams will submit Discharge/Release Request Memo to the Committee identifying recommended level of care and services that will be incorporated to sufficiently mitigate risk

- NGRI Committee will review and offer recommendations for placement, services, and risk mitigation strategies

- Once approved, those individualized risk mitigation interventions recommended by the NGRI committee will be incorporated into the IPOS in the community.

Exhibit 1 1 Final Settlement Agreement 000093



# How can we incorporate risk mitigation strategies into the IPOS?

Exhibit 1 1 Final Settlement Agreement 000094

**Focus Area/Problem: Psychosis**
Mr. Jones carries a diagnosis of schizophrenia, continuous with acute exacerbation. His psychotic symptoms continue to result in impaired interactions with others, as evidenced by isolation, accusations that others are trying to harm him, and aggression. His symptoms of paranoid delusions and hallucinations were related to his NGRI offense and have resulted in multiple past hospitalizations.

**Long-term Goal:**
Mr. Jones will increase reality testing and decrease paranoid delusions and auditory hallucinations as evidenced by organized and relevant thought processes and increased communication and interactions that are devoid of paranoid content.

**Short-term Goal:**
#1: Mr. Jones' paranoia and thought disorganization will improve to the extent that he is able to participate in individual therapy once weekly for at least 15 minutes.

#2: Mr. Jones' hallucinations, paranoia, and disorganized thinking will diminish to the extent that he is able to engage in a relevant conversation with staff or peers for 10 minutes per shift.

#3: Mr. Jones will initiate contact with staff when he is experiencing increased symptoms or warning signs to assist him in coping with his paranoia delusions or hallucinations.

**Interventions:**
Psychiatry: Mr. Jones will be seen for 1:1 intervention for 15 minutes once weekly. The unit psychiatrist will prescribe medication to treat his symptoms of paranoid delusions, auditory hallucinations, and thought disorganization. Psychiatrist will assess the therapeutic response to this medication and provide education regarding potential side effects.

Unit RN: RN will meet with Mr. Jones for 10 minutes per week to provide education about how his antipsychotic medication can reduce his paranoid delusions, auditory hallucinations, and thought disorganization.

Social Worker: Clinician will meet with Mr. Jones for at least 15 minutes weekly for individual supportive therapy. Sessions will be designed to provide education regarding his paranoid delusions, auditory hallucinations, and thought disorganization and to ultimately connect those symptoms to his NGRI offense.

Chief Clinician will provide weekly 50-minute Symptoms Management Group to educate Mr. Jones on his acute and persistent symptoms of schizophrenia. Chief Clinician will also provide weekly 50-minute Social Cognition Interaction Training (SCIT) group to assist Mr. Jones in accurately perceiving others' perspectives and emotions and to address his paranoid delusions and improve interactions with others.

Psychology: The unit psychologist will provide Mr. Jones once weekly 50-minute NGRI and Understanding Mental Illness groups. The focus of these groups will be to facilitate awareness of his paranoid delusions, auditory hallucinations, and thought disorganization, their influence on the NGRI offense, and relapse prevention. Mr. Jones will be encouraged to make reality-based contributions.

Rehabilitation Services Therapist: Rehabilitation Services therapist will include Mr. Jones in weekly 50-minute unit groups, which may include Arts & Crafts, Self-Expression, Wellness, Personal Interest, Leisure Skills weekly. Will engage him in reality-based group and 1:1 discussion, providing redirection to task at hand when needed. Will promote increased, attention/focus.



# Hospital
# IPOS Example

Exhibit 1 1 Final Settlement Agreement 000095



**Focus Area/Problem: Assaultive and Threatening Behavior**
Mr. Jones has displayed assaultive behavior more than 4 times in the past 30 days. These episodes of physical aggression tend to be precipitated by command auditory hallucinations and paranoid delusions. These symptoms were also present during the NGRI offense (Assault with Intent to Murder).

**Long-term Goal:**
Mr. Jones will demonstrate adaptive coping strategies pertaining to his voices and paranoia instead of assaulting others.

**Short-term Goal:**
#1: Mr. Jones will be free of assaultive behavior for 60 days (or shorter duration based on how frequently patient is assaulting).

#2: Mr. Jones will identify 2 adaptive coping strategies he can utilize to address his paranoid delusions and command auditory hallucinations instead of assaulting others.

**Interventions:**
<u>Psychiatry:</u> Psychiatrist will meet with Mr. Jones for individual supportive interventions for 30 minutes per month/week to help him understand how his medication can assist in alleviating his paranoid delusions and auditory hallucinations to decrease his aggressive behavior.

<u>Unit RN:</u> Unit RN will offer Mr. Jones suggestions to distract him, alternative coping skills, or a prn when he is observed to be verbalizing paranoid delusions towards peers, pacing with fists clenched, or making verbal threats towards peers.

<u>Social Worker:</u> Chief Clinician will meet with Mr. Jones for individual supportive for 30 minutes weekly to assist him in identifying increases/changes in his paranoid delusions and auditory hallucinations and encourage him to alert staff when symptoms are increasing or becoming unmanageable.

Chief Clinician will provide Mr. Smith 50-minute weekly Anger Management Group and Stress Management groups with the focus of identifying and utilizing coping skills to address his paranoid delusions and auditory hallucinations.

<u>Psychology:</u> A psychological assessment will be completed with Mr. Jones within 30 days for purposes of identifying patterns of aggression, including antecedents such as mood or affect changes, sensory stimulation, and inconsistent self-report of his internal experiences.

**Discharge Barriers:** Mr. Jones has been assaultive over the last 30 days towards staff and peers. His symptoms are not in adequate remission at this time as evidenced by paranoid beliefs that other are talking about him and command auditory hallucinations to hit others. These symptoms were also present during the NGRI offense. Mr. Jones continues to lack insight into his symptoms, how they are associated with the NGRI offense, and struggles to identify strategies that can assist in managing his illness.

**Services Needed Upon Discharge:** Upon meeting discharge criteria, Mr. Jones will be transferred to a regional hospital/community/etc. Recommended services include:

Pharmacotherapy/Medication management/reviews, Individual Therapy, CMH involvement, Case Management services, Anger Management Group, DBT to address emotional dysregulation, NA/AA/Substance Abuse Treatment, Vocational Programming

# Hospital
# IPOS Example

Exhibit 1 1 Final Settlement Agreement 000096



**Community IPOS Example**

**Focus Area/Problem: Psychosis**
Mr. Jones has a history of paranoid delusions, auditory hallucinations and thought disorganization that continue to result in impaired interactions with others, as evidenced by isolation, accusations that others are trying to harm him, and aggression. His symptoms of paranoid delusions and hallucinations were related to his NGRI offense and have resulted in multiple past hospitalizations.

**Long-term Goal:**
Mr. Jones will increase reality testing and decrease paranoid delusions and auditory hallucinations as evidenced by organized and relevant thought processes and increased communication and interactions that are devoid of paranoid content.

**Short-term Goal:**
#1: Mr. Jones' paranoia and thought disorganization will improve to the extent that he is able to participate in individual therapy once weekly for at least 60 minutes.

#2: Mr. Jones will be available to meet with the ACT team during designated times three times per week.

#3: Mr. Jones will initiate contact with staff when he is experiencing increased symptoms or warning signs to assist him in coping with his paranoia delusions or hallucinations.

**Interventions:**
Psychiatry: Mr. Jones will be seen for monthly medication reviews. The psychiatrist will prescribe medication to treat his symptoms of paranoid delusions, auditory hallucinations, and thought disorganization. Psychiatrist will assess the therapeutic response to this medication and provide education regarding potential side effects.

Unit RN: RN and ACT team will meet with Mr. Jones three times per week to provide medication, assess for changes in symptomatology, and provide education about how his antipsychotic medication can reduce his paranoid delusions, auditory hallucinations, and thought disorganization.

Social Worker/Therapist: Therapist will meet with Mr. Jones for weekly 60-minute individual supportive therapy. Sessions will be designed to provide education regarding his symptoms of illness, discuss what may have led to past hospitalization and legal involvement, and to devise coping strategies to deal with persistent symptoms and enhance interpersonal interactions.

Social Worker will provide weekly 60-minute Symptoms Management Group to educate Mr. Jones on his acute and persistent symptoms of schizophrenia and to aid in recognition of warning signs and the development of relapse prevention strategies.

Psychology: The psychologist will provide Mr. Jones once weekly 60-minute Co-Occurring Group. The focus of these groups will be to assist him in identifying the connection of his acute mental illness symptoms and substance use and in identifying the negative effects of his use.

Exhibit 1 1 Final Settlement Agreement 000097



# Assessments

What information is essential in guiding our  IPOS Development and Risk Mitigation Strategies?

Exhibit 1 1 Final Settlement Agreement 000098



## Legal History/History of Violence

- This includes <u>all</u> known prior arrests/convictions as well as violent acts which occurred without law enforcement involvement  (from patient account, collateral sources – family, legal records, MDOC OTIS, social histories from prior hospitalizations, etc)
  - And…if known, were psychotic and/or mood symptoms, substance use present/prominent around the time of the arrests/violence
- Was individual off medications at time of violence/legal involvement?
- Any psychiatric hospitalizations around the time of violence/legal involvement (briefly mention, but may include more information in hospitalization section)?
- Include any history of prior NGRI adjudications
- Parole or Probation Status outcomes

## NGRI Offense

- Develop a thorough understanding of the offense  and factors that contributed
- If patient was returned to the hospital while on leave from the hospital, consider what factors were involved (treatment non-adherence, substance use, medication changes, type of placement/level of services)
- Does the individual have Crime Victim Notification?



Exhibit 1 1 Final Settlement Agreement 000099



## Current Risk of Violence and  Elopement

- Include imminent risk of violence
- Include any past history of elopement at hospitals, community settings, correctional settings
- Significant incident reports (hospital or group home setting), significant behavioral incidents

## Biopsychosocial History

- Understand how social and environmental stressors may have resulted in decompensation Educational Attainment, cognitive functioning
- Occupational History
- Identify protective factors, supports that may be contributing to positive treatment outcomes
- Financial Supports
- Medical Concerns

## Substance Use and Treatment

- Detail types of substances used, frequency, amount, timeline of use for each substance including most recent use
- Legal involvement, concerning behavior, social impact associated with use associated with use
- Types of treatment received, including self-help groups
- Level of participation in substance use groups and other treatment modalities

Exhibit 1 1 Final Settlement Agreement 000100



## History of Mental Health Treatment

- Hospitalizations-Include if hospitalizations were voluntary or involuntary
- Key symptoms present during hospitalizations
- Include prior hospitalizations for IST or NGRI
- Outpatient Treatment History
- Treatment adherence, relationship with treatment providers
- Diagnosis
- Past Medications (efficacy, side effects)
- Suicidal/self-injurious behavior
- Supervision/Placement history (including treatment outcomes in less-restrictive settings)

## Current Treatment

- Current Clinical Presentation/Updated MSE
- Level of insight into mental illness/substance use/need for treatment
- Level of understanding that behavior during NGRI offense was associated with symptoms
- Ability to report and discuss triggers and warning signs of mental illness
- Plan for continued recovery and mental wellness
- Plan for sustained abstinence from drugs and alcohol (if relevant)
- Include current diagnosis(es) and medications
- Include recent significant medication changes (anything in the past 6 months) and responses

Exhibit 1 1 Final Settlement Agreement 000101



# NGRI REQUESTS, PROGRESS REPORTS, COURTWORK, FORMS

Exhibit 1 1 Final Settlement Agreement 000102

# NGRI Timelines and Reporting Guidelines

- For NGRI patients in the hospital, court work is completed by hospital staff and monitored by the hospital's court liaison.

- For NGRI patients in the community, the CMH/contractual agency is responsible for completing the paperwork, filing with the court, and sending paperwork to the regional hospital and NGRI Committee.

- The SHA Forensic Liaison or designee will monitor completion of paperwork and coordinate with the CMH/Contractual agency regarding timelines.

- The Forensic Liaison or designee will maintain communication and send notification to the assigned SOM hospital staff/CMHSPs regarding court work deadlines to maintain the court order if the CMHSP and hospital believes it is appropriate.

- Each hospital will maintain documentation of an NGRI patient's court order.

Exhibit 1 1 Final Settlement Agreement 000103

# CMH Contractual Agency Paperwork



## 30 and 90 Day Progress Reports

### 30 Day Review-Direct Community Placement Program Patients Only

- Three (3) 30 Day Reports are to be completed every 30 days from date of release from CFP
- Submit to NGRI Committee with copy to Regional Hospital/Center

### 90-Day/180/270 Day Review

- Begins 90 Days from Date of Order
- Submit to NGRI Committee with copy to Regional Hospital/Center

## Court Work

- Submit all court work to Probate Court, Regional Hospital and NGRI Committee
- Send court orders to Regional Hospital and NGRI Committee
- If team is not planning to pursue court-ordered treatment, treatment will submit a request to the NGRI Committee for review **prior** to expiration of order,  in accordance with MCL 330.2050(5)

Exhibit 1 1 Final Settlement Agreement 000104

# Requests to the NGRI Committee



## Requests to Move, Discharge, LOAS, Changes to IPOS Risk Mitigation Strategies

- The NGRI Committee meets on Wednesday afternoons

- Requests should be received by Tuesday at noon to be reviewed that week

- When submitting, please consider that more information may be required to make an informed decision before final approval. Please submit request in advance to allow for this additional time.

- Providing detailed information will speed up the processing of your request and allow the Committee to make an informed decision.

Exhibit 1 1 Final Settlement Agreement 000105

# Helpful Hints

- Requests should contain a thorough Mental Status Exam (e.g. Mental Status addresses all aspects, if patient has history of psychosis, should address current status of those symptoms, changes in baseline presentation, descriptors of symptoms)

- Behavioral descriptions are complete (e.g. if patient was assaultive, offers descriptor about what precipitated the assault, patient's reaction, etc.)

- Description of proposed leaves are complete (addresses where the leave will occur, who will be there, who will supervise, emergency plan, how they will get there)

- Description of proposed placement is complete (e.g., addresses degree of structure/level of supervision)

- Request indicates if the treatment team supports the request.

- Requests are submitted in timely manner

Exhibit 1 1 Final Settlement Agreement 000106

# SHA Forensic Contact Information



**Center for Forensic Psychiatry**
Forensic Liaison: Kelli Schaefer
Schaeferk@michigan.gov
Phone: (734)295-4328

Deborah Brock
BrockD2@michigan.gov
Phone: (734)295-4295
NGRI Committee Fax: (734)429-0487

**Kalamazoo Psychiatric Hospital**
Madeline Magnan
MagnanM@michigan.gov
Phone: (269)337-3008
Fax: (269)337-3007

**Caro Center**
Forensic Liaison: Jodi Mitchell
MitchellJ16@michigan.gov
Phone: (989)672-9292
Fax: (989)672-9214

**Walter P. Reuther Psychiatric Hospital**
Forensic Liaison: Evette Carroll, LMSW
Carrolle2@michigan.gov
Phone: (734)367-8600
Fax: (734)367-8618
Court paperwork Fax (734)722-8056

Amanda Winn, LMSW
WinnA4@michigan.gov
Phone: (734)367-8466

Exhibit 1 1 Final Settlement Agreement 000107



**GRETCHEN WHITMER**
GOVERNOR

STATE OF MICHIGAN
DEPARTMENT OF HEALTH AND HUMAN SERVICES
Center for Forensic Psychiatry

**ELIZABETH HERTEL**
DIRECTOR

TO:    Sharon Dodd-Kimmey, M.D.
       Chairperson, NGRI Committee

FROM:

RE:

**Identifying Information**

**Current Risk Assessment of Violence and Risk/Escape**

**Incident Reports (Last 6 months)**

**Summary of NGRI Offense**

**History of Alcohol/Substance Use and Treatment**

**Legal History/History of Violence**

**History of Treatment/Hospitalizations/Compliance with Medications/Diagnosis**

**Current Clinical Presentation/Level of Insight**

**Summary of Current Treatment**

**Previous Leaves**

**Team Request**

Exhibit 1 1 Final Settlement Agreement 000108

# NGRI 30/90 Day Progress Reports
## Completed by CMH/Contractual Agency



**CMHSP/Contractual CMH Agency 30/90 Day Progress Report**

☐ 30 Day Report      ☐ 90-Day Report

**MEMORANDUM**

To:       NGRI Committee
              Center for Forensic Psychiatry
              Box 2060
              Ann Arbor, MI 48106-2060
              Phone: (734)295-4295/(734)295-4328
              Fax: (734) 429-0487

FROM:   Aftercare Agency Representative Name
              Agency Address
              Phone Number
              Email Address
              Fax Number

DATE:

RE:       Patient's Name, DOB, CFP Number

Date of most recent release to community from state hospital setting:

1.   The patient was adjudicated NGRI on charges(s) of:

2.   **Present mental status:** *(Clinical assessment including individual's appearance, attitude, behavior, mood and affect, speech, thought process, thought content, perception, cognition, insight and judgment, suicidal or homicidal ideation)*
   - Customize to individual's pattern of symptoms, note any changes in acuity, and indicate status of persistent, long-standing symptoms if present.

3.   **Current Medication List:**
   - Include all medications and dosages (psychotropic and medical)
   - Please identify all recent medication changes/dosage adjustments, and rationale for changes.

4.   Living arrangements, level of care, and current address:

5.   Describe therapeutic services:
   - Frequency of individual and group sessions, day treatment/clubhouse participation, substance abuse treatment, Urine Drug Screens, work hours

6.   Describe patient's progress towards treatment goals in IPOS:
   - Level of participation/engagement in treatment

7.   Additional comments/concerns:

Signature: _____     Date: _____
           Printed Name

Cc:  Supervising Hospital

Exhibit 1 1 Final Settlement Agreement 000109

# NGRI Request Memo
## Completed by CMH/Contractual Agency



CMHSP/Contractual CMH Agency NGRI Request Form

☐ LOA Request ☐ Move Request ☐ Special Request

**MEMORANDUM**

To: NGRI Committee
Center for Forensic Psychiatry
Box 2060
Ann Arbor, MI 48106-2060
Phone: (734)295-4295/(734)295-4328
Fax: (734)429-0487

FROM: Aftercare Agency Representative Name
Agency Address
Phone Number
Email Address
Fax Number

DATE:

RE: Individual's Name, DOB, CFP Number

Date of most recent release to community from state hospital setting:

1. The individual was adjudicated NGRI on charges(s) of:

2. Present mental status: *(Clinical assessment including individual's appearance, attitude, behavior, mood and affect, speech, thought process, thought content, perception, cognition, insight and judgment, suicidal or homicidal ideation)*
   • Customize to individual's pattern of symptoms, note any changes in acuity, and indicate status of persistent, long-standing symptoms if present.

3. Current Medication List:
   • Include all medications and dosages (psychotropic and medical)
   • Please identify all recent medication changes/dosage adjustments, and rationale for changes.

4. Living arrangements, level of care, and current address:

5. Describe therapeutic services:
   • Frequency of individual and group sessions, day treatment/clubhouse participation, substance abuse treatment, Urine Drug Screens, work hours

6. Describe patient's progress towards treatment goals in IPOS:
   • Level of participation/engagement in treatment

7. Request:

   ☐ LOA *(date, location, purpose, degree of supervision, etc.)*
   • Does individual who is monitoring patient on LOA understand the patient's illness and warning signs? Have they been involved in treatment?
   • How will patient get to LOA (family picks up/public transportation/etc)?
   • Prior successful LOAs? Any concerns/problematic behavior on previous LOAs?
   • Please make note of any special considerations that may impact this individual (PPOs, Crime Victim Notifications, Limitations on unsupervised contacts, etc.)
   • Include Emergency Plan
   • Does team support request?

   ☐ Move Request
   • Provide rationale why move is indicated.
   • Please include proposed level of supervision/level of care/frequency of services/who will be living in residence/etc.
   • Please make note of any special considerations that may impact this individual (PPOs, Crime Victim Notifications, Limitations on unsupervised contacts, etc.)
   • Does team support request?

   ☐ Special Request _____
   • Level of Service change (Please include level of supervision/frequency of services/why indicated)
   • Employment Request-if approval indicated in IPOS (Please describe in detail type of employment, number of hours, shift hours)
   • Does team support request?

Signature: _____   Date: _____
        Printed Name

Cc: Supervising Hospital

Exhibit 1 1 Final Settlement Agreement 000110





Exhibit 1 1 Final Settlement Agreement 000111



# Thank you

Exhibit 1 1 Final Settlement Agreement 000112



# Supervisory Level Forensic Psychiatrist

Exhibit 1 1 Final Settlement Agreement 000113



# Supervisory Level Forensic Psychiatrist (SLFP)

Coordinates services between
- Regional hospital treatment team/forensic liaison
- NGRI Committee

Exhibit 1 1 Final Settlement Agreement 000114



# Supervisor Level Forensic Psychiatrist

Advises on risk mitigation strategies

- Helps treatment team identify risks and associated mitigation strategies relevant to the individual
- Ensures they have been adequately addressed for each individual
- Based on the person's behavioral health needs
- Remove when no longer needed

Exhibit 1 1 Final Settlement Agreement 000115

# Supervisor Level Forensic Psychiatrist



Reviews clinical certificates

> Advises on adherence to Michigan Mental Health Code

Provides guidance on AOT conversion

May also review IST patients at treatment team request

Exhibit 1 1 Final Settlement Agreement 000116

# Supervisor Level Forensic Psychiatrist



- Meets with forensic liaison weekly

- Covering 5-6 patients per week

- Prioritizing patients with upcoming IPOS reviews and expiring court orders (cert assignments)

- Must cover all NGRI patients

Exhibit 1 1 Final Settlement Agreement 000117





Exhibit 1 1 Final Settlement Agreement 000118



# Thank you

Exhibit 1 1 Final Settlement Agreement 000119

# Petitions for Involuntary Mental Health Treatment



- Petitions for involuntary mental health treatment must accurately reflect the treatment the individual will receive.

- Petitions for hospitalization should only be filed if the person meets the criteria for in-patient hospitalization and will receive treatment in the hospital. If the person is going to receive treatment in the community, the petition must request AOT or combined AOT/hospitalization. This is the case regardless of an individual's NGRI status.

Exhibit 1 1 Final Settlement Agreement 000120

Training Pertaining to working with Persons found Not Guilty by Reason of Insanity

Spring 2021

**Debra Pinals, M.D.,** Medical Director for Behavioral Health and Forensic Programs

Michigan Department of Health and Human Services

# Assisted Outpatient Treatment (AOT)

Exhibit 1 1 Final Settlement Agreement 000121

# Background

Exhibit 1 1 Final Settlement Agreement 000122

# What is Civil Commitment?

A civil (non-criminal) legal mechanism, through which the government mandates certain aspects of an individual's life because the individual has a mental illness.

Justification for the mandate is related to preventing harm and providing care

Exhibit 1 1 Final Settlement Agreement 000123

# Critical Aspects

Definition of narrow target population

Procedures/Due Process

Provisions of the court order

- Inpatient
- Outpatient

Exhibit 1 1 Final Settlement Agreement 000124

# Legal Context and Background

- Lake v. Cameron (1966)
- Lessard v. Schmidt (1972)
- Jackson v. Indiana (1972)
- O'Connor v. Donaldson (1975)
- Parham v. J.R. (1979)
- Addington v. Texas (1979)
- Vitek v. Jones (1980)
- Zinermon v. Burch (1990)
- Heller v. Doe (1993)

Exhibit 1 1 Final Settlement Agreement 000125

# Different State Commitment Laws Require Mental Illness and a Link to SOMETHING

Mental Illness defined in state statutes, regulations or case law and linked to

- Risk of harm through self-injury or suicide
- Risk of harm through physical harm to others
- Risk of harm through "grave disability" or failure to meet basic needs

May or may not include:

- "Need for treatment" standard
- Substance use
- Risk for relapse and deterioration

Exhibit 1 1 Final Settlement Agreement 000126

# Types of Commitment and Processes

Pick up orders

Emergency detention

Inpatient commitment (all states)

Outpatient commitment
  Involuntary Outpatient Treatment or Assisted Outpatient Treatment (AOT)

Exhibit 1 1 Final Settlement Agreement 000127

# Medical and Legal Process

Filing affidavits and early detention/evaluation

- Multi-stage review often a requirement with more clinical input downstream

    *E.g. police pick up, to clinical screening, to "doctor" certification*

Commitment Hearings

- Testimony
- Deferrals/waivers etc
- Judicial determinations
- Standard of proof and burden of proof

Exhibit 1 1 Final Settlement Agreement 000128

# What is "Outpatient Commitment"?

Exhibit 1 1 Final Settlement Agreement 000129

# Types of Involuntary Outpatient Commitment

- **Conditional release** from hospital (40 states[1])
  - Early 20th century, started as trial release

- **Alternative to hospitalization** for people meeting inpatient commitment criteria (33 states[1])
  - Least restrictive alternative

- **Preventive outpatient commitment** (10 states[1])
  - Court-ordered treatment authorized at a lower threshold than inpatient commitment criteria with the purpose of preventing further deterioration

[1] Melton et al., 2007

Slide credit: Marvin Swartz, MD

Exhibit 1 1 Final Settlement Agreement 000130

# Some of the Current Research

## North Carolina and New York

Exhibit 1 1 Final Settlement Agreement 000131

# Involuntary Outpatient Commitment
## CRITIQUE

Availability of appropriate services with aggressive outreach might obviate the need

Should not be used as a substitute for inadequacies in service systems

Applying coercion to patient blames the victim for service deficiencies.

Systems of care should be held accountable for gaps in care.

Slide credit: Marvin Swartz, MD

Exhibit 1 1 Final Settlement Agreement 000132



SUBGROUP ANALYSIS: Percent of participants rehospitalized in 12 months, by days of outpatient commitment received

Swartz MS, Swanson JW, Wagner HR, Burns BJ, Hiday VA, Borum WR (1999). Can involuntary outpatient commitment reduce hospital recidivism? Findings from a randomized trial in severely mentally ill individuals. *American Journal of Psychiatry,* 156(12), 1968-1975

Exhibit 1 Final Settlement Agreement 000133

Slide credit: Marvin Swartz, MD



Swartz MS, Swanson JW, Wagner HR, Burns BJ, Hiday VA, Borum WR (1999). Can involuntary outpatient commitment reduce hospital recidivism? Findings from a randomized trial in severely mentally ill individuals. *American Journal of Psychiatry,* 156(12), 1968-1975

Exhibit 1 Final Settlement Agreement 000134

# Reduced odds of any violent behavior in 1 year associated with extended outpatient commitment  (Duke Mental Health Study)

|  | Odd Ratio | 95% CI | P value |
|---|---|---|---|
| Baseline history of violence | 1.915 | (1.262 - 2.906) | <0.01 |
| Outpatient commitment |  |  |  |
| None | 1.000 | (1.000 - 1.000) |  |
| Brief (<179 days) | 0.986 | (0.500 - 1.945) |  |
| Extended (180 days or more) | 0.347 | (0.152 - 0.792) | <0.05 |

Note: logistic regression model controlled for demographic, social, and clinical characteristics including substance misuse.

Source: Swanson JW, Swartz MS, Borum RB, Hiday VA, Wagner HR, Burns BJ (2000). Involuntary out-patient commitment and reduction of violent behaviour in persons with severe mental illness.  British Journal of Psychiatry, 176, 324-331.

Slide credit: Marvin Swartz, MD

Exhibit 1 1 Final Settlement Agreement 000135

# Other Key Findings of the NC Study

Reduced crime victimization of those under OPC

Improved Quality of Life measures

Hiday VA, Swanson JW, Swartz MS, Wagner HR, Borum WR  (2002). The impact of outpatient commitment on victimization of persons with severe mental illness. *American Journal of Psychiatry,* Vol 159(8), 1403-1411.

Exhibit 14 Final Settlement Agreement 000136

# Is AOT *fair*?



## Racial disparities in AOT

Swanson, J., Swartz, M., Van Dorn, R., Monahan, J., McGuire, T., Steadman, H., and Robbins, P. (2009). **Racial disparities in involuntary outpatient commitment: Are they real?** *Health Affairs*, 28, 816-826.

## "Queue-jumping" in AOT

Swanson JW, Van Dorn RA, Swartz MS, Cislo AM, Wilder CM, Moser LL, Gilbert AR, McGuire TG (2010). **Robbing Peter to pay Paul: Did New York State's outpatient commitment program crowd out voluntary service recipients?** *Psychiatric Services* 61, 988-95.

Slide credit: Marvin Swartz, MD

Exhibit 1 1 Final Settlement Agreement 000137



Slide credit: Marvin Swartz, MD

Exhibit 1 1 Final Settlement Agreement 000138

# New York AOT Evaluation Study (Swartz et al)

-Reduced hospital readmission after 180 days

-Reduced days hospitalized after 180 days

Monthly probability of **hospitalization reduced 43% to 57% for participants receiving AOT plus intensive services** (ACT team or intensive case manager) **compared to participants receiving ACT or ICM alone (without AOT)**

Exhibit 1 1 Final Settlement Agreement 000139

# NY Findings on AOT

 NYS's AOT Program improves a range of important outcomes for its recipients.

 The *increased services available under AOT clearly improve recipient outcomes*,

 The AOT *court order and its monitoring do appear to offer additional benefits in improving outcomes*.

 The AOT order exerts a critical effect on service providers.

Exhibit 1 1 Final Settlement Agreement 000140

# Oxford Community Treatment Center Evaluation Trial (OCTET)

Examined individuals released from hospitals on conditions vs. those on a community treatment order

- No significant differences in: Primary outcome of readmission to the hospital or secondary outcomes such as number of readmissions and days in the hospital or clinical functioning.

- Data did not compare individuals in voluntary services to those on an order so not comparable to NY studies

Exhibit 1 1 Final Settlement Agreement 000141

# Summary of the Research

- When compared to voluntary services, AOT order itself seems to provide some benefit for individuals in terms of return to hospitalization and clinical outcomes.

- Findings lead national organizations to develop positions in favor of AOT

- AOT being examined nationally as a tool to assist individuals with Serious Mental Illness when used appropriately

Exhibit 1 1 Final Settlement Agreement 000142

# Michigan's Application of AOT for Individuals Found NGRI

Exhibit 1 1 Final Settlement Agreement 000143

# Michigan Experience

State Court Administrator and lead author of COSCA paper

Mental Health Diversion Council Activities

Legislative reform to existing outpatient commitment law took place in 2017

"Refinements" proposed for Involuntary outpatient commitment to help enhance its likelihood of being utilized



2016-2017 Policy Paper

**Decriminalization of Mental Illness: Fixing a Broken System**

COSCA
Conference of State Court Administrators

Conference of State Court Administrators

*Decriminalization of Mental Illness: Fixing a Broken System*

Exhibit 1 1 Final Settlement Agreement 000144

# History of the 2004 Kevin's Law and the New Changes

Original Purpose: to authorize courts and community mental health agencies to develop and utilize AOT programs, generally used in lieu of hospitalization for people who fail to comply with prescribed treatments

Revised Law (2017): Modifies multiple sections of the Mental Health Code to refine qualifying commitment criteria, streamline paperwork, lengthen duration of AOT, and clarify treatment components

Exhibit 1 1 Final Settlement Agreement 000145

# Definition of "Assisted Outpatient Treatment"

Modifies the definition of "assisted outpatient treatment" (AOT) to specify that AOT would mean the categories of outpatient services ordered by the court under Section 468 or Section 469a of the Mental Health Code.

Exhibit 1 1 Final Settlement Agreement 000146

# AOT Definition (MCL 330.1100)

"AOT" means the categories of outpatient services ordered by the court under section 468 or 469a of the Mental Health Code. AOT orders may include:

- a case management plan and case management services to provide care coordination under the supervision of a psychiatrist and developed in accordance with person-centered planning under section 712.

AOT may also include 1 or more of the following categories of services:

- medication;
- periodic blood tests or urinalysis to determine compliance with prescribed medications;
- individual or group therapy;
- day or partial day programming activities;
- vocational, educational, or self-help training or activities;
- assertive community treatment team services;
- alcohol or substance use disorder treatment and counseling and periodic tests for the presence of alcohol or illegal drugs for an individual with a history of alcohol abuse or substance use disorder;
- supervision of living arrangements; and
- any other services within a local or unified services plan developed under this act that are prescribed to treat the individual's mental illness and to assist the individual in living and functioning in the community or to attempt to prevent a relapse or deterioration that may reasonably be predicted to result in suicide, the need for hospitalization, or serious violent behavior.

Exhibit 1 1 Final Settlement Agreement 000147

# Mental Illness for the purposes of Commitment

"'Mental illness' means a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." (MCL 330.1400(g))

-Cannot be solely due to alcoholism, drug dependence, epilepsy or dementia

Exhibit 1 1 Final Settlement Agreement 000148

# Sec. 401: "Person requiring Treatment" (a), (b), or (c)

(1) (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

(b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

(c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

Exhibit 1 1 Final Settlement Agreement 000149

# Development of the AOT Plan

- The development and implementation of an AOT plan shall be under the supervision of a psychiatrist. The AOT treatment plan must be completed within 30 days of the court order for AOT and filed with the relevant probate court within three (3) days of its completion.

- In accordance with APF 106, the AOT treatment plan must incorporate risk mitigation strategies and incorporated into the individual plan of service (IPOS).  The plan must be reviewed and approved by the NGRI Committee.

- Prior to ordering AOT, the individual will be asked as to their preference for medications, their individualized plan of service (IPOS), and whether there is a Durable Power of Attorney (DPOA). If there are any conflicts between the AOT order and the IPOS or DPOA, a second psychiatric opinion on the AOT will be needed (MCL 330.1468.)

Exhibit 1 1 Final Settlement Agreement 000150

# Types of AOT Orders

- AOT-Only
- AOT and hospitalization combined order

Exhibit 1 1 Final Settlement Agreement 000151

# Importance of Coordination

- A person on a combined order can move from the hospital to the community AOT per the hospital psychiatrist and the "AOT program director".

- Hospital must give at least 5 days notice of intent to discharge the individual to the community under AOT (MCL 330.474).

Exhibit 1 1 Final Settlement Agreement 000152

# Duration of the Orders "Up to"…

Initial Orders:
- Hospitalization= up to 60 days
- AOT only = up to 180 days
- Combined hospitalization and AOT= up to 180 days (up to 60 days of hospitalization as part of the 180 days)

Subsequent orders (contiguous with the prior orders):
- Second Order= up to 90 days
- Third Order=up to 1 year
- Fourth and additional orders=up to 1 year

Exhibit 1 1 Final Settlement Agreement 000153

# Concerns about Safety of "Sufficiency" of the Court Order

When the supervisor of the AOT or combined hospitalization/AOT order has significant concerns about the sufficiency of the AOT order or compliance with the AOT, they SHALL notify the court immediately (MCL 330.1475). For persons found NGRI, CMHSPs overseeing the AOT or combined hospitalization/AOT orders shall follow APF 106 involving the NGRI committee.

Exhibit 1 1 Final Settlement Agreement 000154

# Concerns about Safety of "Sufficiency" of the Court Order

Upon notification of the court, if the court learns that the AOT is insufficient "to prevent harm to the individual or to others" or AOT program is "not appropriate" the court may do one of the following:

a. Consider alternatives to hospitalization and modify the AOT order for duration of AOT order; OR

b. Modify the AOT order and direct the individual to undergo hospitalization or combined hospitalization/AOT.

Exhibit 1 1 Final Settlement Agreement 000155

# Noncompliance of Individual

- Non-compliance with the court-order can result in a review of the treatment plan before the judge and potentially hospitalization.
- An AOT is a "civil" remedy, therefore; there is no punishment or "sanction" for non-adherence to treatment by the individual.
- Court notified of individual's noncompliance: Court may require 1 (one) or more of the following without a hearing:
  - Individual taken to preadmission screening unit
  - Individual hospitalized for no more than 10 days
  - Individual hospitalized for a period of more than 10 day, but no longer than AOT order of 90 days, whichever is less
- Court may direct peace officer to transport to designated facility/PSU

  Individual may object to hospitalization

Exhibit 1 1 Final Settlement Agreement 000156

# When the Agency is not Convening the Services….

Individual may petition the court for a modification of the court order

Exhibit 1 1 Final Settlement Agreement 000157

# Discharge Provisions

A hospital can discharge the patient from a court order when clinically suitable and with notification of the court. (MCL 330.1476)

If the provider of AOT or combined hospitalization/AOT determines the individual is clinically suitable for discharge and no longer meets the criteria for AOT, the person can be discharged from the AOT or the combined hospitalization/AOT order with notification of the court.(MCL 330.1477)

SUMMARY POINT: Clinical team must discharge the individual if the individual no longer meets clinical criteria for involuntary treatment.

If discharged from court orders, NGRI Committee Involvement Terminates

Exhibit 1 1 Final Settlement Agreement 000158

# Legal Regulation Pertaining to Individuals found NGRI

|  | Pre-Settlement Agreement | Going Forward |
|---|---|---|
| Leave status from SOM Hospital | ALS | LOA for up to 1 year |
| Community Status following LOA | ALS | AOT |
| Duration of NGRI and AOT | Up to 5 continuous community years | Up to 5 continuous community years |

Exhibit 1 1 Final Settlement Agreement 000159

# CMH and COMMUNITY BASED FRAMEWORK

| Community systems will want to convene to best understand pathways and partners | Comprehensive role consideration will be important |
|---|---|
| | • Courts |
| | • Law enforcement |
| | • CMH/PIHP and provider input (Clinical and Administrative) |
| | • Emergency services |
| | • Persons with lived experience/peers |
| | • Family members |

Exhibit 1 1 Final Settlement Agreement 000160

# Conclusions

Persons found NGRI should be treated in the least restrictive manner appropriate to their individualized needs

Community providers work with the NGRI committee, guided by APF 106, and in compliance with contractual oblications

Risk mitigation strategies that become part of the AOT plan must be justified based on individual circumstances

IPOS should reflect appropriate risk mitigation to help support the individual's success and community tenure

Strategies to maximize engagement and positive choice continue to need to be prioritized

Exhibit 1 1 Final Settlement Agreement 000161

*Darryl Pelichet v Elizabeth Hertel*
**USDC-ED of Mich. No. 2:18-cv-11385; Hon. Judge Anthony
P. Patti**

# EXHIBIT H

Exhibit 1 1 Final Settlement Agreement 000162

1) Total number of NGRI Diagnostic Orders sent to CFP (by month)
    a. Total number subsequently placed on hospitalization order
    b. Total number subsequently placed on AOT with hospital days
    c. Total number subsequently placed on AOT without hospital days
    d. Total number discharged unconditionally
2) Total number of individuals followed by NGRI committee (by month)
3) Total number of individuals released from NGRI committee involvement (sort in 6 months intervals: July-Dec or Jan–June)
    a. Total time (days) NGRI committee was involved with each individual after initial probate order
        i. Length of time (days) of NGRI committee involvement while individual was in the community
        ii. Length of time (days) of NGRI committee involvement while individual was in a state hospital
4) Total number of probate court petitions requesting continued hospitalization (by month)
5) Total number of probate court petitions requesting AOT (by month)
6) Total number of expired AOT (by month)
7) Total number of NGRI committee recommendations for AOT (by month)
8) Total number of requests by treatment team for hospitalization (by month)
    a. Number of those disapproved by NGRI committee
    b. Number of those approved by NGRI committee
9) Total number of requests by treatment teams for discharge to AOT (by month)
    a. Number of those disapproved by NGRI committee
    b. Number of those approved by NGRI committee
        i. Time (days) each individual was in hospital before discharge to AOT
10) Total number of requests by treatment team for complete release from court-ordered treatment (unconditional non court involved treatment) (by month)
    a. Number of those disapproved by NGRI committee
    b. Number of those approved by NGRI committee
        i. Time (days) each individual spent in court-ordered treatment before release from NGRI involvement
11) Total number of NGRI individuals who requested secondary review of denied LOA or discharge
12) Number of secondary reviews resulting in approval after initial denial
13) Percentage of individuals receiving AOT with work/school restrictions in place as recommended by the NGRI committee (by month)
14) Percentage of individuals receiving AOT with work/school restrictions put in place by CMH (by month)
15) Percentage of individuals receiving AOT with curfews in place as recommended by the NGRI committee (by month)
16) Percentage of individuals receiving AOT with curfews put in place by CMH (by month)

Exhibit 1 1 Final Settlement Agreement 000163

*Darryl Pelichet v Elizabeth Hertel*
**USDC-ED of Mich. No. 2:18-cv-11385; Hon. Judge Anthony P. Patti**

# EXHIBIT I

Exhibit 1 1 Final Settlement Agreement 000164

**Data Collection Resolution Process/Escalation Procedure**

- Based on constituent calls and DRM experience, there are 3 main potential issues that need a resolution process
    - o Repeated, boilerplate requests for hospitalization by treatment team
    - o Repeated NGRI denials of discharges/LOAs
    - o IPOS restrictions not based on treatment needs
- Repeated, boilerplate requests for hospitalization by treatment team
    - o DRM will identify this when it sees a hospital request continued hospitalization for 1 year at a high rate
        - ▪ Upon identification, DRM may request and review the files of the individuals the treatment team recommended for hospitalization , with personal identifying information redacted.
        - ▪ If, after review, DRM identifies any individuals it feels the treatment team improperly recommended for hospitalization, DRM may follow the escalation procedure
- Repeated NGRI denials of discharges/LOAs
    - o DRM will identify this if it sees the NGRI Committee denying treatment team recommended discharges at a high rate
        - ▪ Upon identification, DRM may review the individual's file, the recommendation for discharge, and the NGRI Committee denial, with personal identifying information redacted.
        - ▪ If, after review, DRM feels the NGRI Committee improperly denied discharge for any individual, DRM may follow the escalation procedure
- IPOS restrictions not based on treatment needs
    - o DRM will identify a list of restrictions that, in the past, were frequently in ALS Contracts and unrelated to the individual's treatment. These will include work and school restrictions and curfews.
    - o When DRM sees one of these restrictions during its data collection, it may request to review that individual's IPOS and treatment plan with personal identifying information redacted
    - o If, after review, DRM feels the restrictions is unrelated to the individual's treatment, it may follow the escalation procedure

**Escalation Procedure**

- When DRM identifies a problem with any of the three above, it will report the issue to NGRI committee chair and identify which policy or procedure it believes has been violated.
- NGRI committee chair will review the file and determine if it agrees or disagrees that there is a problem. The NGRI committee chair will inform the individual of their right to contact DRM.

Exhibit 1 1 Final Settlement Agreement 000165

- If NGRI committee chair agrees that there is a problem, he/she will identify the policy or procedure that has been violated and work with the treatment team and/or NGRI Committee to remedy the problem
- If the problem persists, NGRI committee chair will report to SHA Director for retraining appropriate staff on the new policies/procedures or consultation with BHDDA.

Exhibit 1 1 Final Settlement Agreement 000166